UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN P. MULLINIX,<br><br>Plaintiff,<br><br>v.<br><br>KIKI BOGORAD-GROSS and LEONARD P.<br>BOGORAD, As They Are Executors of the Will of<br>Lawrence Bogorad,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## 04  12684 WGY

Civil Action No. _____

RECEIPT # 66908
AMOUNT $_____ 150.00
SUMMONS ISSUED 2
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. M.P.
DATE _____ 12/22/2004

## COMPLAINT AND DEMAND FOR JURY TRIAL

MAGISTRATE JUDGE RBC

### INTRODUCTION

1.      This is an action by Kathleen P. Mullinix, an individual, to recover damages for the defendants' breach of contract.

### PARTIES

2.      The Plaintiff, Kathleen P. Mullinix (hereinafter, "Ms. Mullinix" or the "Plaintiff"), is an individual resident of the State of New York, residing at 1050 Fifth Avenue, Apartment 15B, New York, NY 10028.

3.      The Defendant Kiki Bogorad-Gross is an individual resident of the Commonwealth of Massachusetts, residing at 80 Highland Avenue, Newton, Massachusetts 02460.

4.      The Defendant Leonard P. Bogorad is an individual resident of the State of Maryland, residing at 5121 Worthington Drive, Bethesda, Maryland 20816.

5.     Lawrence Bogorad ("Mr. Bogorad") died on December 28, 2003. The
Defendants Kiki Bogorad-Gross and Leonard P. Bogorad are Mr. Bogorad's daughter and son,
and have been appointed executors of the will of Mr. Bogorad by decree of a Justice of the
Probate and Family Court, Middlesex County, MA.

### JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)
because the action is between citizens of different states and the amount in controversy exceeds
$75,000.

7.     Pursuant to 28 U.S.C. § 1391(a) and (c), venue is appropriate in the United States
District Court for the District of Massachusetts because the defendants are subject to personal
jurisdiction in Massachusetts, because the Estate of Lawrence Bogorad is being administered in
Massachusetts, and because a substantial part of the events and omissions giving rise to the
claims below took place in Massachusetts.

### FACTS

8.     In or about November 1975, Ms. Mullinix and Mr. Bogorad began a relationship.
Except for a brief period in or about March 1998, Ms. Mullinix and Mr. Bogorad (hereinafter the
"couple") maintained the relationship from November 1975 until Mr. Bogorad's death on
December 28, 2003.

9.     After March 1998, the couple began living together, both at Mr. Bogorad's home
at 2 White Pine Lane, Lexington, Massachusetts (hereinafter, the "Lexington home"), and in Ms.
Mullinix's apartment at 975 Park Avenue, New York City. The couple considered themselves to
be, and lived as if, in a marital relationship with one another.

-2-

3775948v2

10.    After Ms. Mullinix and her husband separated, Ms. Mullinix and her husband sold the apartment at 975 Park Avenue, and Ms. Mullinix purchased a co-operative apartment located at 170 East 87th Street in New York City (hereinafter, the "East 87th Street apartment"). Mr. Bogorad was instrumental in Ms. Mullinix's decision to purchase the East 87th Street apartment and advised Ms. Mullinix on financial matters relating to the purchase.

11.    On or about July 1, 1999, the couple moved in together to the East 87th Street apartment. Mr. Bogorad paid the monthly maintenance fees on the East 87th Street apartment during the entire time Ms. Mullinix owned it.

12.    Mr. Bogorad paid for renovations to the East 87th Street apartment, which included refinishing the floors and some electrical work. In addition, Mr. Bogorad paid for one-half of the cost of purchasing new furniture for the East 87th Street apartment and Ms. Mullinix paid the other one-half of the cost.

13.    In the fall of 2002, a neighbor from the East 87th Street apartment inquired of Ms. Mullinix whether she was interested in selling her apartment. Mr. Bogorad encouraged Ms. Mullinix to pursue those discussions. He told her that he wanted her to purchase an apartment closer to 5th Avenue. At around that time, Mr. Bogorad told Ms. Mullinix about changes in the tax laws relating to capital gains and committed to pay Ms. Mullinix one half of the capital gains tax she incurred when she sold the East 87th Street apartment.

14.    In or around November 2002, Ms. Mullinix looked at an apartment located at 1050 5th Avenue in New York City (hereinafter, the "Apartment") which was for sale. Mr. Bogorad wanted to look at the Apartment with Ms. Mullinix but Ms. Mullinix declined because she felt the Apartment was too expensive, and would need extensive renovations. Mr. Bogorad told Ms. Mullinix that he would pay for the cost of the renovations.

-3-

15.     In or around January 2003, Ms. Mullinix entered into a contract for the sale of the East 87th Street apartment. The couple again discussed the issue of capital gains tax consequences and Mr. Bogorad committed to pay for one-half of the tax consequences.

16.     On or about February 7, 2003, after having learned that the price of the Apartment had been reduced, the couple visited the Apartment together. Ms. Mullinix continued to believe that the cost of the Apartment and the renovations was too expensive.

17.     Mr. Bogorad wanted Ms. Mullinix to purchase the Apartment and urged her to do so. Mr. Bogorad reiterated his commitment to pay for the cost of the renovations. Mr. Bogorad also told Ms. Mullinix that he would pay for the monthly maintenance fees for the Apartment, just as he had done with the East 87th Street apartment.

18.     Despite the fact that Ms. Mullinix did not want to purchase the Apartment because of the costs involved, Mr. Bogorad convinced her to do so by committing to her that he would (i) split evenly with her the tax consequences that resulted from the sale of the East 87th Street apartment by reimbursing her for one-half of that amount upon completion of her 2003 taxes; (ii) pay the monthly maintenance fees for the Apartment by reimbursing her on a monthly basis; (iii) pay for the cost of the renovations to the Apartment, by reimbursing her for the cost of the work and for the architect's fee as she incurred those costs and fees; and (iv) split evenly with her the costs she incurred for storing the belongings from the East 87th Street apartment until those belongings could be moved to the Apartment upon completion of the renovations, by reimbursing her for one-half of the total storage costs, once a final amount was determined. Mr. Bogorad's commitment to pay for the monthly maintenance fees, as he had paid with respect to Ms. Mullinix's East 87th Street apartment, the cost of the renovations, and to split the total storage fee cost and the tax consequences was an integral part of the couple's decision to have

-4-

Ms. Mullinix purchase the Apartment. Ms. Mullinix executed the Contract for Sale for the Apartment on February 7, 2003.

19.     On or about March 31, 2003, Ms. Mullinix sold her East 87th Street apartment. At that time, Mr. Bogorad again reminded Ms. Mullinix of his commitment to pay for one-half of the taxes on the gain from the sale of the East 87th Street apartment that was not exempt from tax.

20.     On April 7, 2003, the couple moved their furniture and other belongings from the East 87th Street apartment into storage. Mr. Bogorad again committed to pay for one-half of the storage costs.

21.     After April 7, 2003, the couple lived full-time in the Lexington home. The couple planned to remain in the Lexington home until the renovations to the Apartment were complete. On more than one occasion, Mr. Bogorad stated that they could stay in the Lexington home until the renovations were complete.

22.     Ms. Mullinix closed on the purchase of the Apartment on June 10, 2003. Mr. Bogorad was instrumental in determining the type of mortgage Ms. Mullinix obtained for the Apartment. Ms. Mullinix relied on Mr. Bogorad and trusted his advice on such financial matters.

23.     In or around May 2003, Mr. Bogorad contacted Raynor Warner, an architect and long-time friend, about the renovations needed to the Apartment, and sought Mr. Warner's recommendation on an architect who worked in New York. Mr. Warner traveled to New York City on at least one occasion to meet with the couple regarding the renovations. Mr. Bogorad paid Mr. Warner $1787.00 for his services in connection with the renovations to the Apartment.

24.     Thereafter, and based in part on the recommendation of Mr. Warner, the couple hired Heather Aman of Heather Aman Designs for the architecture component of the renovation

-5-

Case 1:04-cv-12684-WGY    Document 1    Filed 12/22/2004    Page 6 of 16

plans. On or about July 25, 2003, Ms. Mullinix and Ms. Aman signed a contract for architectural design services to the Apartment. Ms. Mullinix paid a $1500.00 retainer to Ms. Aman and later paid another $1500.00 retainer to Ms. Aman. Mr. Bogorad reimbursed Ms. Mullinix for both of these payments.

25.    In discussing the scope of the renovation project with Ms. Aman, the couple realized that the cost of the renovation project, including the architect's fee, would be approximately $400,000.00. Mr. Bogorad committed to paying for the renovation project and the architect's fee, up to that amount.

26.    The architecture plans were designed for the couple and their needs. To accommodate Mr. Bogorad the master bathroom was designed to include a walk-in shower with interior seat with controls for the shower accessible from the seat. In addition, the architecture plans included special lighting in the Apartment to accommodate Mr. Bogorad.

27.    The couple discussed the plans and shopped for ideas beginning in February 2003 when Ms. Mullinix committed to purchasing the Apartment. Mr. Bogorad was an active participant in the planning phase of the renovations.

28.    In November 2003, Ms. Mullinix paid Ms. Aman $7500.00 for thirty percent (30%) job completion.

29.    In December 2003, Ms. Aman presented the final architecture design plans to the couple for approval. The couple approved the plans and authorized Ms. Aman to send the plans out to bid to three (3) different contractors. Mr. Bogorad was an active participant in the approval process for the architecture design plans.

-6-

30.    On or about December 24, 2003, the couple went to Mexico with Mr. Bogorad's children and grandchildren for an annual holiday vacation. Mr. Bogorad died on December 28, 2003.

31.    After Mr. Bogorad's death, Ms. Mullinix and the Defendant Kiki Bogorad-Gross discussed Mr. Bogorad's commitment to pay for the cost of the renovations to the Apartment. Ms. Bogorad-Gross told Ms. Mullinix that the family "certainly would want to do what [Mr. Bogorad] wanted," or words to that effect.

32.    On or about March 17, 2004, Ms. Mullinix executed a contract with McGraime Woodworking, Inc. for the renovations to the Apartment. Ms. Mullinix was required to pay McGraime a $35,000.00 deposit and an additional $52,500.00 upon demolition.

33.    After Mr. Bogorad's death, Ms. Mullinix continued to live in the Lexington house. In or around February 2004, the Defendant Leonard Bogorad assured Ms. Mullinix that she would be permitted to remain in the Lexington home until the renovations to the Apartment were completed.

34.    Despite this commitment, the Defendants sold the Lexington home in or around late June 2004 and Ms. Mullinix was required to vacate the home. As a result, Ms. Mullinix was forced to rent a furnished apartment until the renovations to the Apartment were completed.

35.    On or about August 20, 2004, Ms. Mullinix sent a demand letter to counsel for the Defendants, outlining in great detail her relationship with Mr. Bogorad and the issues arising in this litigation. The Defendants have refused to honor Mr. Bogorad's contracts, despite the fact that Ms. Mullinix has incurred costs and expenses that Mr. Bogorad agreed to pay.

-7-

## CLAIMS

### COUNT I
### (Breach of Contract)

36.    Ms. Mullinix hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 35 of this Complaint.

37.    Mr. Bogorad committed to pay the cost of the renovations and the architect's fee, up to $400,000.00.  Mr. Bogorad's commitment is a valid and binding contract between Mr. Bogorad and Ms. Mullinix.

38.    The Defendants have breached their obligations to Ms. Mullinix under the contract by, *inter alia*, refusing to pay Ms. Mullinix any and all amounts representing the cost of the renovations and the architect's fee.

39.    As a result of the Defendants' breach of the contract, Ms. Mullinix has suffered, and continues to suffer, monetary damages and harm in an amount, to be determined at trial, not less than $400,000.00.

### COUNT II
### (Breach of Contract)

40.    Ms. Mullinix hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 39 of this Complaint.

41.    Mr. Bogorad committed to pay the monthly maintenance fees for the Apartment. Mr. Bogorad's commitment is a valid and binding contract between Mr. Bogorad and Ms. Mullinix

42.    The Defendants have breached their obligations to Ms. Mullinix under the contract by, *inter alia*, refusing to pay Ms. Mullinix the amount of the monthly maintenance fees

3775948v2

paid to date that were not previously paid by Mr. Bogorad, and by refusing to pay the future monthly maintenance fees for the Apartment as such fees become due.

43.     As a result of the Defendants' breach of the contract, Ms. Mullinix has suffered monetary damages and harm in an amount, to be determined at trial, not less than $23,000, and will continue to suffer monetary damages and harm in the future as future monthly maintenance fees for the Apartment become due, in an amount of approximately $1800 per month.

## COUNT III
### (Breach of Contract)

44.     Ms. Mullinix hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 43 of this Complaint.

45.     Mr. Bogorad committed to pay one-half of the cost of the storage fees incurred on account of the couple's storage of their furniture and belongings pending the renovation of the Apartment.  Mr. Bogorad's commitment is a valid and binding contract between Mr. Bogorad and Ms. Mullinix.

46.     The Defendants have breached their obligations to Ms. Mullinix under the contract by, *inter alia*, refusing to pay Ms. Mullinix one-half of the total amount of storage fees paid from April 7, 2003 until November 19, 2004, the date on which Ms. Mullinix removed those belongings from the storage facility.

47.     As a result of the Defendants' breach of the contract, Ms. Mullinix has suffered, and continues to suffer, monetary damages and harm in an amount, to be determined at trial, not less than $4,900.00.

-9-

## COUNT IV

### (Breach of Contract)

48.    Ms. Mullinix hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 47 of this Complaint.

49.    Mr. Bogorad committed to pay one-half of the capital gains tax consequences incurred by Ms. Mullinix relating to the sale of the East 87th Street apartment. Mr. Bogorad's commitment is a valid and binding contract between Mr. Bogorad and Ms. Mullinix.

50.    The Defendants have breached their obligations to Ms. Mullinix under the contract by, *inter alia*, refusing to pay Ms. Mullinix one-half of the total tax representing the gain on the sale of the East 87th Street apartment that was not exempt from taxation.

51.    As a result of the Defendants' breach of the contract, Ms. Mullinix has suffered, and continues to suffer, monetary damages and harm in an amount, to be determined at trial, not less than $18,000.00.

### COUNT V
### (Breach of Contract)

52.    Ms. Mullinix hereby repeats and incorporates herein the allegations set forth in Paragraphs 1 through 51 of the Complaint.

53.    Mr. Bogorad promised Ms. Mullinix that she would live in the Lexington home until such time as the renovations to the Apartment were complete. Mr. Bogorad's commitment is a valid and binding contract between Mr. Bogorad and Ms. Mullinix.

54.    The Defendants knew about this contract and the Defendant Leonard Bogorad assured Ms. Mullinix after Mr. Bogorad's death that she could remain in the Lexington home until the renovations to the Apartment were completed.

-10-

55.    The Defendants have breached their obligations to Ms. Mullinix under the contract by, *inter alia*, selling the Lexington home and forcing Ms. Mullinix to vacate that home and rent other living quarters during the pendency of the renovations to the Apartment.

56.    As a result of the Defendants' breach of the contract, Ms. Mullinix has suffered monetary damages and harm in an amount, to be determined at trial, not less than $18,000.00.

## COUNT VI
### (Estoppel)

57.    Ms. Mullinix hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 56 of this Complaint.

58.    Mr. Bogorad committed to pay for the cost of the renovations to the Apartment, and the architect's fee, up to $400,000.00.

59.    Mr. Bogorad's commitment was made to induce Ms. Mullinix to sell her East 87th Street apartment and to purchase the Apartment. Mr. Bogorad expected, or should reasonably have expected, Ms. Mullinix to rely on his commitment.

60.    In reasonable reliance on Mr. Bogorad's commitment, Ms. Mullinix sold her East 87th Street apartment, purchased the Apartment and began making the necessary preparations for renovations, including hiring an architect and shopping for various components of the renovations. By his commitment to pay for the cost of the renovations to the Apartment, Mr. Bogorad induced Ms. Mullinix to sell her East 8th Street apartment, purchase the Apartment and to enter into contracts obligating her to pay the architect's fee and the costs of renovating the Apartment.

61.    As a result of her reasonable reliance on Mr. Bogorad's commitment, Ms. Mullinix has suffered damages of approximately $400,000.00. Injustice can be avoided only by

-11-

enforcement of Mr. Bogorad's commitment to pay for the cost of the renovations to the Apartment, up to $400,000.00.

## COUNT VII
### (Estoppel)

62.     Ms. Mullinix hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 61 of this Complaint.

63.     Mr. Bogorad committed to pay the monthly maintenance fees for the Apartment.

64.     Mr. Bogorad's commitment was made to induce Ms. Mullinix to sell her East 87th Street Apartment and to purchase the Apartment. Mr. Bogorad expected, or should reasonably have expected, Ms. Mullinix to rely on his commitment with respect to payment of the monthly maintenance fees.

65.     In reasonable reliance on Mr. Bogorad's commitment, Ms. Mullinix sold her East 87th Street apartment and purchased the Apartment. By his commitment to pay the monthly maintenance fees for the Apartment, Mr. Bogorad induced Ms. Mullinix to sell her East 87th Street apartment, to purchase the Apartment, and to enter into contracts obligating her to pay the architect's fee and the cost of renovating the Apartment.

66.     As a result of her reasonable reliance on Mr. Bogorad's commitment, Ms. Mullinix has suffered damages not less than $23,000 and will continue to suffer damages in the future in an amount equal to the monthly maintenance fees. Injustice can be avoided only by enforcement of Mr. Bogorad's commitment to pay the monthly maintenance fees for the Apartment.

## COUNT VIII
### (Estoppel)

67.    Ms. Mullinix hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 66 of this Complaint.

68.    Mr. Bogorad committed to pay one-half of the storage fees incurred as a result of the couple's decision to store their furniture and belongings pending the renovation of the Apartment.

69.    Mr. Bogorad's commitment to pay for one-half of the storage fees for the couple's belongings was made to induce Ms. Mullinix to sell her East 87th Street apartment, purchase the Apartment, and place her belongings in storage during the renovations to the Apartment. Mr. Bogorad expected, or should reasonably have expected, Ms. Mullinix to rely on his commitment with respect to payment for one-half of the total storage costs for their belongings.

70.    In reasonable reliance on Mr. Bogorad's commitment, Ms. Mullinix sold her East 87th Street apartment, purchased the Apartment, placed her belongings in storage and entered into a contract obligating her to pay the entire storage fee. By his commitment to pay for one-half of the storage costs, Mr. Bogorad induced Ms. Mullinix to sell her East 87th Street apartment, place her belongings in storage and enter into a contact to pay the entire storage fee.

71.    As a result of her reasonable reliance on Mr. Bogorad's commitment, Ms. Mullinix has suffered damages of at least $4,900.00. Injustice can be avoided only by enforcement of Mr. Bogorad's commitment to pay one-half of the total storage costs.

-13-

## COUNT IX

### (Estoppel)

72.    Ms. Mullinix hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 71 of this Complaint.

73.    Mr. Bogorad committed to pay for one-half of the capital gains tax consequences incurred by Ms. Mullinix relating to the sale of her East 87th Street apartment.

74.    Mr. Bogorad's commitment was made to induce Ms. Mullinix to sell her East 87th Street apartment. Mr. Bogorad expected, or should reasonably have expected, Ms. Mullinix to rely on his commitment with respect to payment for one-half of the capital gains tax consequences relating to sale of the East 87th Street apartment.

75.    In reasonable reliance on Mr. Bogorad's commitment, Ms. Mullinix sold her East 87th Street apartment.  By his commitment to pay for one-half of the capital gains tax consequences, Mr. Bogorad induced Ms. Mullinix to sell her East 87th Street apartment and use the proceeds from that sale to purchase the Apartment.

76.    As a result of her reasonable reliance on Mr. Bogorad's commitment, Ms. Mullinix' federal and state tax liabilities increased by $36,296 total due to a long term capital gain.  Injustice can be avoided only by enforcement of Mr. Bogorad's commitment to pay for one-half of these capital gains tax consequences incurred by Ms. Mullinix as a result of the sale of the East 87th Street apartment.

### COUNT X
### (Estoppel)

77.    Ms. Mullinix hereby repeats and incorporates herein the allegations set forth in Paragraphs 1 through 76 of the Complaint.

-14-

78.    Mr. Bogorad committed to Ms. Mullinix that she could live in the Lexington home until such time as the renovations to the Apartment were complete.

79.    Mr. Bogorad's commitment was made to induce Ms. Mullinix to sell her East 87th Street apartment, purchase the Apartment, move her belongings into storage, and enter into contracts obligating her to pay for the cost of the renovations to the Apartment. Mr. Bogorad expected, or should reasonably have expected, Ms. Mullinix to rely on his commitment that she could live in the Lexington home until such time as the renovations to the Apartment were complete.

80.    In reasonable reliance on Mr. Bogorad's promise, Ms. Mullinix sold her East 87th Street apartment, purchased the Apartment, moved her belongings into storage, and entered into the contracts referred to above. By his commitment to permit Ms. Mullinix to live in the Lexington home until the renovations to the Apartment were complete, Mr. Bogorad induced Ms. Mullinix to sell her East 87th Street apartment, use the proceeds from that sale to purchase the Apartment, move her belongings into storage, and enter into the contracts referred to above.

81.    In or around January and February 2004, the Defendants knew about this commitment and the Defendant Leonard Bogorad assured Ms. Mullinix after Mr. Bogorad's death that she could remain in the Lexington home until the renovations to the Apartment were completed.

82.    In reasonable reliance on the Defendants' promise, Ms. Mullinix remained in the Lexington home. Thereafter the Defendants informed Ms. Mullinix that they were selling the Lexington home and that she would have to move out. Since the renovations to the Apartment were not complete at that time and the Apartment was not habitable, Ms. Mullinix was forced to rent a furnished apartment until the renovations to the Apartment were completed.

83.    As a result of her reasonable reliance on Mr. Bogorad's and the Defendants'
commitments, Ms. Mullinix has suffered damages in excess of $18,000.00, the amount of money
Ms. Mullinix was forced to spend for alternative housing arrangements pending the completion
of the renovations to the Apartment.

## PRAYERS FOR RELIEF

WHEREFORE, Ms. Mullinix respectfully requests that this Court:

(a)    enter judgment in favor of Ms. Mullinix and against the Defendants under each
Count of the Complaint;

(b)    order the Defendants to make all payments to Ms. Mullinix consistent with and
pursuant to the terms of her contracts with Mr. Bogorad;

(c)    award Ms. Mullinix monetary damages in an amount to be determined plus
interest and costs, under each Count of the Complaint; and

(d)    grant such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Ms. Mullinix demands a trial by jury on all matters in the Complaint triable by a jury.

Respectfully submitted,

KATHLEEN P. MULLINIX,
By her attorneys,

Larry C. Kenna (BBO # 267760)
Michelle L. Dineen Jerrett (BBO #634930)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, Massachusetts 02109
Tel: (617) 248-5000

Date: December 22, 2004

-16-

3775948v2

%JS 44   (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Mullinix, Kathleen P.

**DEFENDANTS**

Bogorad-Gross, Kiki and Bogorad, Leonard P., as they are Executors of the will of Lawrence Bogorad.

(b) County of Residence of First Listed Plaintiff  New York County (NY)
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  Middlesex County (MA)
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

04 12684 WGY

(c) Attorney's (Firm Name, Address, and Telephone Number)
Larry C. Kenna, Esq.
Choate, Hall & Stewart
53 State Street, Boston, MA 02109
(617) 248-5000

Attorneys (If Known)
Matthew Berlin, Esq.
Rubin and Rudman LLP
50 Rowes Wharf, Boston, MA 02110-3319
(617) 330-7000

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☐ 3   Federal Question (U.S. Government Not a Party)
- ☒ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☒ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury— Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 1332 - Breach of contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE  12/22/04

SIGNATURE OF ATTORNEY OF RECORD
*Larry Kenna*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **Title of case (name of first party on each side only)**

   Kathleen P. Mullinix v. Kiki Bogorad-Gross, et al, Executors of the Estate of Lawrence Bogorad

2. **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).**

   ___   I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___   II.     195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
                 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

   _X_   III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                 380, 385, 450, 891.

   ___   IV.     220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                 690, 810, 861-865, 870, 871, 875, 900.

   ___   V.      150, 152, 153.

3. **Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

4. **Has a prior action between the same parties and based on the same claim ever been filed in this court?**

   YES ☐    NO ☒

5. **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)**

   YES ☐    NO ☒

   **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**

   YES ☐    NO ☐

6. **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**

   YES ☐    NO ☒

7. **Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).**

   YES ☒    NO ☐

   A.    If yes, in which division do all of the non-governmental parties reside?

         Eastern Division ☒          Central Division ☐          Western Division ☐

   B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,  residing in Massachusetts reside?

         Eastern Division ☐          Central Division ☐          Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME __Larry C. Kenna (BBO# 267760)__

ADDRESS _____ Exchange Place, 53 State Street, Boston, MA 02109

TELEPHONE NO. _____ (617) 248-5000

(Coversheetlocal[1].wpd - 10/17/02)