UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KATHLEEN P. MULLINIX, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 04-12684-WGY |
| KIKI BOGORAD-GROSS and LEONARD P. BOGORAD, as They Are Executors of the Will of Lawrence Bogorad, | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR RECONSIDERATION

Pursuant to Local Rule 7.1(B)(3) and the May 3, 2006 Order of this Court, Defendants Leonard Bogorad and Kiki Bogorad-Gross, as Executors of the Will of Lawrence Bogorad (collectively, "Defendants"), by their attorneys, Sullivan & Worcester LLP, respectfully request that this Court reconsider its Order allowing Plaintiff's motion to strike Defendant's expert witness without prejudice to Defendants.  In its order, this Court invited the Defendants to move for reconsideration and support such motion with the proposed expert's report, which is attached hereto as **Exhibit A.**  As shown in the report and substantiated therein in painstaking detail, it is the opinion of Mr. Christopher Devine, a qualified, certified, and judicially recognized professional real estate appraiser in New York, that the current fair market value of the Plaintiff's Fifth Avenue cooperative apartment that is the principal subject of this case, is $2,100,000.  The additional information required by Fed. R. Civ. P. 26(a)(2)(B) is attached hereto as **Exhibit B.**  Pursuant to the May 3, 2006, Order, the Defendants hereby offer to produce Mr. Devine for deposition pursuant to Fed. R. Civ. P. 26(b)(4) at any reasonable time of the Plaintiff's choosing.

KIKI BOGORAD-GROSS and
LEONARD P. BOGORAD, as
they are the Executors of the Will
of Lawrence Bogorad,
By their attorneys,

May 10, 2006

/s/  Lisa M. Hodes
Larry L. Varn (BBO # 508130)
Lisa M. Hodes (BBO # 660444)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
lvarn@sandw.com
lhodes@sandw.com

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 10, 2006.

/s/  Lisa M. Hodes

{B0517687; 1}

# EXHIBIT A

# FannieMae

MITCHELL, MAXWELL & JACKSON, INC.

## Individual Cooperative Interest Appraisal Report

MULLINIX v. BOGORAD

File No. P601535

### SUBJECT

| | |
|---|---|
| Property Address 1050 FIFTH AVENUE | City NEW YORK   State NY   Zip Code 10028 |
| Legal Description BLOCK: 1498  LOT:01 | County NEW YORK   Unit No. 2D |
| Project Name/Phase No. 1050 5TH AVE INC. | Map Reference 2, D-15   Census Tract 0150.01 |
| Borrower N/A | Current Owner MULLINIX v. BOGORAD-GROSS |

Current Occupant (Indicate One): [x] Owner  [ ] Tenant (Market Rent)  [ ] Tenant (Regulated Rent)  [ ] Vacant
Data Source INSPECTION/CONTRACT

Sales Price $ N/A   Date of Sale N/A   Description and $ amount of loan charges/concessions to be paid by seller UNKNOWN
Lender/Client SULLIVAN & WORCESTER LLP   Address ONE POST OFFICE SQUARE, ZONE 10, BOSTON, MA 02109
Appraiser CHRISTOPHER DEVINE   Address 546 5TH AVENUE, 9TH FLR, NEW YORK NY 10036

### NEIGHBORHOOD

| Location | [x] Urban | [ ] Suburban | [ ] Rural | Predominant cooperative occupancy | Cooperative housing PRICE $(000) | AGE (yrs) | Predominant condominium occupancy | Condominium housing PRICE $(000) | AGE (yrs) |
|---|---|---|---|---|---|---|---|---|---|
| Built up | [x] Over 75% | [ ] 25-75% | [ ] Under 25% | [x] Owner | 150 Low 15 | | [ ] Owner | 150 Low NEW | |
| Growth rate | [ ] Rapid | [x] Stable | [ ] Slow | [ ] Tenant | 10000+ High 100+ | | [ ] Tenant | 10000+ High 100+ | |
| Property values | [ ] Increasing | [x] Stable | [ ] Declining | [ ] Vacant (0-5%) | | | [ ] Vacant (0-5%) | | |
| Demand/supply | [ ] Shortage | [x] In balance | [ ] Over supply | [ ] Vacant (over 5%) 2 MILL. | Predominant 40 | [x] Vacant (0-5%) | Predominant 2.5 MILL. | |
| Marketing time | [x] Under 3 mos. | [ ] 3-6 mos. | [ ] Over 6 mos. | | | | [ ] Vacant (over 5%) | | |

Present land use %: One Family 2, 2-4 Family 3, Apartments 10, Condominium 5, Cooperative 70, Commercial 10, Industrial 0, Other 10.
Land use change: [ ] Not likely  [x] Likely  [ ] In process to 100% BUILT UP

Note: Race and the racial composition of the neighborhood are not appraisal factors.
Neighborhood boundaries and characteristics: THE SUBJECT IS LOCATED IN THE UPPER EAST SIDE NEIGHBORHOOD OF MANHATTAN. THIS AREA IS BOUNDED BY 96TH STREET TO THE NORTH, 59TH STREET TO THE SOUTH, CENTRAL PARK TO THE WEST AND THE EAST RIVER TO THE EAST.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): THE AREA IS PROXIMATE TO EMPLOYMENT CENTERS, HOUSES OF WORSHIP, LOCAL SHOPPING AND AMENITIES. PROPERTIES ARE GENERALLY WELL MAINTAINED. NEIGHBORHOOD TRENDS ARE WELL ESTABLISHED. MARKETABILITY IS RATED GOOD.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time - - such as data on competitive properties for sale in the project and neighborhood, description of the prevalence of sales and financing concessions, etc.): MARKET CONDITIONS IMPROVED FROM 1994 TO 12/2004 AT A RATE OF 5-20% PER ANNUM. CURRENT DATA INDICATES PRICE STABILITY. SUPPLY AND DEMAND ARE GENERALLY IN BALANCE. MARKETING TIME FOR APPROPRIATELY PRICED PROPERTIES IS 1-3 MONTHS. MOST SALES ARE EITHER CONVENTIONALLY FINANCED OR ALL CASH. INTEREST BUYDOWNS AND SALES CONCESSIONS ARE NOT COMMON.

### SITE

Specific zoning classification and description R-10 RESIDENTIAL PERMITTED
Zoning compliance [x] Legal  [ ] Legal nonconforming (Grandfathered use)  [ ] Illegal  [ ] No zoning
Highest & best use as improved [x] Present use  [ ] Other use (explain)

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity | [x] | | Street | MACADAM | [x] | [ ] |
| Gas | [x] | | Curb/gutter | CONCRETE | [x] | [ ] |
| Water | [x] | | Sidewalk | CONCRETE | [x] | [ ] |
| Sanitary sewer | [x] | | Street lights | OVERHEAD | [x] | [ ] |
| Storm sewer | [x] | | Alley | NONE | [ ] | [ ] |

| | |
|---|---|
| Topography | LEVEL ON GRADE |
| Size | TYPICAL |
| Density | TYPICAL |
| View | AVERAGE |
| Drainage | APPEARS ADEQUATE |
| Apparent easements | NONE NOTED |
| FEMA Special Flood Hazard Area | [ ] Yes [x] No |
| FEMA Zone C   Map Date 07/94 | |
| FEMA Map No. 360497-0032B | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): NO ADVERSE EASEMENTS, ENCROACHMENTS, OR CONDITIONS OBSERVED. SMSA: 5600

### PROJECT IMPROVEMENTS

| GENERAL DESCRIPTION | | | | EXTERIOR DESCRIPTION | |
|---|---|---|---|---|---|
| No. of Units | 90 | Existing/Proposed | EXISTING | Exterior Walls | BRICK |
| No. of Buildings | 1 | Age (Yrs.) | 1950 | Roof Surface | TAR |
| No. of Stories | 20 | Condition | GOOD | Window Type | DBL-HUNG |
| No. of Elevator(s) | 4 | If Conversion, Orig. use | RENTAL | | |
| | | Date of Conversion | 04/25/58 | | |

Total No. Parking NONE
Ratio (spaces/units) N/A
Type of Parking N/A
Guest Parking (Y/N) NONE

Project Type: [x] Primary Residence  [ ] Second Home or Recreational  [ ] Other (Describe)
Does the cooperative project include or own any commercial units? [x] Yes  [ ] No   If Yes, describe units 1 GARAGE.
Condition of the project, depreciation, repairs needed, remodeling/modernization, quality of construction, unit mix, appeal to market, etc.: PROJECT APPEARS TO BE PROPERLY MAINTAINED. NO DEFERRED MAINTENANCE NOTED.

Describe the project amenities, security features, recreational facilities, etc.: TYPICAL COMMON ELEMENTS, DOORMAN.

Are the units and project amenities completed? [x] Yes  [ ] No   If No, describe status of completion: N/A

### SUBJECT UNIT

Finished area above grade contains: 5.5 Rooms; 2 Bedroom(s); 2 Bath(s); 1,698+/- Square Feet of Gross Living Area Per Unit
Finished area below grade contains: 0 Rooms; 0 Bedroom(s); 0 Bath(s); 0 Square Feet of Gross Living Area Per Unit

| GENERAL DESCRIPTION | | HEATING | | KITCHEN EQUIP. | | AMENITIES | | CAR STORAGE | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floor No. | 15 | Type | STEAM | Refrigerator | [x] | Fireplace(s) # | [ ] | None | [x] | Roof | [U] |
| No. of Levels | 1 | Fuel | OIL | Range/Oven | [x] | Patio | [ ] | Garage | [ ] | Ceiling | [N] |
| INTERIOR | Materials/Condition | Condition | AVG | Disposal | [ ] | Balcony | [ ] | No. of Cars | | Walls | [N] |
| Flooring | HARDWOOD/VGD | COOLING | | Dishwasher | [x] | Deck | [ ] | Open | [ ] | Floor | [N] |
| Walls | GYPSUM/VGD | Central | UNITS | Fan/Hood | [x] | Porch | [ ] | No. of Cars | | None | [ ] |
| Bath Floor | MARBLE/VGD | Other | N/A | Microwave | [x] | Terrace | [ ] | Parking Space No. N/A | | Unknown | [W] |
| Bath Wainscot | MARBLE/VGD | Condition | AVG | Washer/Dryer | [ ] | | | Assigned/Owned N/A | | | |

Condition of the unit, depreciation, repairs needed, quality of construction, remodeling/modernization, additional features (special energy efficient items, etc.): THE SUBJECT IS PHYSICALLY AND FUNCTIONALLY ADEQUATE "AS IS". NO MAJOR REPAIRS OR MODERNIZATION ARE NECESSARY. THE SUBJECT IS IN VERY GOOD CONDITION OVERALL WITH RENOVATED KITCHEN AND BATHS.

### COMMENTS

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present on the site, in the project improvements, in the unit, or in the immediate vicinity of the subject property: NONE NOTED.

Produced using ACI software, 800.234.8727 www.aciweb.com
Fannie Mae Form 1075  July 96

CONFIDENTIAL
DEVINE00001

MITCHELL, MAXWELL & JACKSON, INC.

## Individual Cooperative Interest Appraisal Report

MULLINIX v. BOGORAD

File No. P601535

| | |
|---|---|
| The number of shares attributable to the unit | 610 |

Monthly Maintenance Fee (or Monthly Assessment Unit Charge) $ _1,859.73_    Monthly Maintenance Fee (or Monthly Assessment) $ _1,859.73_

Annual Maintenance Fee (or assessment charge) $ 1,859.73   per mo. x 12 = $ _22,317_   per yr.

Note the *pro rata* share of the project blanket financing that is attributable to the unit: N/A

Note the *pro rata* share of each lien that is attributable to the unit: N/A     13.14

Compared to other competitive projects of similar quality and design, the subject unit charge appears: ☐ High   ☒ Typical   ☐ Low

Comment on compatibility to other projects in the market area: TYPICAL FOR THE MARKET.

### PROJECT ANALYSIS

Utilities included in unit charge: ☐ None ☒ Heat ☐ Air Conditioning ☐ Electricity ☐ Gas ☒ Water ☒ Sewer

Comment on compatibility to other projects in the market area: TYPICAL FOR MARKET

Note any fees, other than regular monthly maintenance fees (or monthly assessments, such as special assessments, etc.), for use of facilities and comment on compatibility to other projects in the market area: NONE NOTED.

Is the project subject to ground rent? ☐ Yes ☒ No   If yes, $ _____ N/A per year and describe terms:

INSIGNIA RESIDENTIAL GROUP   (212) 350-2821

Cooperative Project Management: ☒ Management Agent (Identify) # SEE ABOVE ___ ☐ Sponsor/Developer ☐ Cooperative Board

Quality of management and its enforcement of Rules and Regulations based on general appearance of project appears: ☒ Adequate ☐ Inadequate

Information known to the appraiser about the project that would affect marketability (if none, so state): NONE KNOWN

### DATA SOURCE

THE APPRAISER'S DATA SOURCE(S) FOR THE FOLLOWING COOPERATIVE PROJECT INFORMATION IS THE: ☒ MANAGEMENT AGENT,
☐ COOPERATIVE BOARD, ☐ SPONSOR/DEVELOPER, AND/OR ☒ OTHER (DESCRIBE) COOPERATIVE DATA CORP
IDENTIFY THE DATA SOURCE(S) BELOW BY NAME, TITLE, COMPANY, ADDRESS AND TELEPHONE NUMBER:

INSIGNIA RESIDENTIAL GROUP   (212) 350-2821
COOPERATIVE DATA CORP   (212) 843-0777

### COOPERATIVE PROJECT INFORMATION

Number of shares issued and outstanding for the Cooperative Corporation: _62,695_

Is the Sponsor or Builder/Developer in Control of the Cooperative Corporation? ☐ Yes ☒ No

Is the Sponsor or Builder/Developer offering any types of sales or financing concessions (such as, a maintenance fee rebate or credit, etc.) with the transfer of units in the project? ☐ Yes ☒ No   If Yes, describe: N/A

Are any of the project facilities leased to or by the Cooperative Corporation? ☐ Yes ☒ No   If yes, describe which facilities and note any fees for their use: N/A

Is the subject project the recipient of any tax abatements or exemptions? ☐ Yes ☒ No   If Yes, note their remaining term, provisions for escalation of real estate taxes, and dollar amount: NONE NOTED

Are any of the units in the project subject to a stock transfer fee (such as, waiver of option fees, flip taxes, etc.)? ☐ Yes ☒ No   If Yes, describe: N/A

How many owners of units in the project are two or more months delinquent in the payment of their financial obligations to the Cooperative Corporation? UNKNOWN

Does any single entity (including the same individual, investor group, partnership, or corporation, as well as the developer or sponsor) own more than 10% of the stock or shares in the Cooperative Corporation and the related occupancy rights? ☐ Yes ☒ No   If Yes, describe: N/A

### PROJECT BLANKET FINANCING

| Lien Priority | FIRST | SECOND | OTHER (N/A ___ ) |
|---|---|---|---|
| Lien Type (Mortgage, Line of Credit, Wraparound, Etc.) | NO MORTGAGE | N/A | |
| Mortgage Balance | $ ____ | $ ____ | $ ____ |
| Balloon Mortgage (Y/N) | ____ | ____ | ____ |
| Remaining Term | ____ | ____ | ____ |
| Monthly Payment | $ ____ | $ ____ | $ ____ |
| Interest Rate | ____ % | ____ % | ____ % |
| Fixed/Variable Rate | ____ | ____ | ____ |
| Lienholder | ____ | ____ | ____ |

### PROJECT OCCUPANCY STATUS

| Unit Ownership and Occupancy | # of Units | % of Project |
|---|---|---|
| Owner Occupied | 90 | 100.00 |
| Sponsor/Developer-Vacant | 0 | 0.00 |
| Sponsor/Developer-Tenant Occupied (Market Rent) | 0 | 0.00 |
| Sponsor/Developer-Tenant Occupied (Regulated Rent) | 0 | 0.00 |
| Investor-Vacant | 0 | 0.00 |
| Investor-Tenant Occupied (Market Rent) | 0 | 0.00 |
| Investor-Tenant Occupied (Regulated Rent) | 0 | 0.00 |
| Total | 90 | 100.00 |

CONFIDENTIAL
DEVINE00002

MITCHELL, MAXWELL & JACKSON, INC.

## Individual Cooperative Interest Appraisal Report

MULLINIX v. BOGORAD

File No. P601535

THE SALES PRICE REPORTED FOR THE SUBJECT PROPERTY AND THE COMPARABLE SALES IN THE SALES COMPARISON ANALYSIS ADJUSTMENT GRID SHOWN BELOW DO NOT INCLUDE THE PRO RATA SHARE OF THE BLANKET MORTGAGE(S) ON THE REAL ESTATE.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 1050 FIFTH AVENUE 15B | 1050 FIFTH AVENUE 5C | | 1050 FIFTH AVENUE 9/10A | | 45 EAST END AVENUE 14G/H | |
| Project Name | 1050 5TH AVE INC. | 1050 5TH AVE INC. | | 1050 5TH AVE INC. | | EAST END OWNERS | |
| Proximity to Subject | | SAME BUILDING | | SAME BUILDING | | .6 MILE | |
| Sales Price | $ N/A | $ | 1,845,000 | $ | 1,695,000 | $ | 1,740,000 |
| Price/Gross Liv. Area | $ 0.00 ☑ | $ 1,396.67 ☑ | | $ 1,471.35 ☑ | | $ 1,111.82 ☑ | |
| Data and/or Verification Sources | INSPECTION | LISTING AGT/BROKER | | LISTING AGT/BROKER | | INSPECTION/LISTING AGT | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-)$ Adjustment | DESCRIPTION | + (-)$ Adjustment | DESCRIPTION | + (-)$ Adjustment |
| Sales or Financing Concessions | | NONE KNOWN | | NONE KNOWN | | NONE KNOWN | |
| Date of Sale/Time | | 11/05 Clsd | NO ADJ | 11/05 Clsd | NO ADJ | 11/05 CLSD | NO ADJ |
| Location | VERY GOOD | SIMILAR | | SIMILAR | | SIMILAR | |
| View | GOOD | S.INF (5%) | 92,250 | SIMILAR | | INF(10%) | 174,000 |
| Floor Location | 15 FL | 5 FL | +90,000 | 9/10 FL. | +40,000 | 14 FL | +10,000 |
| Monthly Assessment | 1,859.73 | 1,391.00 | NO ADJ | 1,319.00 | NO ADJ | 2,145.76 | +21,500 |
| Project Amenities (Rec. Facilities, etc.) | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Project Security Features | DOORMAN | DOORMAN | | DOORMAN | | DOORMAN | |
| Design and Appeal Age | POSTWAR/AVG 1960 | POSTWAR/AVG 1960 | | POSTWAR/AVG 1960 | | POSTWAR/AVG 1951 | NO ADJ |
| Condition | VERY GOOD | SIMILAR | | INF(10%) | 169,500 | SIMILAR | |
| Remodeling (Kitchen, Baths, etc.) | RENO KITCHEN/ BATHS | SIM KITCHEN/ BATHS | | INF KITCHEN/ BATHS | +75,000 | SIM KITCHEN/ BATHS | |
| Above Grade Room Count and Gross Living Area | Total 5.5 / Bdrms 2.0 / Baths 2.0 / 1698+/- Sq.Ft. | Total 4.0 / Bdrms 2.0 / Baths 2.0 / 1321+/- Sq.Ft. | NO ADJ 226,200 | Total 5.0 / Bdrms 2.0 / Baths 2.5 / 1152+/- Sq.Ft. | -25,000 327,600 | Total 6.0 / Bdrms 2.0 / Baths 3.0 / 1565+/- Sq.Ft. | -50,000 79,800 |
| Below Grade | NONE | NONE | | NONE | | NONE | |
| Functional Utility | SIMPLEX/GOOD | SIMPLEX/GOOD | | DUPLEX/GOOD | NO ADJ | SIMPLEX/GOOD | |
| Heating/Cooling | STEAM/UNITS | SIMILAR | | SIMILAR | | SIMILAR | |
| Energy Efficient Items | PER CODE | PER CODE | | PER CODE | | PER CODE | |
| Car Storage | NONE | NONE | | NONE | | NONE | |
| Balcony, Patio, | NONE | NONE | | NONE | | NONE | |
| Fireplace(s), etc. | NONE | NONE | | NONE | | NONE | |
| Net Adj. (total) | | ☑ + ☐ - $ 408,450 | | ☑ + ☐ - $ 587,100 | | ☑ + ☐ - $ 235,300 | |
| Adjusted Sales Price of Comparable | | $ 2,253,450 | | $ 2,282,100 | | $ 1,975,300 | |

Comments on Sales Comparison (including the subject property's compatibility to other cooperative units in the neighborhood, etc.): SEE ADDENDUM AND ADDITIONAL COMPARABLE(S)

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | NONE NOTED IN THREE YEARS MGT AGENT | NONE NOTED IN THREE YEARS MGT AGENT | NONE NOTED IN THREE YEARS MGT AGENT | NONE NOTED IN THREE YEARS MGT AGENT |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: No listing, agreement, or option was revealed on the subject property during the investigation.

INDICATED VALUE BY SALES COMPARISON APPROACH ............................................................ $ 2,100,000

INDICATED VALUE BY INCOME APPROACH (Attach, if applicable) ............................................... $ N/A

INDICATED VALUE BY COST APPROACH (Attach, if applicable) ................................................. $ N/A

This appraisal is made ☑ "as is" ☐ subject to the repairs, alterations, inspections, or conditions listed below ☐ subject to completion per plans and specifications.

Conditions of Appraisal: THIS APPRAISAL IS MADE "AS IS" AND IS INTENDED FOR MATRIMONIAL PURPOSES ONLY.

Final Reconciliation: SEE ATTACHED ADDENDUM.

The purpose of this appraisal is to estimate the market value of the cooperative interest that is the subject of this report (which is the equity interest in the cooperative shares exclusive of the project's blanket financing), based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised     06/93     ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE COOPERATIVE INTEREST (THE COOPERATIVE SHARES OR OTHER EVIDENCE OF AN OWNERSHIP INTEREST IN THE COOPERATIVE CORPORATION AND THE ACCOMPANYING OCCUPANCY RIGHTS) THAT IS THE SUBJECT OF THIS REPORT, AS OF     03/31/2006     (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $     2,100,000     . I (WE) CERTIFY THAT THE PRO RATA SHARE OF THE BLANKET MORTGAGE(S) ON THE REAL ESTATE HAS NOT BEEN ADDED TO THE MARKET VALUE ESTIMATE OF THE COOPERATIVE INTEREST.

APPRAISER:

Signature: 

Name CHRISTOPHER DEVINE

Date Report Signed 04/06/2006

State Certification # 45-39270

Or State License #

State NY

SUPERVISORY APPRAISER (ONLY IF REQUIRED):

Signature: 

Name STEVEN KNOBEL

Date Report Signed 04/06/2006

State Certification # 45-18006

Or State License #

State NY

☐ Did ☑ Did Not Inspect Property

CONFIDENTIAL
DEVINE00003

MITCHELL, MAXWELL & JACKSON, INC.

## Individual Cooperative Interest Appraisal Report

MULLINIX v. BOGORAD

File No. P601535

THE SALES PRICE REPORTED FOR THE SUBJECT PROPERTY AND THE COMPARABLE SALES IN THE SALES COMPARISON ANALYSIS ADJUSTMENT GRID SHOWN BELOW DO NOT INCLUDE THE PRO RATA SHARE OF THE BLANKET MORTGAGE(S) ON THE REAL ESTATE.

| ITEM | SUBJECT | COMPARABLE NO. 4 | | COMPARABLE NO. 5 | | COMPARABLE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address and | 1050 FIFTH AVENUE | 870 FIFTH AVENUE | | 1050 FIFTH AVENUE | | NOT USED | |
| Unit # 15B | | 6F | | 8C | | | |
| Project Name | | 870 FIFTH AVE CORP | | | | | |
| Proximity to Subject | 1050 5TH AVE INC. | .8 MILE | | 1050 5TH AVE INC. | | | |
| Sales Price | $ N/A | | $ 2,100,000 | SAME BUILDING | $ 1,699,000 | | $ |
| Price/Gross Liv. Area | $ 0.00 ☑ | $ 1,574.21 ☑ | | $ 1,286.15 ☑ | | $ ☑ | |
| Data and/or | INSPECTION | LISTING AGT/BROKER | | LISTING BROKER | | | |
| Verification Sources | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sales or Financing | | NONE | | NONE | | | |
| Concessions | | KNOWN | | KNOWN | | | |
| Date of Sale/Time | | 07/05 Clsd. 2% | 42,000 | 02/06 Listing 5% | -84,950 | | |
| Location | VERY GOOD | SUP(10%) | -210,000 | SIMILAR | | | |
| View | GOOD | S INF (5%) | 105,000 | S INF (5%) | 84,950 | | |
| Floor Location | 15 FL | 6 FL | +80,000 | 8 FL | +60,000 | | |
| Monthly Assessment | 1,859.73 | 2,029.00 | +28,400 | 1,441.00 | NO ADJ | | |
| Project Amenities | TYPICAL | TYPICAL | | TYPICAL | | | |
| (Rec. Facilities, etc.) | | | | | | | |
| Project Security | DOORMAN | DOORMAN | | DOORMAN | | | |
| Features | | | | | | | |
| Design and Appeal | POSTWAR/AVG | POSTWAR/AVG | | POSTWAR/AVG | | | |
| Age | 1960 | 1949 | NO ADJ | 1960 | | | |
| Condition | VERY GOOD | SIMILAR | | S INF(5%) | 84,950 | | |
| Remodeling | RENO KITCHEN/ | SIM KITCHEN/ | | INF KITCHEN/ | | | |
| (Kitchen, Baths, etc.) | BATHS | BATHS | | BATHS | +75,000 | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count and | 5.5  2.0  2.0 | 5.0  2.0  2.0 | NO ADJ | 4  2  2.0 | NO ADJ | | |
| Gross Living Area | 1698+/- Sq.Ft. | 1334+/- Sq.Ft. | 218,400 | 1321+/- Sq.Ft. | 226,200 | Sq.Ft. | 0 |
| Below Grade | NONE | NONE | | NONE | | | |
| Functional Utility | SIMPLEX/GOOD | SIMPLEX/GOOD | | SIMPLEX/GOOD | | | |
| Heating/Cooling | STEAM/UNITS | SIMILAR | | SIMILAR | | | |
| Energy Efficient Items | PER CODE | PER CODE | | PER CODE | | | |
| Car Storage | NONE | NONE | | NONE | | | |
| Balcony, Patio, | NONE | NONE | | NONE | | | |
| Fireplace(s), etc. | NONE | NONE | | NONE | | | |
| Net Adj. (total) | | ☒ + ☐ - ☐ $ | 263,800 | ☒ + ☐ - ☐ $ | 446,150 | ☒ + ☐ - ☐ $ | 0 |
| Adjusted Sales Price | | | | | | | |
| of Comparable | | $ 2,363,800 | | $ 2,145,150 | | $ | 0 |

Comments on Sales Comparison (including the subject property's compatibility to other cooperative units in the neighborhood, etc.): THE ABOVE WERE PROVIDED AS ADDITIONAL SUPPORT FOR THE FINAL VALUE ESTIMATE DERIVED EARLIER IN THIS REPORT.

| ITEM | SUBJECT | COMPARABLE NO. 4 | COMPARABLE NO. 5 | COMPARABLE NO. 6 |
|---|---|---|---|---|
| Date, Price and Data | NONE NOTED | NONE NOTED | NONE NOTED | |
| Source for prior sales | IN THREE YEARS | IN THREE YEARS | IN THREE YEARS | |
| within year of appraisal | MGT AGENT | MGT AGENT | MGT AGENT | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:

Produced using ACI software, 800.234.8727 www.aciweb.com

Fannie Mae Form 1075   July 96

CONFIDENTIAL
DEVINE00004

MITCHELL, MAXWELL & JACKSON, INC.

# Request For Cooperative Project Information

MULLINIX v. BOGORAD

File No.  P601535

To: _____
Address: _____
Individual Loan Information is as follows:
Borrower(s) Name:  N/A
Cooperative Project Name:  1050 5TH AVE INC.
Property Address and Unit #:  1050 FIFTH AVENUE

This form was developed to facilitate the collection of cooperative project information for appraisers and lenders by standardizing the reporting format because the availability of financing often depends on the management agent's, the cooperative board's, or the project sponsor's/developer's willingness to provide re-quested information (for underwriting consideration) in a timely manner.  Either the management agent, the cooperative board, or the project sponsor/developer can complete this form.

Please complete this form by answering all questions or by indicating "Unknown" or "N/A" (Not Applicable).  Do not limit your responses to the spaces provided; attach an addendum, if necessary.  If you have any questions or need any assistance, please contact the requestor indicated below.  This form includes the Cooperative Project information that most lenders, investors, and mortgage insurers require for evaluating project eligibility.  We appreciate your cooperation in providing the requested information.

Requestor (Signature): _____
Name: _____
Title: _____
Company Name: _____
Address: _____
Telephone Number: _____

How many units in the project have been sold within the last year? _____    Attach list of comparable sales for the subject unit indicating, at least, the following:  Address, Number of Shares, Contract Date, Closing or Settlement Date, Seller, Lender, Size, Condition, and Monthly Maintenance Fees.
Does the cooperative project include or own any commercial units?   [X] Yes   [ ] No   If Yes, describe units  1 GARAGE.
Number of shares issued and outstanding for the Cooperative Corporation:  62,695
Is the Sponsor or Builder/Developer in Control of the Cooperative Corporation?   [ ] Yes   [X] No
Is the Sponsor or Builder/Developer offering any types of sales or financing concessions (such as, a maintenance fee rebate or credit, etc.) with the transfer of units in the project?   [ ] Yes   [X] No   If Yes, describe:  N/A

Are any of the project facilities leased to or by the Cooperative Corporation?   [ ] Yes   [X] No   If Yes, describe which facilities and note any fees for their use:
N/A

Is the subject project the recipient of any tax abatements or exemptions?   [ ] Yes   [X] No   If Yes, note their remaining term, provisions for escalation of real estate taxes, and dollar amount:   NONE NOTED

Are any of the units in the project subject to a stock transfer fee (such as, waiver of option fees, flip taxes, etc.)?   [ ] Yes   [X] No   If Yes, describe:
N/A

How many owners of units in the project are two or more months delinquent in the payment of their financial obligations to the Cooperative Corporation?   UNKNOWN
Does any single entity (including the same individual, investor group, partnership, or corporation, as well as the developer or sponsor) own more than 10% of the stock or shares in the Cooperative Corporation and the related occupancy rights?   [ ] Yes   [X] No   If Yes, describe:  N/A

## PROJECT BLANKET FINANCING

| Lien Priority | FIRST | SECOND | OTHER (N/A_____) |
|---|---|---|---|
| Lien Type (Mortgage, Line of Credit, Wraparound, Etc.) | NO MORTGAGE | N/A | |
| Mortgage Balance | $_____ | $_____ | $_____ |
| Balloon Mortgage (Y/N) | _____ | _____ | _____ |
| Remaining Term | _____ | _____ | _____ |
| Monthly Payment | $_____ | $_____ | $_____ |
| Interest Rate | _____% | _____% | _____% |
| Fixed/Variable Rate | _____ | _____ | _____ |
| Lienholder | _____ | _____ | _____ |

## PROJECT OCCUPANCY STATUS

| Unit Ownership and Occupancy | # of Units | % of Project |
|---|---|---|
| Owner Occupied | 90 | 100.00 |
| Sponsor/Developer-Vacant | 0 | 0.00 |
| Sponsor/Developer-Tenant Occupied (Market Rent) | 0 | 0.00 |
| Sponsor/Developer-Tenant Occupied (Regulated Rent) | 0 | 0.00 |
| Investor-Vacant | 0 | 0.00 |
| Investor-Tenant Occupied (Market Rent) | 0 | 0.00 |
| Investor-Tenant Occupied (Regulated Rent) | 0 | 0.00 |
| Total | 90 | 100.00 |

I, THE UNDERSIGNED, AS AN AUTHORIZED REPRESENTATIVE OF THE (INDICATE ONE):   [ ] MANAGEMENT AGENT,   [ ] COOPERATIVE BOARD,   [ ] SPONSOR/DEVELOPER.
OR   [ ] OTHER (DESCRIBE) _____ , CERTIFY THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ABOVE INFORMATION AND STATEMENTS ON THIS FORM (AND THE ATTACHMENTS, IF APPLICABLE) ARE TRUE AND CORRECT.
Signature of Authorized Representative _____
Name of Authorized Representative _____
Name of Organization _____
Address _____
Telephone Number _____
Date _____

Produced using ACI software, 800-234-8727 www.aciweb.com.    Fannie Mae Form 1075   July 96

MITCHELL, MAXWELL & JACKSON INC.

CONFIDENTIAL
DEVINE00005

## ADDENDUM

| | |
|---|---|
| Borrower: N/A | File No.: P601535 |
| Property Address: 1050 FIFTH AVENUE | Case No.: MULLINIX v. BOGORAD-GROSS |
| City: NEW YORK    State: NY    Zip: 10028 | |
| Lender: SULLIVAN & WORCESTER LLP | |

**HISTORICAL BACKGROUND:**

THE MID 1980'S SAW A MASSIVE INCREASE IN HOUSING SUPPLY DRIVEN BY A STRONG ECONOMY AND GENEROUS TAX INCENTIVES. THE END OF THE DECADE BROUGHT CHANGES IN THE TAX LAWS AFFECTING REAL ESTATE INVESTMENTS, THE STOCK MARKET CRASH IN 1987, THE GULF WAR AND A WEAKENING OF THE ECONOMY. THE COMBINATION OF THESE FACTORS CAUSED MARKET WIDE RECESSION AND A PERIOD OF DECLINING VALUES. FROM 1988 TP 1992 THE REAL ESTATE MARKET WENT THROUGH A RE-ADJUSTMENT. NEW CONSTRUCTION NEARLY DISAPPEARED AND VALUES DECLINED 10 -20% PER ANNUM WHILE THE MARKET STRUGGLED TO FIND EQUILIBRIUM.

DECLINING INTEREST RATES, A LACK OF NEW INVENTORY AND THE GENERAL RECOVERY OF THE LOCAL AND NATIONAL ECONOMIES STABILIZED THE MARKET BETWEEN 1993 AND 1994. GENERAL MARKET CONDITIONS STEADILY IMPROVED UNTIL MID 1998 WITH VARIOUS SUB-SECTORS OF THE HOUSING MARKET RECOVERING IN WAVES. THE EPICENTER OF THE RECOVERY WAS THE ARCHITECTURALLY APPEALING, OWNER OCCUPIED, FAMILY SIZED APARTMENTS IN PRIME LOCATIONS. A MITCHELL, MAXWELL & JACKSON, INC. STUDY OF OVER 1000 RE-SALES BETWEEN 1990 AND MID 1998 INDICATES THAT THE RATE OF APPRECIATION DURING THIS PERIOD WAS BETWEEN 5% AND 25% PER ANNUM. BY THE END OF THIS PERIOD RECOVERY REACHED NEARLY ALL PROPERTY TYPES AND LOCATIONS IN THE BOROUGH OF MANHATTAN SOUTH OF 96-125 STREETS. DURING THIS ERA MARKETING TIME DECLINED TO BETWEEN 1 AND 3 MONTHS AND SHORTAGES OF INVENTORY WERE NOTED. SALES ACTIVITY WAS AT OR ABOVE ITS HIGHEST LEVEL SINCE THE MID 1980'S AND THE AVERAGE PRICE OF A NEW YORK APARTMENT BROKE THROUGH THE 1980'S HIGH AVERAGE. THE RELATIVELY FEW NEW CONSTRUCTION OWNER OCCUPIED RESIDENTIAL PROJECTS INITIATED FROM 1993 TO MID 1998 WERE VERY SUCCESSFUL AND MANY SOLD OUT WELL AHEAD OF EXPECTATIONS.

FROM 1994 TO MID 1998 PROPERTY VALUES INCREASED CITYWIDE DRIVEN BY IMPROVING ECONOMIC CONDITIONS. INCREASES IN RESIDENTIAL REAL ESTATE VALUES WERE 10 - 20% PER YEAR DURING THIS PERIOD OF GROWTH. GLOBAL CREDIT SHORTAGES DEVELOPED IN THE THIRD QUARTER OF 1998 AND THE MARKET LEVELED OFF. THE FEDERAL RESERVE BANK MADE INTEREST RATE REDUCTIONS IN THE FALL OF 1998 WHICH RESTARTED THE CAPITAL FLOW. THE CAPITAL AND REAL ESTATE MARKETS REACTED ACCORDINGLY IN THE FOURTH QUARTER OF 1998 AND PRICE APPRECIATION RESUMED AND SPREAD TO ALL AREAS OF MANHATTAN AND THE SURROUNDING SUB-MARKETS. BASED ON PAIRED SALES UTILIZED TO DEVELOP THE MMJ RE-SALE INDICES, MARKET APPRECIATION WAS 6 - 20% PER ANNUM (DEPENDING ON THE SUB-MARKET) DURING THIS TIME.

1999 STARTED OFF QUIET IN ANTICIPATION OF POSSIBLE FALLOUT FROM THE INTERNATIONAL CREDIT CRISIS. THE CONCERN PROVED UNFOUNDED AS CONSUMER CONFIDENCE RETURNED AND THE RESIDENTIAL MARKET RESUMED A STEADY CLIMB FINISHING OUT THE YEAR UP 25%.

THE FIRST 6 MONTHS OF 2000 ACCELERATED THE RISE IN PRICES WITH A RECORD SETTING GAIN OF 20% POSTED BY MID-YEAR. TIME ON THE MARKET WAS DRAMATICALLY REDUCED AND A HIGH PERCENTAGE OF PROPERTIES SOLD AT FULL ASKING PRICE WITH BIDDING WARS BECOMING COMMONPLACE PUSHING SALE PRICES EVEN HIGHER. AVAILABLE INVENTORY OF PROPERTIES ON THE MARKET EVAPORATED AND DECLINING INTEREST RATES FUELED SALES IN EVERY PRICE SEGMENT FOR THE REMAINDER OF THE YEAR.

WHILE THE IMMEDIATE IMPACT FOLLOWING 9-11-01 RESULTED IN A DRAMATIC DROP IN SALES VOLUME AND A MODERATE DECLINE IN PRICING, THE MARKET RECOVERED BY THE 2ND QUARTER OF 2002, SURPASSING PRE 9-11 LEVELS BY MID YEAR. OCCUPIED HOUSING STOCK IN THE AREA REMAINED RELATIVELY INTACT WITH ENVIRONMENTAL ISSUES AND PROXIMITY TO THE WTC SITE NOW FACTORS EFFECTING VALUE.

BUYER CONFIDENCE RETURNED BY MID 2002, SUPPORTED BY CONTINUALLY DROPPING INTEREST RATES THAT KEPT THE ENTIRE RESIDENTIAL MARKET MOVING. SALES VOLUME INCREASED BY 9% OVER 2001 WHILE PRICES GRADUALLY BEGAN RECOVER TO PRE 9-11 LEVELS

**CURRENT MARKET EVENTS:**

SALES VOLUME FOR THE FIRST HALF OF 2003 INCREASED, FUELED BY HISTORICALLY LOW INTEREST RATES THAT BOTTOMED OUT IN JULY. AVERAGE SALE PRICES ROSE DURING THE SAME PERIOD AND BIDDING WARS BECAME MORE FREQUENT ALTHOUGH AVAILABLE INVENTORY LEVELS REMAINED RELATIVELY UNCHANGED. INTEREST RATES BEGAN TO CREEP UP DURING THE SECOND HALF OF 2003 WHICH SLOWED PURCHASE VOLUME AS PRICES LEVELED OFF AND FEWER PROPERTIES CAME ONTO THE MARKET. BY SEPTEMBER, INTEREST RATES BEGAN TO DECLINE, REMAINING BELOW 6% FOR THE REMAINDER OF THE YEAR. BY MID NOVEMBER, SALES VOLUME BEGAN TO INCREASE, TIME ON THE MARKET DROPPED FROM 3-6 MONTHS TO 1-3 MONTHS AND BIDDING WARS BECAME MORE COMMON WITH ALMOST 50% FEWER PROPERTIES ON THE MARKET COMPARED TO YEAR END 2002. THESE FACTORS INDICATE A GENERALLY STABLE MARKET FOR THE FORESEEABLE FUTURE, LARGELY DETERMINED BY THE RELATIVELY MARGINAL CHANGES IN INTEREST RATES SEEN FROM SEPTEMBER 2003 THROUGH JANUARY 2004.

CONFIDENTIAL
DEVINE00006

**ADDENDUM**

| | |
|---|---|
| Borrower: N/A | File No.: P601535 |
| Property Address: 1050 FIFTH AVENUE | Case No.: MULLINIX v. BOGORAD-GROSS |
| City: NEW YORK | State: NY     Zip: 10028 |
| Lender: SULLIVAN & WORCESTER LLP | |

SUBJECT DESCRIPTION:

THE SUBJECT IS A 5.5  ROOM, 2 BEDROOM APARTMENT LOCATED AT 1050 FIFTH AVENUE.  THIS PROJECT IS A FULL SERVICE POSTWAR COOPERATIVE BUILDING SITUATED AT THE NORTHEAST CORNER OF EAST 86TH STREET AND FIFTH AVENUE IN MANHATTAN'S UPPER EAST SIDE NEIGHBORHOOD. AT THE TIME OF THE INSPECTION THE UNIT WAS FOUND TO BE IN VERY GOOD CONDITION WITH RENOVATED KITCHEN AND BATHS.

COMMENTS ON SALES COMPARISON APPROACH:

COMPARABLES #1 AND #2 ARE THE TWO MOST RECENT, SIMILAR SALES IN THE SUBJECT PROJECT. THESE SOMEWHAT SMALLER TWO BEDROOM UNITS WERE REPORTED TO BE IN SIMILAR/INFERIOR CONDITION RESPECTIVELY. THE FIRST SALE, LOCATED ON THE FIFTH FLOOR OF THE PROJECT IS REPORTED TO HAVE SLIGHTLY INFERIOR LIGHT/VIEWS. BOTH UNITS WERE ADJUSTED FOR THEIR INFERIOR FLOOR LEVEL(S).

COMPARABLE #3 IS A RECENT SALE FROM A NEARBY COMPETING PROPERTY.  THIS PROJECT IS LOCATED ON EAST END AVENUE, FAR FROM CENTRAL PARK AND THE LEXINGTON AVENUE TRANSPORTATION CORRIDOR. THIS LOCATION IS RATED INFERIOR TO FIFTH AVENUE. THE UNIT WAS INSPECTED BY AN MMJ APPRAISER WHO FOUND IT TO BE IN SIMILAR CONDITION OVERALL WITH SIMILAR VIEWS.  DUE TO THE FINANCIAL STRUCTURE OF THIS COOPERATIVE, THIS UNIT HAS AN INFERIOR MONTHLY MAINTENANCE CHARGE.  ACCORDINGLY, AN ADJUSTMENT WAS PROCESSED BY MULTIPLYING THE WEIGHTED DIFFERENCE OF THE MONTHLY CHARGES BY A FACTOR OF $50.

COMPARABLE #4 WAS SELECTED FROM A COMPETING PROJECT LOCATED ON LOWER FIFTH AVENUE CLOSER TO MIDTOWN WITH ITS SIGNATURE SHOPPING, RESTAURANTS AND CENTRAL BUSINESS DISTRICT. THE LOCATION IS RATED SUPERIOR. THIS SMALLER TWO BEDROOM UNIT WAS REPORTED TO BE IN SIMILAR CONDITION OVERALL WITH SLIGHTLY INFERIOR LIGHT/VIEWS FROM THE SIXTH FLOOR OF ITS PROJECT. DUE TO THE FINANCIAL STRUCTURE OF THIS COOPERATIVE, THIS UNIT HAS AN INFERIOR MONTHLY MAINTENANCE CHARGE.  ACCORDINGLY, AN ADJUSTMENT WAS PROCESSED BY MULTIPLYING THE WEIGHTED DIFFERENCE OF THE MONTHLY CHARGES BY A FACTOR OF $50.

THE FIFTH COMPARABLE IS A CURRENT LISTING FROM THE SUBJECT PROJECT OF UNIT #8C FOR $1,699,000. THIS UNIT WITH SLIGHTLY INFERIOR VIEWS WAS REPORTED TO BE IN SLIGHTLY INFERIOR CONDITION AND WAS ADJUSTED BY 5% FOR NEGOTIABILITY.

COMP #4 WAS ADJUSTED FOR TIME AT THE RATE OF 2% (POSITIVE) FROM ITS CLOSING DATE TO THE FOURTH QUARTER 2005 WHEN THE MARKET WAS FOUND TO HAVE LEVELED OFF. SEE WWW.MMJA.COM FOR FURTHER SUPPORT.

FINAL RECONCILIATION:

ALL 3 CLASSIC APPROACHES TO VALUE WERE CONSIDERED IN THIS ANALYSIS. THE SALES COMPARISON APPROACH IS DEEMED  MOST APPLICABLE FOR THE SUBJECT PROPERTY.  THE FINAL VALUE ESTIMATE IS $2,100,000.  ESTIMATED MARKETING/EXPOSURE TIME IS 1-3 MONTHS.

SUPPLEMENTAL CERTIFICATION:

THIS IS A SUMMARY APPRAISAL REPORT WHICH IS INTENDED TO COMPLY WITH THE REPORTING REQUIREMENTS SET FORTH UNDER STANDARDS RULE 2-2(b) OF THE UNIFORM STANDARDS OF PROFESSIONAL PRACTICE FOR A SUMMARY APPRAISAL REPORT. AS SUCH, IT PRESENTS ONLY SUMMARY DISCUSSIONS OF THE DATA, REASONING, AND ANALYSES THAT WERE USED IN THE APPRAISAL PROCESS TO DEVELOP THE APPRAISER'S OPINION OF VALUE. SUPPORTING DOCUMENTATION CONCERNING THE DATA, REASONING AND ANALYSIS IS RETAINED IN THE APPRAISERS FILE. THE DEPTH OF DISCUSSION CONTAINED IN THIS REPORT IS SPECIFIC TO THE NEEDS OF THE CLIENT AND FOR THEIR SPECIFIED USE. THE APPRAISER IS NOT RESPONSIBLE FOR UNAUTHORIZED USE OF THIS REPORT.

DUE TO THE PROXIMITY OF ADJACENT PROPERTIES A REAR PHOTOGRAPH WAS NOT AVAILABLE.

MOST BUILDINGS DO NOT CONTAIN A 13TH FLOOR.  WHERE APPLICABLE, THE FLOOR ADJUSTMENT REFLECTS THIS SITUATION.

THIS APPRAISAL WAS COMPLETED IN CONFORMANCE WITH TITLE XI OF THE FEDERAL FINANCIAL INSTITUTION REFORM, RECOVERY AND ENFORCEMENT ACT OF 1989 (FIRREA) AND THE UNIFORM STANDARDS OF PROFESSIONAL PRACTICE (USPAP).

THE OBJECTIVE OF THIS APPRAISAL IS TO ESTIMATE THE FAIR MARKET VALUE OF THE SUBJECT PROPERTY AS OF THE DATE SPECIFIED IN THE REPORT.  THE PURPOSE OF THIS REPORT IS TO PRESENT THE DATA AND REASONING THAT THE APPRAISER HAS USED TO FORM THE OPINION OF VALUE.  THE SCOPE OF THE APPRAISAL INCLUDES A THOROUGH SEARCH OF ALL AVAILABLE AND APPLICABLE PUBLIC AND PRIVATE DATA SOURCES, A PHYSICAL INSPECTION OF THE SUBJECT PROPERTY AND SURROUNDING AREA AND ALL OTHER REQUIREMENTS UNDER THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE (USPAP).

DUE TO THE FINANCIAL NATURE OF COOPERATIVES IT IS HIGHLY RECOMMENDED THAT THE CORPORATION BE REVIEWED BY APPROPRIATE LEGAL COUNSEL.

MANHATTAN DOES NOT HAVE A TRADITIONAL MULTIPLE LISTING SYSTEM AND SALES/CONTRACTS ARE NOT READILY AVAILABLE.  THE VAST MAJORITY OF THE HOUSING STOCK IS COOPERATIVELY OWNED. THESE COOPERATIVE BUILDING CORPORATIONS ARE PRIVATELY HELD ENTITIES AND AS SUCH, SALES OF STOCK IN THESE CORPORATIONS ARE NOT A MATTER OF PUBLIC RECORD.  SINCE SALES INFORMATION IS NOT AVAILABLE THROUGH MLS OR PUBLIC RECORD, THE APPRAISER IS NOT ABLE TO REVIEW ALL COOPERATIVE APARTMENT TRANSACTIONS.  TYPICAL DATA SOURCES UTILIZED

CONFIDENTIAL
DEVINE00007

**ADDENDUM**

| | | |
|---|---|---|
| Borrower: N/A | | |
| Property Address: 1050 FIFTH AVENUE | File No.: P601535 | |
| City: NEW YORK | Case No.: MULLINIX v. BOGORAD-GROSS | |
| Lender: SULLIVAN & WORCESTER LLP | State: NY | Zip: 10028 |

INCLUDE MANAGING AGENTS, LENDERS, SPONSORS, COOPERATIVE BOARDS, PROJECT ATTORNEYS OR ACCOUNTANTS, THE NEW YORK TIMES RESIDENTIAL RE-SALES, REAL ESTATE BROKERS (WHEN CONFIRMED WITH ANOTHER DISINTERESTED SOURCE), OUTSIDE APPRAISERS, SELLERS, BUYERS, AND OUR INSPECTIONS. LISTING INFORMATION IS OBTAINED FROM AREA BROKERS. VIRTUALLY ALL OF THE DATA IS OBTAINED ON A CONFIDENTIAL BASIS.

**COST APPROACH:**

THE COST APPROACH IS NOT CONSIDERED APPLICABLE FOR INDIVIDUAL UNITS WHICH ARE PART OF A MULTI-UNIT APARTMENT BUILDING. THEREFORE, THIS APPROACH HAS NOT BEEN UTILIZED IN THIS ANALYSIS.

**INCOME APPROACH:**

INDIVIDUAL COOP/CONDO UNITS ARE NOT TYPICALLY PURCHASED FOR THEIR INCOME POTENTIAL. RECORDS REGARDING INCOME/EXPENSES ON UNITS THAT HAVE BEEN PURCHASED FOR THIS REASON ARE NOT PUBLICLY MAINTAINED OR READILY AVAILABLE. THEREFORE, THE INCOME APPROACH WAS NOT CONSIDERED APPLICABLE OR PROCESSED IN THIS VALUATION.

CONFIDENTIAL
DEVINE00008

**FLOORPLAN**

| Borrower: N/A | | |
|---|---|---|
| Property Address: 1050 FIFTH AVENUE | | File No.: P601535 |
| City: NEW YORK | | Case No.: MULLINIX v. BOGORAD-GROSS |
| Lender: SULLIVAN & WORCESTER LLP | State: NY | Zip: 10028 |



CONFIDENTIAL
DEVINE00009

**LOCATION MAP**

| | |
|---|---|
| Borrower: N/A | File No.: P601535 |
| Property Address: 1050 FIFTH AVENUE | Case No.: MULLINIX v. BOGORAD-GROSS |
| City: NEW YORK | State: NY    Zip: 10028 |
| Lender: SULLIVAN & WORCESTER LLP | |



CONFIDENTIAL
DEVINE00010

SUBJECT PROPERTY PHOTO ADDENDUM

| Borrower: N/A | | |
|---|---|---|
| Property Address: 1050 FIFTH AVENUE | | File No.: P601535 |
| City: NEW YORK | | Case No.: MULLINIX v. BOGORAD-GROSS |
| Lender: SULLIVAN & WORCESTER LLP | State: NY | Zip: 10028 |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: March 31, 2006
Appraised Value: $ 2,100,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**



**CONFIDENTIAL
DEVINE00011**

| Borrower: N/A | | File No.: P601535 |
| Property Address: 1050 FIFTH AVENUE | | Case No.: MULLNIX v. BOGORAD-GROSS |
| City: NEW YORK | State: NY | Zip: 10028 |
| Lender: SULLIVAN & WORCESTER LLP | | |



KITCHEN



BATHROOM



LIVING ROOM



**CONFIDENTIAL**

DEVINE00012

## COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: N/A | | File No.: P601535 |
| Property Address: 1050 FIFTH AVENUE | | Case No.: MULLINIX v. BOGORAD-GROSS |
| City: NEW YORK | State: NY | Zip: 10028 |
| Lender: SULLIVAN & WORCESTER LLP | | |



**COMPARABLE SALE #1**

1050 FIFTH AVENUE
5C
Sale Date: 12/05 Clsd
Sale Price: $ 1,845,000



**COMPARABLE SALE #2**

1050 FIFTH AVENUE
9/10A
Sale Date: 11/05 Clsd
Sale Price: $ 1,695,000



**COMPARABLE SALE #3**

45 EAST END AVENUE, #NEW YORK, NY 10028
14G/H
Sale Date: 11/05 CLSD
Sale Price: $ 1,740,000



CONFIDENTIAL
DEVINE00013

## COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: N/A | |
| Property Address: 1050 FIFTH AVENUE | File No.: P601535 |
| City: NEW YORK | Case No.: MULLINIX v. BOGORAD-GROSS |
| Lender: SULLIVAN & WORCESTER LLP | State: NY     Zip: 10028 |



**COMPARABLE SALE #4**

870 FIFTH AVENUE
6F
Sale Date: 07/05 Clsd 2%
Sale Price: $ 2,100,000



**COMPARABLE SALE #5**

1050 FIFTH AVENUE
8C
Sale Date: 02/06 Listing 5%
Sale Price: $ 1,699,000



**COMPARABLE SALE #6**

NOT USED

Sale Date:
Sale Price: $



CONFIDENTIAL
DEVINE00014

MULLINIX v. BOGORAD
File No. P601535

**DEFINITION OF MARKET VALUE:**    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the Appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**    The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.  The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area.  Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value.  These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal.  Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property.  The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated ) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent.  The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**CONFIDENTIAL**
**DEVINE00015**

MULLINIX v. BOGORAD
File No. P601535

**APPRAISERS CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to , or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, If a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinons, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report  on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks.  I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**  1050 FIFTH AVENUE, NEW YORK, NY  10028

| APPRAISER: | SUPERVISORY APPRAISER (only if required) |
|---|---|
| Signature: | Signature: |
| Name: CHRISTOPHER DEVINE | Name: STEVEN KNOBEL |
| Date Signed: 04/06/2006 | Date Signed: 04/06/2006 |
| State Certification #: 45-39270 | State Certification #: 45-18006 |
| or State License #: | or State License #: |
| State: NY | State: NY |
| Expiration Date of Certification or License: 06/23/2006 | Expiration Date of Certification or License: 07/06/2007 |
|  | ☐ Did    ☒ Did Not Inspect Property |

CONFIDENTIAL

# EXHIBIT B

# QUALIFICATIONS[1]

---

[1] Please note Mr. Devine has not been published.

# MITCHELL, MAXWELL & JACKSON, INC.
## REAL ESTATE APPRAISERS AND COUNSELORS

MANHATTAN
BROOKLYN
GREAT NECK
GREENWICH
THE HAMPTONS

### Christopher Devine
Mitchell, Maxwell & Jackson, Inc.
546 Fifth Avenue, New York, New York 10036
Tel: (212) 319-7300 Fax: (212) 486-7950

### EDUCATION
B.A., Bard College, Annandale-on-Hudson, NY
Majors: Economics and Film, May, 1989.
Columbia University School of Economics, New York, NY
Fall and Winter 1987.

### COMPLETED APPRAISAL STUDIES
The Appraisal Institute, New York, NY
New York University, New York, NY

### PROFESSIONAL EXPERIENCE
MITCHELL, MAXWELL & JACKSON, INC., New York, NY
Director, Trust & Estate Division, 2001 to present
Responsible for the day-to-day management of the firm's appraisal work in the legal arena.
Supervise firm's appraisal staff on all Trust, Estate and, Matrimonial work.
Marketing and maintenance of the firm's client relationships.

CUSHMAN & WAKEFIELD, New York, NY
Manager, Residential Valuation Division, World Headquarters, 2000 - 2001
Worked with the Directors of the division. Created and grew new business, produced appraisals.

CMD APPRAISALS, New York, NY
President 1997-2000
Created and grew a successful real estate Firm serving private and institutional clients in five counties.

### LICENSES/CERTIFICATIONS
New York State Residential Certification #45-39270
Recognized Expert Witness-State (NY)
Appointed as neutral appraiser for matters before The Supreme Court, State of New York
Eligible for appointments State of New York, Unified Court System
Fiduciary ID #187398, Expires 08/23/2007

### PROFESSIONAL MEMBERSHIPS
Real Estate Board of New York
National Association of Mortgage Brokers

546 FIFTH AVENUE, 9TH FLOOR, NEW YORK, NY 10036    PH: 212-319-7300 FAX: 212-486-7950    www.mmja.com

CONFIDENTIAL
DEVINE00017

# COMPENSATION



********* INVOICE *********

File Number: P601535


LISA HODES
SULLIVAN & WORCESTER LLP
ONE POST OFFICE SQUARE, ZONE 10
BOSTON, MA 02109


Borrower :            N/A

Invoice # :           P601535
Order Date :          01/23/2006
Reference/Case # :    MULLINIX v. BOGORAD-GROSS
PO Number :


1050 FIFTH AVENUE
NEW YORK, NY  10028


|  |  |
|---|---|
| $ | 2,500.00 |
| $ | ------------ |
| **Invoice Total** | $ 2,500.00 |
| State Sales Tax @ | $ 0.00 |
| Deposit | ($ ) |
| Deposit | ($ ) |
| | ------------ |
| Amount Due | $ 2,500.00 |


Terms:


Please Make Check Payable To:



Fed. I.D. #:



For depositions or testimony, Mr. Devine is available for half-day
increments.  A half day is 4 hours and costs $1600.  Any time
needed from one block into the next will be billed as one half-day.
A $1600 retainer is due and payable 24 hours in advance of the
deposition or testimony.

CONFIDENTIAL
DEVINE00018

# LIST OF CASES IN WHICH MR. CHRISTOPHER DEVINE HAS TESTIFIED AS AN EXPERT AT TRIAL OR AT DEPOSITION WITHIN THE PRECEDING FOUR YEARS

1.   <u>Brice v. Brice</u>, No. 315338 (N.Y. Sup. Ct. filed Sept. 30, 2002).

2.   <u>Langot v. Koutsomitis</u>, No. 350733 (N.Y. Sup. Ct. filed Dec. 15, 2003).

3.   <u>Wagner v. Wagner</u>, No. 312871 (N.Y. Sup. Ct. filed Aug. 9, 2002).

4.   <u>Farnham v. Ritter</u>, No. 302269 (N.Y. Sup. Ct. filed Feb. 2, 2001).

5.   <u>Farnham v. Ritter</u>, No. 350580 (N.Y. Sup. Ct. filed Aug. 28, 2000).

6.   <u>Feder v. Kohn</u>, No. 350612 (N.Y. Sup. Ct. filed Sept. 27, 2002).

7.   <u>Buechner v. Buechner</u>, No. 305451 (N.Y. Sup. Ct. filed April 15, 2003).