UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KATHLEEN P. MULLINIX, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KIKI BOGORAD-GROSS and )<br>LEONARD P. BOGORAD, as They )<br>Are Executors of the Will of )<br>Lawrence Bogorad, )<br>)<br>Defendants. )<br>) | Civil Action<br>No. 04-12684-WGY |

### DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

Pursuant to Local Rule 56.1, Defendants Kiki Bogorad-Gross ("K. Bogorad-Gross") and Leonard Bogorad ("L. Bogorad"), as Executors of the Will of Lawrence Bogorad (collectively, "Defendants"), by their attorneys, Sullivan & Worcester LLP, respectfully submit the following statements of fact of record[1] that are material to the allegations of Plaintiff Kathleen P. Mullinix ("Plaintiff" or "Mullinix") and as to which Defendants contend that there is no genuine issue to be tried.

---

[1] Each of the stated facts is documented in a source that appears as an exhibit to the Affidavit of Lisa M. Hodes ("Hodes Aff."), the Affidavit of Leonard Bogorad ("L. Bogorad Aff."), the Affidavit of Kiki Bogorad-Gross ("K. Bogorad-Gross Aff.") and the Affidavit of James Gross ("Gross Aff."), all of which are filed herewith, except where the source is the Complaint and Demand for Jury Trial (the "Complaint"), in which case the source is identified by the paragraph number of the Complaint (i.e., Complaint, ¶ ____)References to the transcripts of depositions in this action, the relevant portions of which are appended to the Hodes Aff., are cited by the deponent's name followed by the page(s) and line number(s).

## PARTIES

1.  Plaintiff, Mullinix, is an individual who resides at 1050 Fifth Avenue, Apartment 15B, New York, New York 10028 (the "Apartment"). Complaint, ¶ 2. The Apartment is located in a cooperative building in New York City's fashionable Upper East Side, located at the corner of Fifth Avenue and East 86th Street. Mullinix, 91:16-19. In 1994 Mullinix started a business called Synaptic and served as its Chief Executive Officer until she sold her interest in 2002. Mullinix 28:14-29:7. Thereafter, Mullinix worked as an independent biotechnology consultant, which included writing a business plan for a science-based neutraceutical company. Mullinix, 29:14-18; 30:17-22.

2.  Defendant Kiki Bogorad-Gross ("K. Bogorad-Gross" or "Kiki") is an individual who resides at 80 Highland Avenue, Newton, Massachusetts 02460. Complaint, ¶ 3.

3.  Defendant Leonard Bogorad ("L. Bogorad" or "Len") is an individual who resides at 5121 Worthington Drive, Bethesda, Maryland 20816. Complaint, ¶ 4.

4.  Lawrence Bogorad ("Bogorad") died on December 28, 2003. Complaint, ¶ 5. Kiki and Len, the Defendants in this action, are Bogorad's daughter and son. Id.

5.  The Defendants were appointed executors of the will of Bogorad by decree of a Justice of the Probate and Family Court Department of the Massachusetts Trial Court for Middlesex County. Complaint, ¶ 5.

## FACTS

6.  As of 1997, a romantic relationship existed between Bogorad and Mullinix, who were both married to other individuals. Complaint, ¶ 8; Mullinix 16:1-4; 50:23-51:16.

7.  In 1997, following Mullinix's disclosure of her illicit affair with Bogorad, she and her husband, Joseph Mullinix, divorced in New York. Mullinix 35:3-8; 38:17-39:1. The couple

sold their marital apartment at 975 Park Avenue, New York, New York, and Mullinix purchased a condominium apartment located at 170 East 87th Street in New York City ("87th Street Apartment"). Complaint ¶ 10; Mullinix, 39:21-40:15. Mullinix paid the mortgage and utilities for the 87th Street Apartment out of her own resources. Mullinix 61:9-62:1.

8. After Mullinix and her husband divorced, Bogorad remained married to his wife, Rosalyn Bogorad ("Rosalyn"), until the day he died, December 28, 2003. Mullinix 16:1-4; 50:23-51:16. At no time did Bogorad initiate any divorce proceedings against Rosalyn, whom he had married in 1943. Mullinix 50:23-51:16; L. Bogorad, 13:12-14.

9. Rosalyn began showing symptoms of Alzheimer's disease in the early 1990's. L. Bogorad 13:21-14:12. In 1998 Rosalyn required 24-hour care and was admitted to a nursing facility in Natick, Massachusetts. K. Bogorad-Gross 20:20-24. Rosalyn currently resides at the Fairlawn nursing home in Lexington, Massachusetts. K. Bogorad-Gross 19:21-24; L. Bogorad Aff., ¶ 1; K. Bogorad-Gross Aff., ¶ 5. Bogorad visited Rosalyn every week until his death. K. Bogorad-Gross 23:12-13; L. Bogorad 22:8-10.

10. Prior to Mullinix's divorce, Bogorad and Mullinix split the costs of shared expenses, such as dinner. Mullinix 59:23-60:2. After Mullinix's divorce in 1997, Bogorad and Mullinix lived as if they were husband and wife and Bogorad "picked up the tab wherever we went." Complaint, ¶ 9; Mullinix 51:22-23, 58:17-21, 59:21-22. Over the course of their relationship, Bogorad displayed his characteristic generosity by making gifts to Mullinix and taking her on various vacations. Mullinix 44:20-45:19, 59:21-22.

11. Bogorad displayed similar generosity with his children and grandchildren, often footing the bill for major expenses incurred on the family vacations. L. Bogorad 133:5-13, 134:15-135:4. Bogorad also provided each of his grandchildren $10,000 per year for college

expenses. L. Bogorad 50:21-51:9, 52:15-57:22; K. Bogorad-Gross 36:18-38:1. As his son testified,

> Q. What do you recall your father saying during that conversation?
>
> A. Just that he wanted to give us a gift and help pay—he knew college was expensive these days and wanted to help us bear the burden or whatever. And he wanted to make a gift of $10,000, as I said, for each of our kids for each year they were in college. And you know, obviously, we said that is not necessary, you know, but he was not the [*sic*] kind of guy. He was very generous and if he wanted to give you a present, he was going to give you a present.

L. Bogorad 52:15-53:3. Bogorad's will did not specifically instruct that these payments be made after he died, so his estate has not made any of these payments.[2] L. Bogorad 55:6-12; K. Bogorad-Gross 38:14-18.

12. Bogorad spent the weekdays at his home in Lexington, Massachusetts ("Lexington Home"), which remained his residence until his death, and visited Mullinix in New York City most weekends. Mullinix 41:15-20, 42:8-10. During the week Bogorad worked out of his office at Harvard University, where he was a professor. K. Bogorad-Gross 16:8-22; L. Bogorad 59:14-20.

13. Commencing in approximately 1999, Bogorad gave Mullinix $870 every month to cover the cost of the monthly maintenance fee for the 87th Street Apartment. Complaint, ¶¶ 11-12; Mullinix 58:13-14; 55:6-8.

14. Mullinix did not declare any of the $870 monthly payments from Bogorad to her on her federal, New York State or New York City income tax returns. Mullinix 62:2-20.

---

[2] L. Bogorad's son, David, entered college in the fall of 2004. Neither Bogorad nor the Estate has contributed any money towards David's education even though "[Bogorad] said he was going to." L. Bogorad 52:15-53:3.

15. Bogorad did not receive consideration in exchange for paying the $870 monthly maintenance fee. Mullinix, 55:16-23. As Plaintiff testified,

> A. Laurie said, "I want to pay the maintenance."
>
> Q. So he offered to do it?
>
> A. Uh-huh.
>
> Q. And you agreed?
>
> A. Yeah.
>
> Q. And what, if anything, did you do or promise to do in exchange for that payment?
>
> A. Nothing.

Id.

16. In the fall of 2002, a neighbor approached Mullinix about selling her 87th Street Apartment. Complaint ¶ 13; Mullinix 66:19-67:14. Bogorad, Mullinix's real estate agent and Mullinix's son, Brendan Mullinix, all recommended that Mullinix sell the 87th Street Apartment. Mullinix 68:13-69:7, 70:13-71:8, 74:6-13, 75:9-12, 77:2-78:12.

17. In November 2002 Mullinix toured the Apartment, located three long blocks and one short block from the 87th Street Apartment on Manhattan's Upper East Side. Complaint ¶ 14; Mullinix 91:16-19. The Apartment, which was listed at around $2.4 million, required extensive renovations. Complaint, ¶ 14; Mullinix 93:4-8.

18. Mullinix told Bogorad the Apartment was too expensive and Bogorad responded that he wanted to give her money for the renovations and the monthly maintenance fees "as I have been." Complaint, ¶¶ 14 & 17; Mullinix 104:18-105:3, 105:4-9.

19. By November 2002, Bogorad had already suffered from bladder cancer, had a quadruple bypass operation and suffered from various other physical ailments. Mullinix 206:5-18.

20. In December 2002 Bogorad changed his estate plan to provide Mullinix with a 1/6 interest in the 1997 Lawrence Bogorad Revocable Trust. Mullinix 150:15-151:20, 152:11-14, 190:9-16; K. Bogorad-Gross Aff., ¶ 6; L. Bogorad Aff., ¶ 5. That trust is currently worth nearly $2 million. Berlin Aff., ¶ 5.

21. When the listing price of the Apartment was reduced substantially in February 2003, Mullinix took Bogorad to see it. Complaint ¶ 16; Mullinix 115:2-5. Their visit lasted approximately an hour and a half. Mullinix 116:5-7.

22. Mullinix has testified that, in a private conversation with Bogorad, Mullinix said that the Apartment was still too expensive. Mullinix 118:8-14. She has also testified that Bogorad repeated that he wanted to give her money for the renovations and the monthly maintenance fees. Mullinix 118:16-119:9. Finally, Mullinix has testified that Bogorad also said that he wanted to give Mullinix money for half of the capital gains tax incurred in connection with the sale of the 87th Street Apartment and half of the storage costs Mullinix would incur until the renovations were completed. Complaint, ¶ 18; Mullinix 181:12-182:1.

23. Mullinix was asked to interview with the seller's attorney on February 10, 2003. Mullinix 122:15-125:6, 127:11-15. During that interview, Mullinix provided a list of her financial accounts, but she never mentioned Bogorad as her partner or as a source of any money to purchase or renovate the Apartment. Mullinix 140:17-141:3.

24. Mullinix's offer of $1.4 million to purchase the Apartment was accepted. Mullinix 122:15-125:6, 127:11-15, 142:2-5.

25.     In early June 2003 Mullinix interviewed with the Cooperative Board of 1050 Fifth Avenue. Mullinix 213:5-13. Mullinix never mentioned Bogorad as one of her financial resources for the purchase and occupancy of the Apartment:

> Q.     Did Ms. Mullinix ever at that interview or subsequently inform you, in words or substance, that she intended to rely upon wealth or finances from any other person in connection with her purchase and occupancy at 1050 Fifth Avenue?
>
> A:     No.

Ring 27:3-9.

26.     The Cooperative Board also asked Mullinix if she expected overnight guests:

> Q.     Did you, Ms. Ring, or any other board member ask Ms. Mullinix at her interview how often she had or intended to have overnight guests?
>
> A:     Yes.
>
> Q:     And what did she respond?
>
> A:     My recollection is that she responded she did not have guests.

Ring 25:2-9. Mullinix knowingly omitted Bogorad's name from both her oral interview and written Cooperative Application. Mullinix 177:10-23.

27.     On or about March 31, 2003, Mullinix sold the 87th Street Apartment for $1.325 million. Complaint, ¶¶ 15 & 19; Mullinix 74:2-5. At the time of the sale, Mullinix had $700,000 in equity in the 87th Street Apartment. Mullinix 186:16-187:10.

28.     Mullinix executed the sales contract for the Apartment on February 7, 2003. Complaint, ¶ 18. Mullinix closed on the purchase of the Apartment on June 10, 2003. Complaint, ¶ 22. Mullinix took sole title to the shares evidencing her ownership in the 1050 Fifth Avenue Cooperative and the proprietary lease to the Apartment. Mullinix 7:15-20.

29.     In or around May 2003, Bogorad contacted long-time friend and architect, Raynor Warner, to recommend an architect in New York City to renovate the Apartment. Complaint, ¶ 23; Mullinix 216:10-28. Warner met with Mullinix and Bogorad at least once in New York City to discuss the renovations. Complaint, ¶ 23. Bogorad paid Warner's bill, which was addressed only to Mullinix, directly. Mullinix did not report that payment as taxable income. Complaint, ¶ 23; Mullinix 221:18-21.

30.     Warner referred Mullinix to Heather Aman, an interior designer in New York City. Complaint, ¶ 24; Mullinix 216:10-12. Aman was hired by Mullinix on or about July 25, 2003 as the architect for the renovations to the Apartment. Complaint, ¶ 24. Discussions with Aman revealed that the renovations to the Apartment would cost approximately $400,000. Complaint, ¶ 25.

31.     Bogorad was not a party to the contract between Aman and Mullinix. However, Bogorad gave Mullinix money to reimburse her for Aman's bills. Mullinix 201:17-203:18. Mullinix did not declare these payments as income on any of her income tax returns. Mullinix, 225:11-16.

32.     On or about December 24, 2003, Mullinix accompanied Bogorad, the Defendants, and the Defendants' children on an annual holiday vacation in Mexico. Complaint, ¶ 30. Bogorad died in Mexico on December 28, 2003. Id.

33.     Mullinix and K. Bogorad-Gross, both very sad and distraught, flew back to Boston together. Mullinix 231:19-232:1. On the return flight Mullinix claimed to K. Bogorad-Gross that Bogorad said he was going to pay for the renovations. Mullinix 230:22-231:5; K. Bogorad-Gross 136:22-137:24; K. Bogorad-Gross Aff., ¶ 12. K. Bogorad-Gross had never previously heard any statements from Bogorad or Mullinix, either orally or in writing, to that

effect even though Mullinix and Bogorad had discussed the Apartment with K. Bogorad-Gross and other family members on numerous previous occasions. K. Bogorad-Gross 116:8-117:3, 145:13-24, 147:13-19, 149:14-20, 151:19-152:3; K. Bogorad-Gross Aff., ¶ 13, 14.

34.     On January 2, 2004, Mullinix met with L. Bogorad and James Gross ("Gross"), the husband of K. Bogorad-Gross, who were sorting through Bogorad's files at the Lexington Home. Mullinix 233: 20-235:14; L. Bogorad 84:13-24; Gross Aff. ¶¶ 13-17. Mullinix turned to L. Bogorad and Gross and claimed that she and Bogorad "had an agreement that [Bogorad] was going to pay for the renovations on the apartment up to $400,000, and he also paid the maintenance on the apartment both at 87th Street and at Fifth Avenue." Mullinix 233:20-235:14; L. Bogorad 84:19-24; Gross Aff. ¶ 15.

35.     Mullinix has admitted under oath that she did not have any of Bogorad's alleged promises in writing. Mullinix 230:20-235:14. Despite being a sophisticated businesswoman, Mullinix never asked Bogorad to commit to anything in writing. Mullinix 234:13-235:5. L. Bogorad never told Mullinix that the Estate would pay for the renovations or the monthly maintenance fees. Mullinix 233:20-235:14.

36.     Later, Mullinix and L. Bogorad spoke again by telephone. Mullinix began the conversation by offering to help L. Bogorad's wife, Cynthia Bogorad, obtain an appointment with a renowned physician in New York. Mullinix 237:2-12; L. Bogorad 122:22-123:13. Mullinix then asked L. Bogorad how the estate wanted to handle the bills for the renovations. Mullinix 241:7-242:8; L. Bogorad 86:14-96:7. L. Bogorad told Mullinix the estate would not pay for the renovations because it would violate the Defendants' fiduciary duties as executors of Bogorad's estate to pay any bills in connection with the Apartment. L. Bogorad 95:18-96:7;

234:3-14.  Mullinix and L. Bogorad also talked about the Defendants' plans to sell the Lexington Home.  Mullinix 239:3-9.

37. On February 11, 2004, the estate's lawyer sent Mullinix a letter stating that the estate would not pay any of her claims because payment would violate the Defendants' fiduciary duties as executors of Bogorad's will.  L. Bogorad 233:9-15; Hodes Aff., Exh. F.

38. On or about March 17, 2004, Mullinix executed a $350,000 contract with McGraime Woodworking, Inc. for the renovations to the Apartment.  Complaint, ¶ 32; Hodes Aff., Exh. G.  Mullinix paid McGraime a $35,000 deposit and an addition $52,500.00 upon demolition.  Complaint, ¶ 32.

39. After Bogorad's death, the Defendants permitted Mullinix to live in Bogorad's Lexington home pending the completion of the renovations to the Apartment.  Complaint, ¶ 33.  While she lived at the Lexington Home, Mullinix never paid rent, utilities, the phone bill or any of the general upkeep of the house.  Mullinix 244:8-245:4.

40. The Defendants sold Bogorad's Lexington home in or around June 2004, which required Mullinix to vacate the home.  She rented a furnished apartment until the renovations to the Apartment were completed.  Complaint, ¶ 34.  At no time did Mullinix complain about the sale of the Lexington home and, in fact, offered to assist in preparing the house for sale.  L. Bogorad 230:13-232:10; Hodes Aff., Exhs. H-N.

41. On or about August 20, 2004, Mullinix sent a demand letter to Defendants' counsel outlining her relationship with Bogorad and her claims against his estate.  Complaint, ¶ 35.

42. Bogorad and Mullinix never discussed: (1) who would pay the renovations costs, maintenance fees, and half of the capital gains taxes and storage costs if Bogorad or Mullinix

died; (2) whether Bogorad's alleged commitments were to survive his death; (3) whether Bogorad would continue to pay the renovations costs, maintenance fees, and half of the capital gains taxes and storage costs if they ceased to be a couple; or ($) the time period to which Bogorad was committing to pay the monthly maintenance fees.  Mullinix 183:8-185:6.

|  |  |
|---|---|
|  | KIKI BOGORAD-GROSS and<br>LEONARD P. BOGORAD, as<br>they are the Executors of the Will<br>of Lawrence Bogorad,<br>By their attorneys, |
| May 25, 2006 | /s/   Lisa M. Hodes<br>Larry L. Varn (BBO # 508130)<br>Lisa M. Hodes (BBO # 660444)<br>SULLIVAN & WORCESTER LLP<br>One Post Office Square<br>Boston, Massachusetts 02109<br>(617) 338-2800<br>lvarn@sandw.com<br>lhodes@sandw.com |

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 25, 2006.

/s/  Lisa M. Hodes