UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN P. MULLINIX, <br><br> Plaintiff, <br><br> v. <br><br> KIKI BOGORAD-GROSS and LEONARD P. BOGORAD, As They Are Executors of the Will of Lawrence Bogorad, <br><br> Defendants. | Civil Action No. 04-12684-WGY |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, plaintiff Kathleen P. Mullinix hereby moves the Court to grant summary judgment with respect to defendants Kiki Bogorad-Gross and Leonard P. Bogorad's (collectively, the "Defendants") counter-claim for the imposition of a constructive or resulting trust on Ms. Mullinix's property for the benefit of Lawrence Bogorad's ("Mr. Bogorad") estate in the event that she prevails on her claims.

## INTRODUCTION

Ms. Mullinix filed this action when the Defendants refused to honor Mr. Bogorad's obligations to her concerning renovations to her apartment. Although the circumstances may seem unusual, this case boils down to simple contract law: Mr. Bogorad entered valid and binding agreements with Ms. Mullinix. Mr. Bogorad induced Ms. Mullinix to sell her apartment in New York City and to buy another apartment, which would require considerable financial commitments. The *only* reason Ms. Mullinix sold her apartment and bought a new one was

because Mr. Bogorad committed to pay for the renovations relating to the new apartment, the monthly maintenance fees related to the apartment, one-half the storage costs while the new apartment was being renovated and one-half the tax consequences from the sale of her apartment. In exchange for his commitments, Ms. Mullinix would sell her apartment and purchase the new apartment, in which they both would live. Ms. Mullinix's legal detriment -- taking action she was otherwise not legally obligated to take -- provided adequate consideration to Mr. Bogorad's promise. Furthermore, Mr. Bogorad would receive the benefit of living with her in the new apartment in exchange for his promises.

Additionally, under the doctrine of estoppel, the Defendants must honor Mr. Bogorad's obligations because Mr. Bogorad promised to pay for the renovations, among other things, if Ms. Mullinix purchased the new apartment. It was reasonable and foreseeable that Ms. Mullinix would rely on his promises. In fact, Ms. Mullinix *did* rely on those promises when she purchased the new apartment. Because the Defendants refuse to fulfill Mr. Bogorad's promises to pay for the renovations, among other things, Ms. Mullinix has had to pay for them out of her own funds.

This Motion concerns the Defendants' counter-claim that requests the Court to impose a constructive or resulting trust on the new apartment for the benefit of Mr. Bogorad's estate in the event Ms. Mullinix prevails on her breach of contract or estoppel claims. There are no issues of material fact that remain in dispute relating to the elements necessary to impose a constructive or resulting trust. This counter-claim cannot survive summary judgment because it is undisputed that (1) Mr. Bogorad did not provide *any* funds toward the purchase price of the property; (2) there was never a promise, agreement or intent that Mr. Bogorad would enjoy an ownership interest in the property; and (3) at no time was there a transfer from Mr. Bogorad to Ms. Mullinix

2

in reliance on a promise that Mr. Bogorad would have an interest in the property. The

undisputed facts, as a matter of law, prohibit the imposition of any trust. Thus, the Court must

grant this Motion for Partial Summary Judgment relating to the Defendants' counter-claim.

## FACTS

In early 1998, Mr. Bogorad and Ms. Mullinix ("the couple") publicly disclosed their

long-standing romantic relationship and began living together, traveling together and attending

family functions together. Plaintiff Kathleen P. Mullinix's Statement of Undisputed Material

Facts ¶¶ 1-2. (hereinafter, "SF ¶ ___"). Although Mr. Bogorad's wife was still alive and he

remained married to her during his entire relationship with Ms. Mullinix, his wife was

incapacitated and incompetent because of Alzheimer's Disease. SF ¶ 3. The couple resided in

both Mr. Bogorad's home in Lexington, Massachusetts and Ms. Mullinix's apartment in New

York City and lived as husband and wife. *Id.* ¶¶ 4-5.

On July 1, 1999, the couple moved into a condominium apartment on East 87th Street in

New York City that Ms. Mullinix had purchased. *Id.* ¶¶ 6-7. During the entire time the couple

lived at the East 87th Street apartment (and the entire time Ms. Mullinix owned it), Mr. Bogorad

paid the monthly maintenance fees for the apartment. *Id.* ¶ 8. Mr. Bogorad had paid for

renovations to the East 87th Street apartment, which included refinishing the floors and some

electrical work. *Id.* ¶ 9. Mr. Bogorad never had an ownership interest in the East 87th Street

Apartment. *Id.* In the fall of 2002, the couple began discussing the possibility of Ms. Mullinix

selling the East 87th Street apartment and purchasing co-operative apartment in New York City.

*Id.* ¶ 10.

On the day before Thanksgiving 2002, Ms. Mullinix first saw an apartment located at

1050 Fifth Avenue in New York City (the "Apartment"). *Id.* ¶ 11. Ms. Mullinix felt that the

Apartment was too expensive and needed extensive renovations (in addition to the replacement

3

of the windows and air conditioning units); thus, she was not interested in purchasing the Apartment. *Id.* ¶ 12. Mr. Bogorad advised Ms. Mullinix that when evaluating whether or not to purchase the Apartment she must not consider the cost of the renovations or maintenance fees, because he would pay for the renovations and would continue to pay for the maintenance fees as he had done for the East 87th Street apartment. *Id.* ¶ 13. Mr. Bogorad told Ms. Mullinix that she could use all of the proceeds from the sale of the East 87th Street apartment to fund the 50% down-payment (typically required by co-operative buildings) if she purchased an apartment in the range of $1 million to $1.5 million. *Id.* ¶ 14. He assured her that he would pay for the monthly maintenance fees and any renovations. *Id.* ¶¶ 13, 15. Mr. Bogorad told Ms. Mullinix that he thought she should seriously consider the Apartment because it was in a great location, and expressly stated that (1) Ms. Mullinix should apply the proceeds of the sale of the East 87th Street apartment to the cash down payment that was required; (2) he would pay the monthly maintenance fees as he had done with the East 87th Street apartment; and (3) he would pay for the renovations, so she would only need to pay the mortgage. *Id.*

On or about February 5, 2003, Ms. Mullinix entered into a contract for the purchase and sale of the East 87th Street apartment. *Id.* ¶ 16. Ms. Mullinix subsequently closed on that sale on March 31, 2003. *Id.* ¶ 17. Once the couple decided that Ms. Mullinix would sell the East 87th Street apartment, they determined that they would have to store many of their belongings. Mr. Bogorad offered to pay the storage charges and Ms. Mullinix suggested that the couple split them evenly. Once the East 87th Street apartment was sold and the couple made arrangements to store

4

their belongings, Mr. Bogorad reiterated his promise to pay for one-half of the storage charges. *Id.*[1]

On February 7, 2003, after having learned that the price of the Apartment had been reduced, the couple visited the Apartment together. *Id.* ¶ 19. Ms. Mullinix continued to believe that the cost of the Apartment and the renovations would be too expensive. Mr. Bogorad wanted Ms. Mullinix to purchase the Apartment and reiterated his commitment to pay for the cost of the renovations. The possibility that Mr. Bogorad contribute funds to *purchase* the Apartment was never even discussed. *Id.* ¶ 20.

Subsequent to Ms. Mullinix placing an offer to purchase the Apartment, the couple met with an attorney to prepare a contract. *Id.* ¶ 22. Ms. Mullinix's attorney called the seller's attorney, who indicated that Ms. Mullinix should assemble all of her financial information and meet him in his office a few days later, so that he could meet both Ms. Mullinix and a competing bidder individually and make a recommendation to his client. *Id.* ¶ 23. On or about February 10, Ms. Mullinix met with the seller's attorney. That same day, the seller's attorney called Ms. Mullinix's lawyer to indicate that Ms. Mullinix's offer had been accepted. *Id.* ¶ 24. Mr. Bogorad did not provide any funds toward the purchase price of the Apartment and his financial information was never seen or considered by the seller or the seller's attorney when accepting Ms. Mullinix's offer. *Id.* ¶ 25.

Mr. Bogorad's commitment to pay for the monthly maintenance fees (as he had paid with respect to Ms. Mullinix's East 87th Street apartment), the cost of the renovations, and to split the total storage fee cost and the tax consequences was an integral part of the couple's decision to

---

[1] The storage costs were approximately $9,800.00; thus, Mr. Bogorad is obligated to pay $4,900.00. Additionally, one-half of the tax liabilities that Mr. Bogorad committed to paying totals approximately $36,296.00, the monthly maintenance fee is approximately $1,829.00 and the renovations to the Apartment were approximately $400,000.00.

4083522v4

have Ms. Mullinix purchase the Apartment. Ms. Mullinix executed the Contract for Sale for the Apartment on February 7, 2003, and closed on the purchase on June 10, 2003. *Id.* ¶ 26.

Shortly after Ms. Mullinix's offer was accepted, the real estate broker and the couple prepared Ms. Mullinix's application to the Cooperative Board for the Apartment. The financial statements were prepared with only Ms. Mullinix's assets, because she was to be the sole owner of the Apartment. *Id.* ¶ 27.

Ms. Mullinix purchased the Apartment entirely with her own funds. *Id.* ¶ 28. The Apartment, from the closing date, has always been in Ms. Mullinix's name. *Id.* ¶ 29. Mr. Bogorad never owned an interest in the Apartment, nor did Mr. Bogorad want to or intend to own such an interest. *Id.* ¶ 30. It was never in his name or transferred to or from his name to or from Ms. Mullinix. *Id.* The couple never intended that Mr. Bogorad have an ownership interest in the Apartment; to the contrary, he explicitly wanted Ms. Mullinix to own the Apartment entirely. *Id.* ¶ 31. When speaking about the Apartment to his family, Mr. Bogorad referred to Ms. Mullinix as purchasing the Apartment, never including himself as buying the Apartment with her. *Id.* ¶ 32.

Almost immediately after Ms. Mullinix's offer was accepted, the couple began planning the renovations. The couple planned for renovations to the Apartment together, meeting with architects, discussing the plans and shopping for ideas. *Id.* ¶ 33.

Unfortunately, before the renovations were finished and the Apartment was suitable to live in, Mr. Bogorad passed away unexpectedly while on vacation with Ms. Mullinix, the Defendants and the Defendants' children. *Id.* ¶ 34. Prior to Mr. Bogorad's death, however, he had negotiated and confirmed Ms. Mullinix's contract with Ms. Aman. *Id.* ¶ 35. The couple had reviewed and approved the architectural design plans from Ms. Aman just days prior to leaving

on their vacation, and had authorized Ms. Aman to send those plans out to general contractors for bidding. *Id.* ¶ 36. Mr. Bogorad committed to pay for the renovations, and understood that he would not acquire any ownership interest in the Apartment when doing so. *Id.* ¶ 37. The claims at issue in this case arise from the commitments relating to the Apartment that Mr. Bogorad made to Ms. Mullinix during his lifetime.

## **ARGUMENT**

### I.    **Standard of Review**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1985). Summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. Further, a party opposing summary judgment "may not rest upon the mere allegations or denials of [that party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985); *see also T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Liberty Lobby*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson* at 249-50. Because the Defendants have not set forth specific facts supporting the imposition of a constructive or resulting trust, summary judgment must be granted.

7

**II.    The Court should apply New York Law under the Massachusetts choice of law analysis.**

As an initial matter, the Court must determine which law to apply in this diversity action. A Federal court applies the choice of law rules of the state in which it sits. *Lexington Ins. Co. v. General Acc. Ins. Co. of America*, 338 F.3d 42 (1st Cir. 2003); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491 (1941). Therefore, since this case is pending in the Federal District Court of Massachusetts, Massachusetts choice of law analysis applies.

Massachusetts has abandoned a rigid, single factor analysis in favor of a more "functional approach." *Boston Hides & Furs, Ltd. v. Sumitomo Bank, Ltd.*, 870 F.Supp. 1153, 1159 (D. Mass. 1994). "Massachusetts courts generally apply the law of the state that has the most significant relationship to the litigation." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). Where there is a "false conflict" such that the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them. *Boston Hides & Furs, Ltd.*, 870 F.Supp. at 1159. In this case, whether the Court applies Massachusetts or New York law, it will reach the same result: the facts do not permit an imposition of a constructive or resulting trust. Because Massachusetts and New York set forth different elements necessary to impose a trust, however, the Court still must determine which law to apply.

Massachusetts considers a number of factors to determine which state's law to apply, including, but not limited to, (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 634 n.7 (1985). This is a simple breach of an oral contract action that does not involve complex facts or issues. Both Massachusetts and New York favor the

8

enforcement of contracts, and neither has enacted laws that apply to the specific facts of this case. *See Bushkin Assocs. Inc.*, 393 Mass. at 634-35 (explicit difference between states' laws, a statute of frauds position focused on the specific facts of that case, would alter the outcome). Following the considerations articulated in *Bushkin*, however, New York law should apply.

Many factors point toward neither New York nor Massachusetts, such as uniformity of result (since the result would be the same in either state), maintenance of interstate order and simplification of the judicial task. *See id.* at 635. The place of contracting and the place of negotiation were both Massachusetts and New York, because Ms. Mullinix and Mr. Bogorad were living together in both New York and Massachusetts during the relevant time period. *See* SF ¶ 4. The majority of the discussions, and definitive assurances by Mr. Bogorad that he would pay for the renovations and one-half the tax consequences and storage costs, however, took place in New York, particularly during the couple's first visit to the Apartment. Additionally, the place of performance was likely New York since the contract to purchase the Apartment was signed in New York, and Mr. Bogorad reimbursed Ms. Mullinix, a New York resident, for her expenses relating to the New York property. *Id.* ¶ 11. The location of the subject matter of the contract, the Apartment, is New York. Thus, New York has a more "significant relationship" to the litigation.[2]

Finally, one significant consideration is the parties' justified expectations. *Id.* at 632, 636. Ms. Mullinix and Mr. Bogorad expected that they were entering into a binding agreement. New York law most accurately protects the parties' expectations, because they negotiated and entered the contracts primarily in New York, the property that the contracts concern is located in New York and the parties anticipated that New York law would govern their agreements. Thus,

---

[2] The Defendants agree that New York law should apply to this action. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 12.

the Court should apply New York law to determine that the Defendants' counter-claim cannot survive summary judgment.[3]

### III.    The Defendants' Counter-Claim Fails as a Matter of Law

The Court cannot impose a constructive or resulting trust on the Apartment for the benefit of Mr. Bogorad's estate. The elements necessary for the imposition of a constructive or resulting trust are simply not present. Based upon the undisputed facts, the Court cannot, as a matter of law, impose any trust on the Apartment.

#### a.    A constructive trust cannot be imposed based upon the facts of this case.

A constructive trust must be proved by a plaintiff (here, the Defendants, the counter-plaintiffs) by "clear and convincing evidence." *Caballero v. Anselmo*, 759 F. Supp. 144, 147 (S.D.N.Y. 1991) (citing *Schmeider v. Hall*, 421 F. Supp. 1208 (S.D.N.Y. 1976), *aff'd* 545 F.2d 768 (2d Cir.), *cert. denied*, 430 U.S. 955 (1977). Four elements must be set forth before courts will impose a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise or agreement, express or implied; (3) a transfer in reliance upon such promise or agreement; and (4) unjust enrichment resulting therefrom. *Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1474 (S.D.N.Y. 1992).[4] A constructive trust will be imposed where "property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest." *Caballero*, 759 F. Supp. at 147. Essentially, a constructive trust will be found only

---

[3] Massachusetts has noted that "[w]here relevant contacts and considerations are balanced, or nearly so, we are inclined to resolve the choice by choosing that law 'which would carry out and validate the transaction in accordance with intention, in preference to a law that would tend to defeat it.'" *Bushkin Assocs. Inc.*, 393 Mass. at 636 quoting *Boston Safe Deposit & Trust Co. v. Paris*, 15 Mass. App. Ct. 686, 691 (1983). Although this Motion concerns only the Defendants' counter-claim for a constructive or resulting trust, the applicable law will be that which applies to the underlying breach of contract and estoppel claims. Both Massachusetts and New York will enforce the underlying agreement, although New York law does not preclude enforcement and therefore, because of the factors discussed above, will likely apply.

"when an unfulfilled promise to convey an interest in land induces another, in the context of a confidential or fiduciary relationship, to make a transfer resulting in unjust enrichment." *McGrath v. Hilding*, 41 N.Y.2d 625, 628-29 (1977).

It is undisputed that Ms. Mullinix never promised to convey the Apartment, or any portion thereof, to Mr. Bogorad, and Mr. Bogorad never transferred the Apartment to Ms. Mullinix in reliance on any promise. *See* SF ¶ 31.

In *Fodiman v. Zoberg*, 182 A.D. 2d 493 (N.Y. App. Div. 1992), the court would not impose a constructive trust because there was no evidence of a "transfer in reliance on a promise." *Id.* at 494. In that case, the defendant counterclaimed and sought to impose a constructive trust on a home for which she allegedly contributed a $90,000 "loan" toward the purchase price, which was interest-free and to be repaid when and if the plaintiff resold the property. *Id.* at 493. The couple never discussed taking title in both of their names. *Id.* The court refused to impose a constructive trust because the pleading "failed to allege either a promise to convey or reconvey the property or an interest therein to defendant or a transfer in reliance on such promise." *Id.*

Similarly, in *Stephan v. Shulman*, the court did not impose a constructive trust on a home shared by a non-married couple, but owned solely by the defendant. *Stephan v. Shulman*, 1130 A.D.2d 484, 485-86 (N.Y. App. Div. 1987). In *Stephan*, the plaintiff alleged that by oral agreement, the defendant promised to "support, maintain, and provide for" the plaintiff in return for certain "work, labor, and services to be performed by her." *Id.* at 484. The court refused to impose a constructive trust on the property, reasoning that "the plaintiff does not allege that she

---

[4] Massachusetts law prevents the imposition of a constructive trust in this case even more clearly than New York law. In Massachusetts a "constructive trust" typically arises where the evidence shows that one party has taken an unjust advantage of another party through fraud, violation of a fiduciary relation, or other improper means.

4083522v4

transferred the property in question in reliance on a promise by the defendant, nor did she ever have a prior interest in the property." *Id.; see also Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1474 (S.D.N.Y. 1992) (court refused to impose a constructive trust when defendant did not transfer property to his former personal and professional partner after promising to do so; there was not a "transfer in reliance on a promise").

The Defendants cannot prove the necessary elements for a constructive trust. The Defendants may prove that Mr. Bogorad and Ms. Mullinix were in a confidential relationship, however, they cannot meet their burden to prove the remaining three elements. Although the Southern District of New York has stated, in *dicta*, that "a constructive trust may be found even in the absence of these prerequisites when . . . equity and common sense require," the court stressed that in those instances, the plaintiff must at least show a promise and a transfer of property. *Caballero*, 759 F. Supp. at 147. The Defendants do not and cannot allege that there was ever a promise or agreement that Mr. Bogorad would have an interest in the Apartment. Ms. Mullinix never made a promise that she would hold the Apartment for Mr. Bogorad's benefit, nor was there a promise to convey the Apartment to a third party for his benefit. *See id.*; SF ¶ 31. To the contrary, the evidence clearly supports Mr. Bogorad's understanding and desire that Ms. Mullinix have sole ownership and equitable interest in the Apartment so that she would have someplace safe if she were to survive him. *Id.* ¶¶ 30-31.

In order for the Defendants to prove the third factor, that a transfer was made in reliance on a promise made by Ms. Mullinix, they would, logically, need to establish that Ms. Mullinix made a promise (the second factor), Mr. Bogorad made that transfer and the transfer was in reliance of that promise. *See Caballero*, 759 F. Supp. at 148. They have not and cannot make

---

*Nessralla v. Peck*, 403 Mass. 757 (1989). The Defendants do not and cannot allege such facts; thus, a constructive trust cannot be imposed under Massachusetts law.

12

such a showing. Just as in the *Fodiman* case, there was never a "transfer" of the Apartment (or money) in reliance on such a promise or agreement. It is undisputed that the Apartment was never transferred or intended to be transferred from Mr. Bogorad's name to Ms. Mullinix's. *See Fodiman*, 182 A.D. at 493; *Stephan*, 130 A.D.2d at 484; *see also* SF ¶ 29-30. It is undisputed that Mr. Bogorad never transferred any money to Ms. Mullinix based upon a promise to transfer an interest in the Apartment to him. SF ¶ 29-30. She paid the entire purchase price of the Apartment with the explicit intention to possess sole ownership. *Id.* ¶ 28-31. "It follows, then, that if no promise was made by [Ms. Mullinix] and no transfer was made or intended by [Mr. Bogorad], then [Mr. Bogorad] made no transfer in reliance on any promise by [Ms. Mullinix]." *Caballero*, 759 F. Supp. at 148.

Finally, Ms. Mullinix is in no way unjustly enriched by maintaining sole interest in the Apartment, for which she *alone* paid the full purchase price, took into her own name and never promised to transfer to anyone else. *See* SF ¶ 28-31. She is not unjustly enriched by Mr. Bogorad's estate fulfilling his promise and intentions with regard to payments concerning renovations to the Apartment, the payment of storage fees and maintenance fees and the payment of one-half the tax consequences of the sale of her East 87th Street apartment, since such promises constituted a valid contract for consideration that *was not* an ownership interest in the Apartment; or, in the alternative, must be enforced under the doctrine of estoppel. *See Mcgrath*, 41 N.Y.2d at 629 (enrichment alone will not suffice to invoke the imposition of a constructive trust; "[c]ritical is that under the circumstances and as between the two parties to the transaction the enrichment be unjust.")

Because the Defendants do not and cannot offer any evidence to dispute the established facts that negate the imposition of a constructive trust, the Motion must be granted.

13

**b.  The facts of this case do not support the imposition of a resulting trust.**

Similarly, the facts of this case do not support the imposition of a resulting trust.

Resulting trusts typically "spring[] into being '(1) where an express trust fails in whole or in part;

(2) where an express trust is fully performed without exhausting the trust estate; [or] (3) where

property is purchased and the purchase price is paid by one person and at his direction the vendor

conveys the property to another person." *Saulia v. Saulia*, 295 N.Y.S.2d 980, 982 (N.Y. App.

Div. 1968).  Because this case does not involve an express trust, for these purposes, a resulting

trust may arise when the whole purchase price for property is paid for by one person, but title is

taken in another's name.  Courts reason that absent other evidence, the person who pays for the

property does so for his own benefit.  *See McPherson v. McPherson*, 337 Mass. 611 (1958).

Because resulting trusts may have the effect of protecting the payor (the beneficiary of a

resulting trust) from his creditors, New York abolished these types of resulting trusts in the

Revised Statutes of 1830 to prevent the creation of secret trusts and to protect the creditors.  *See,*

*e.g., Julien J. Studley, Inc. v. Legrak*, 412 N.Y.S.2d 901 (N.Y. App. Div. 1979); N.Y. Estates,

Powers and Trusts Law § 7-1.3 (2002), Practice Commentaries.[5]

New York courts have recognized resulting trusts, however, if the transferee took the

property in his own name without the knowledge or consent of the party who paid for the

---

[5] Massachusetts courts have found resulting trusts *only* when the party seeking to impose the trust paid the purchase price, yet the property was placed in another's name.  A resulting trust arises if *from the outset* the person who "supplies the purchase price *intends* that the property bought shall inure to his own benefit and *not that of another*, and that the conveyance is taken in the name of another for some incidental reason." *Lewis v. Mills*, 32 Mass. App. Ct. 660, 664 (1992).  This simply does not apply.

Massachusetts may recognize a resulting trust if the parties intended a plaintiff to have a beneficial interest in a *fixed and fractional* part of the property, but will only impose a resulting trust to the extent of that fractional interest. *Frank v. Frank*, 335 Mass. 130  (1956).  However, if a plaintiff is able to prove no more than an intent to take an undetermined beneficial interest in the property, rather than a specific or distinct interest, no resulting trust arises in his favor.  *Id.*  In other words, "[a] general contribution towards the purchase price is not enough." *Id.*  The Defendants cannot prove *any* intention by Mr. Bogorad and Ms. Mullinix that he have *any* interest in the Apartment; however, assuming *arguendo* they could show some intent, under Massachusetts law, at best, he made a "general contribution" toward the maintenance of the Apartment, which is not enough to support a resulting trust.

property. *Mendel v. Hewitt*, 555 N.Y.2d 899 (N.Y. App. Div. 1990) (payor gave proceeds of the sale of his farm to transferees to buy a new farm as a joint venture with him, which they failed to do). The facts of this case are not even remotely similar to those where New York has allowed a resulting trust.

Ms. Mullinix purchased the Apartment entirely with her own funds. SF ¶ 28. Mr. Bogorad's commitment was to provide certain funds for renovations, maintenance fees, tax consequences, storage and temporary living accommodations. *Id.* ¶ 21. Mr. Bogorad in no way whatsoever contributed money to the purchase price of the Apartment. *See id.* ¶¶ 20, 25, 28. It is undisputed that he did *not* pay for any portion of the Apartment with an intention to maintain an interest in the Apartment, despite placing it in Ms. Mullinix's name. *Id.* ¶ 29-31. Mr. Bogorad's stated intentions were to assist Ms. Mullinix in acquiring the Apartment so that she could maintain it for the remainder of her life, particularly after he passed. *See id.* Thus, just as with a constructive trust, the counter-claim for a resulting trust cannot survive summary judgment.

## IV.    CONCLUSION

The Defendants have not offered any evidence whatsoever to support the elements necessary to impose a constructive trust, because it is undisputed that there was no promise that Mr. Bogorad would have an interest in the Apartment and there was no transfer in reliance on such a promise. Furthermore, Ms. Mullinix paid for the Apartment entirely with her own money, and both Ms. Mullinix and Mr. Bogorad intended her to maintain a sole ownership interest in the Apartment. The facts of this case simply do not resemble those of any case where a court has found a constructive or resulting trust.

4083522v4

For the reasons set forth above, Ms. Mullinix respectfully moves this Court to grant this Motion for partial summary judgment and further relief as this Court deems appropriate and just.

Respectfully submitted,

KATHLEEN P. MULLINIX,
By her attorneys,

/s/ Sara E. Solfanelli
Larry C. Kenna (BBO #267760)
Michelle L. Dineen Jerrett (BBO #634930)
Sara E. Solfanelli (BBO #658018)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tel: (617) 248-5000

Date:   June 5, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 5, 2006.

/s/ Sara E. Solfanelli

16

4083522v4