UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KATHLEEN P. MULLINIX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | No. 04-12684-WGY |
| | ) | |
| KIKI BOGORAD-GROSS and | ) | |
| LEONARD P. BOGORAD, as They | ) | |
| Are Executors of the Will of | ) | |
| Lawrence Bogorad, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and LR 56.1, Defendants Kiki Bogorad-Gross

("K. Bogorad-Gross") and Leonard Bogorad ("L. Bogorad"), as Executors of the Will of

Lawrence Bogorad (collectively, "Defendants"), by their attorneys, Sullivan & Worcester LLP,

hereby oppose the motion of the Plaintiff, Kathleen P. Mullinix ("Mullinix" or "Plaintiff"), for

partial summary judgment. Plaintiff's motion for partial summary judgment must be denied. In

the event that Plaintiff establishes the Defendants' liability for renovation costs or maintenance

fees for the Plaintiff's cooperative apartment located at 1050 Fifth Avenue ("Apartment"), the

estate of Lawrence Bogorad ("Estate"), as a matter of law, acquires an ownership interest in the

cooperative shares and proprietary lease for the Apartment by constructive or resulting trust in an

amount proportionate to the aggregate contribution by Bogorad and the Estate.

Throughout this proceeding, Plaintiff has emphasized Bogorad's allegedly significant

contributions, in cash and otherwise, to the purchase of the Apartment. Plaintiff now concocts

her defense to Defendants' counterclaim by claiming Bogorad did not contribute to the purchase price, or the cost paid to the seller, of the Apartment.  In doing so, Plaintiff ignores not only the relevant New York law governing constructive and resulting trusts, but she also undermines her own pleadings that so heavily rely upon Bogorad's allegedly significant personal and financial contributions towards the purchase costs of the Apartment.  Plaintiff's incompatible arguments confuse the facts and misstate the law.  Accordingly, this Court should deny Plaintiff's motion for partial summary judgment.

## STATEMENT OF FACTS[1]

### I.    According to Plaintiff, she and Bogorad lived as husband and wife after their secret affair became public.

According to the Plaintiff, she and Bogorad met in December, 1968, when Plaintiff was a postdoctoral fellow in Bogorad's graduate science lab at Harvard.  Mullinix 8:2-14[2].  Plaintiff claims that she and Bogorad began a long-term illicit affair in 1975.  Mullinix 10:18 - 11:10; 11:11 - 12:8; 14:11-21; 21:4-18.  At that time, Plaintiff was married to Joseph Mullinix and Bogorad was married to Rosalyn Bogorad ("Rosalyn"), to whom he remained married until he died in December 2003.  Mullinix 16:1-4; 50:23 - 51:16; L. Bogorad 13:12-14.  Bogorad never disclosed the affair to Rosalyn.  Mullinix 34:22 - 35:2.  Plaintiff disclosed the affair to her husband in 1997 and they divorced shortly thereafter.  Mullinix 35:3-8; 38:17 - 39:1.[3]

---

[1] A complete recitation of the facts of this case is contained in Defendants' Motion for Summary Judgment, which was filed with this Court on May 25, 2006.

[2] References to the transcripts of depositions in this action, the relevant portions of which are appended to the Affidavit of Lisa M. Hodes, which was filed with Defendants' Motion for Summary Judgment ("Hodes Aff."), are cited by the deponent's name followed by the page(s) and line number(s).  Thus, by way of example, Page 8, Lines 2 through 14 of Plaintiff's deposition is cited as "Mullinix 8:2-14".  Deposition exhibits will be referenced as [Deponent] Dep. Exh. __.  The referenced affidavits were also filed with Defendants' Motion for Summary Judgment, and are cited by the surname of the affiant, followed by "Aff." and the paragraph number thereof or exhibit.

[3] Rosalyn began showing symptoms of Alzheimer's disease in the early 1990's.  L. Bogorad 13:21-14:12.  By 1998 she required 24-hour care and was admitted to a nursing facility in Natick, Massachusetts; she currently resides at

{B0529920; 2}

The Defendants, the daughter and son of Bogorad and Rosalyn, first learned that Bogorad had a new companion in 1997 after Bogorad had heart surgery. K. Bogorad-Gross 59:5-10; 59:17 - 63:7; L. Bogorad 35:5-9. Subsequently, Plaintiff began appearing regularly at Bogorad family functions. K. Bogorad-Gross 92:20 - 93:17.[4] According to Plaintiff, "our understanding was that we were man and wife except we weren't married." Complaint, ¶ 9; Mullinix, 51:22-23.[5] After Plaintiff's divorce in 1997, Bogorad "picked up the tab wherever we went." Mullinix 58:17-21; 59:21-22. In 1998 the Plaintiff alleges that she and Bogorad discussed that they would marry after Rosalyn died: "[I]t was part of our agreement to be committed to each other as married people and that's the way we would live . . . that we considered ourselves to be man and wife, that I was committed to him forever and he to me. Mullinix 60:11-13; 60:17-23.[6]

## II.    The Plaintiff sold the E. 87th Street Apartment after she received an enticing offer for a handsome profit.

In early 2002, a neighbor approached Plaintiff about selling her apartment located at 170 E. 87th Street in New York City (the "E. 87th Street Apartment"). Complaint ¶ 13; Mullinix

---

Fairlawn Nursing Home in Lexington, Massachusetts. K. Bogorad-Gross 19:21-24; 20:20-24; L. Bogorad Aff., ¶ 1; K. Bogorad-Gross Aff., ¶ 5. Bogorad visited Rosalyn two or three times a week until his death. K. Bogorad-Gross 23:12-13; L. Bogorad 22:8-10.

[4] Although initially uncomfortable, the Defendants accepted the relationship because their father appeared happy and Rosalyn was no longer able to be a companion to him; thus, they maintained a friendly relationship with Plaintiff because they believed their father considered her to be part of the "family". K. Bogorad-Gross 88:3-15; 91:6 - 92:2; L. Bogorad 36:17 - 37:2.

[5] From July, 1999, until his death in December, 2003, Bogorad spent the weekdays at his Lexington Home, which remained his residence, and visited Plaintiff in New York City most weekends. Mullinix 41:15-20; 42:8-10; L. Bogorad 72:13 - 73:11.

[6] Over the course of their relationship, Bogorad displayed his characteristic generosity by showering Plaintiff with gifts and vacations. Mullinix 44:20 - 45:19; 59:21-22; L. Bogorad 78:8-18; 79:13-16; K. Bogorad-Gross 113:8-19. Bogorad displayed similar generosity with his children and grandchildren, often footing the bills for major expenses incurred on the family vacations. L. Bogorad 133:5-13; 134:15 - 135:4. Bogorad also provided each of his grandchildren $10,000 per year for college expenses. L. Bogorad 50:21 - 51:9; 52:15 - 57:22; K. Bogorad-Gross 36:18 - 38:1. No payments were made, however, after Bogorad died, although two of his grandchildren were in college. L. Bogorad 55:6-12; K. Bogorad-Gross 38:14-18. Bogorad's estate has not made these payments, nor are there any claims for these expenses. L. Bogorad 57:10-22.

{B0529920; 2}

66:19 - 67:14.  Plaintiff consulted her son, Brendan Mullinix ("Brendan"), the Vice President of

a New York City real estate investment trust, who recommended that Plaintiff sell that apartment

and buy an apartment on Fifth Avenue because, according to Brendan, an apartment on Fifth

Avenue would appreciate faster than an apartment on E. 87th Street.  Mullinix 19:8-21;

L. Bogorad 104:6-10; 142:4 - 143:20; K. Bogorad-Gross 168:16-20.  Plaintiff also conferred

with Bogorad and Judith Durham ("Durham"), her real estate agent, both of whom recommended

that she sell the E. 87th Street Apartment.  Mullinix 68:13 - 69:7; 70:13 - 71:8; 74:6-13; 75:9-12;

77:2 - 78:12.  In February 2003 she did so for $1.325 million.  Mullinix 74:2-5.

### III.    Bogorad paid for the monthly maintenance fees and part of the renovations for the Apartment as gifts to the Plaintiff.

Plaintiff engaged Durham to find a new apartment.  Mullinix 79:1-2.  In November 2002,

Plaintiff toured the Apartment, located three long blocks and one short block from the E. 87th

Street Apartment.  Mullinix 91:16-19; Complaint ¶ 14.  The Apartment, which was listed at

around $2.4 million, needed extensive renovations.  Complaint ¶ 14; Mullinix 93:4-8.  Plaintiff

discussed the Apartment with Bogorad after she toured it, lamenting that it was too expensive

and claims that Bogorad told her he wanted to pay for the renovations.  Complaint ¶ 14; Mullinix

104:18 - 105:3l; 109:20 - 110:1.  Later, in January 2003, Plaintiff toured the Apartment a second

time and reported to Bogorad.  Mullinix 103:6 - 104:13.  Plaintiff claims that Bogorad repeated

that he wanted to pay for the renovations "and, obviously, I'll pay for the maintenance as I have

been."  Complaint ¶ 17; Mullinix 105:4-9.

In February 2003, Plaintiff and Bogorad toured the Apartment.  Complaint ¶ 16; Mullinix

115:2-5.  In a private conversation with Bogorad, Plaintiff again lamented that the Apartment

was still too expensive and claims that Bogorad repeated that he wanted to pay for the

renovations and the monthly maintenance fees.  Mullinix 118:8-14; 118:16 - 119:9.  Plaintiff also

claims that Bogorad reiterated that he wanted to pay for half of the capital gains tax incurred in connection with the sale of the 87th Street Apartment and half of the storage costs Plaintiff would incur until the renovations were completed.  Complaint ¶ 18.

Ultimately, Plaintiff offered $1,400,000[7] for the Apartment and interviewed with the seller's attorney.  Mullinix 122:15 - 125:6; 127:11-15.  During that interview, Plaintiff provided a list of her financial accounts, but she never mentioned Bogorad as her partner or as a source of any money to purchase or renovate the Apartment.  Mullinix 140:17 - 141:3.  The next day Plaintiff learned that the seller had accepted her offer.  Mullinix 142:2-5.  Plaintiff claims that she expressed panic to Bogorad about the finances and Bogorad told her not to worry.  Mullinix 143:19 - 144:9.  Thereafter she learned that just weeks after Plaintiff and Bogorad had first discussed renovations, Bogorad had changed his estate plan to provide her with a one-sixth (1/6) interest in his 1997 revocable trust.[8]  Mullinix 150:15 - 151:20; 152:11-14; 190:9-16; see also L. Bogorad 65:21 - 69:20; K. Bogorad-Gross Aff. ¶ 6; L. Bogorad Aff. ¶ 5.

In early June 2003 Plaintiff interviewed with the Cooperative Board.  Mullinix 213:5-13. They asked Plaintiff about her source of wealth.  Ring 25:2-9.  It is undisputed that Plaintiff never mentioned Bogorad as one of her financial resources for the purchase or occupancy of the Apartment.[9]  Ring 27:3-9.  Instead, Mullinix responded that she had sold her interest in a

---

[7] The Apartment is now worth approximately $2,100,000.  See Defendant's Motion for Reconsideration, Exh. A.

[8] That trust is currently worth nearly $2 million.  Berlin Aff. ¶ 5.  By November 2002, Bogorad had already suffered from bladder cancer and had a quadruple bypass.  Mullinix 206:5-18.

[9]

        Q.      Did Ms. Mullinix ever at that interview or subsequently inform you, in words or substance, that she intended to rely upon wealth or finances from any other person in connection with her purchase and occupancy at 1050 Fifth Avenue?

        A:      No.

Ring 27:3-9.

technology company.  Ring 25:2-9.[10]  The Cooperative Board also asked Plaintiff if she expected

overnight guests.  She replied that "she did not have guests."[11]  Ring 25:2-9.  According to

Plaintiff, she knowingly omitted Bogorad's name from both her oral interview and written

Cooperative Application.  Mullinix 177:10-23.

In February 2003, Plaintiff began researching costs for mandatory and discretionary

renovations to the Apartment.  Mullinix 167:1-13.[12]  Plaintiff then determined that her

discretionary renovations would cost approximately $450,000.  Mullinix 169:11 - 170:4.  To help

her, Bogorad referred her to Raynor Warner ("Warner"), a close friend and architect.  Complaint

¶ 23; Mullinix 216:10-23; K. Bogorad-Gross 155:19 - 156:15.  Bogorad paid Warner's bill,

which was addressed only to Plaintiff, directly and Plaintiff did not report it as income.

Complaint ¶ 23; Mullinix 221:18-21; K. Bogorad-Gross 156:22 - 157:7.  Warner referred

Plaintiff to Heather Aman, an interior designer in New York City, and Plaintiff signed a contract

with Aman on July 25, 2003.  Complaint ¶ 24; Mullinix 216:10-12; 218:12-21.  Bogorad was not

a party to the contract between Aman and Plaintiff.  However, Bogorad reimbursed Plaintiff for

Aman's bills.  Again, Mullinix never declared these payments on any of her income tax returns.

Mullinix 201:17 - 203:18; 225:11-16.

---

[10] In fact, Plaintiff had served as the Chief Executive Officer of a technology company she founded.  Mullinix 28:14 - 29:7.  Subsequently, Plaintiff worked as an independent biotechnology consultant, which included writing a business plan for a science-based neutraceutical company, for which she received $450,000 in compensation. Mullinix 29:14-18; 30:17-22.

[11]
| Q. | Did you, Ms. Ring, or any other board member ask Ms. Mullinix at her interview how often she had or intended to have overnight guests? |
| A: | Yes. |
| Q: | And what did she respond? |
| A: | My recollection is that she responded she did not have guests. |

Ring 25:2-9.

[12] The Cooperative Board required Plaintiff to install new windows and the Apartment's heating system was broken. Mullinix 167:14 - 168:6.

{B0529920; 2}

**IV.    The Plaintiff manipulatively portrays Bogorad's gifts to her as a contract.**

On December 28, 2003, Bogorad passed away while on a Bogorad family vacation to Mexico.  Complaint ¶ 30.  Plaintiff flew back to Boston with K. Bogorad-Gross and her family. K. Bogorad-Gross 134:16-17; L. Bogorad 97:4-21.  Plaintiff and K. Bogorad-Gross sat next to each on the second leg of the return flight.  K. Bogorad-Gross Aff. ¶ 12.  As both grieved Plaintiff realized Bogorad had not yet given her money for the majority of her renovation expenses:

> "Oh no! What am I going to do? Laurie [i.e., Bogorad] was going to pay for the renovations."

K. Bogorad-Gross 136:22 - 137:24; K. Bogorad-Gross Aff. ¶ 12.  Still attempting to cope with the reality of her father's unexpected death, K. Bogorad-Gross replied only that they would "figure it out."  K. Bogorad-Gross 135:11-15, 137:4-24; L. Bogorad 100:8-14; K. Bogorad-Gross Aff. ¶ 12.

After her discussion with K. Bogorad-Gross, the Plaintiff twice approached L. Bogorad. On January 2, 2004, Plaintiff met with L. Bogorad and James Gross, Esq., the husband of K. Bogorad-Gross, who were sorting through Bogorad's files at the Lexington Home, and claimed that she and Bogorad "had an agreement that [Bogorad] was going to pay for the renovations on the apartment up to $400,000, and he also paid the maintenance on the apartment both at 87th Street and at Fifth Avenue."  Mullinix 233:20 - 235:14; L. Bogorad Aff. ¶ 9; Gross Aff. ¶¶ 13-16.  Despite being a sophisticated businesswoman,[13] Plaintiff did not have any of Bogorad's alleged promises in writing.  Mullinix 233:20 - 235:14; L. Bogorad 84:13-24.

---

[13] See, supra, Section III, footnote 10.

{B0529920; 2}

Plaintiff admits that L. Bogorad never told her that the Estate would pay for the renovations or the monthly maintenance fees.  Mullinix 233:20 - 235:14.

Plaintiff and L. Bogorad spoke again by telephone a few weeks later.  L. Bogorad 86:14-17.  Plaintiff began the conversation by offering to help L. Bogorad's wife, Cynthia Bogorad, obtain an appointment with a renowned physician in New York.  L. Bogorad 122:22 - 123:13.  Plaintiff then asked L. Bogorad how the Estate wanted to handle the bills for the renovations, and he replied that it would violate the Defendants' fiduciary duties as executors of the Estate to pay any bills in connection with Plaintiff's Apartment.[14]  L. Bogorad 86:14 - 96:7; 234:3-14; Mullinix 241:14-19; 242:1-5.

Prior to their conversations with Plaintiff, the Defendants had no knowledge of any of the Plaintiff's alleged discussions with Bogorad concerning any of the alleged Contracts.  L. Bogorad Aff. ¶¶ 8, 13; K. Bogorad-Gross Aff. ¶¶ 13, 14.  Although it was not unusual for Bogorad to be "close to the vest" about personal aspects of his relationship with Plaintiff, L. Bogorad 44:1-13; K. Bogorad-Gross 25:19 - 26:2, Bogorad usually discussed important financial matters with K. Bogorad-Gross.  K. Bogorad-Gross 26:3-19; 51:22 - 52:8.[15]  In fact, on several occasions K. Bogorad-Gross had discussed the renovations to the Apartment with her father, but he never mentioned the alleged Renovations Contract to her or to his son, L. Bogorad, even though Bogorad and L. Bogorad discussed Plaintiff's purchase of the Apartment over brunch in 2003.  K. Bogorad-Gross 116:8 - 117:3; 145:13-24; 147:13-19; 149:14-20; 151:19 - 152:3; L. Bogorad 101:13-17; 103:14 - 104:6; 107:22 - 108:4; 135:5-13; 137:3-19.  A thorough

---

[14] Subsequent to Plaintiff's conversation with K. Bogorad-Gross on the flight home from Mexico, the Defendants sought legal advice from the estate's lawyer.  L. Bogorad 96:8-24.  The estate's lawyer stated that any payments to the Plaintiff would violate the Defendants' fiduciary duties.  L. Bogorad 95:20-24.

[15] For example, Bogorad informed K. Bogorad-Gross of changes to his estate plan, certain insurance policies and large purchases, such as a new car and computer.  K. Bogorad-Gross Aff. ¶ 8.

search of Bogorad's papers and personal effects has not unearthed a scrap of paper, or bit or byte of electronic data, memorializing any of the alleged "Contracts".  L. Bogorad Aff. ¶ 9; Gross Aff. ¶¶ 13, 14, 17 and 19.

**V.    The Plaintiff received notice that the Estate would not pay for the renovations, but proceeded with the renovations anyway.**

In a letter dated February 11, 2004, the Estate's lawyer notified Plaintiff that the Estate would not pay any of her claims because payment would violate the Defendants' fiduciary duties.  Mullinix Dep. Ex. 15 (Hodes Aff. Exh. F); <u>see also</u> L. Bogorad 233:9-15.  Despite that express notice, on March 17, 2004, Plaintiff entered into a $350,000 contract with McGraime Woodworking to perform her discretionary renovations to the Apartment.  Complaint ¶ 32; Mullinix Dep. Exh. 6 (Hodes Aff. Exh. G).

On December 22, 2004, Plaintiff commenced this action to recover from the Estate her costs for, *inter alia*, the renovations and monthly maintenance fees.

## ARGUMENT

**I.    If Plaintiff is Successful on Her Claims, This Court Should Impose A Constructive Trust Upon the Cooperative Shares and Proprietary Lease for the Apartment in an Amount Proportionate to Any Contributions by Bogorad and the Estate.**

**A.    Equity Dictates that a Constructive Trust be Imposed in Favor of the Estate if the Plaintiff is Successful on Her Claims.**

Generally, New York law requires that a party establish four elements in order to be entitled to a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment.  <u>See</u> <u>Simonds v. Simonds</u>, 45 N.Y.2d 233, 241 (1978) (citing <u>Sharp v. Kosmalski</u>, 40 N.Y.2d 119, 121 (1976)); <u>Reiner v. Reiner</u>, 100 A.D.2d 872, 874 (N.Y. 1984) (same).  Plaintiff incorrectly

explains the constructive trust doctrine as rigidly limited to these four factors.[16]  See Mem. in Sup. of Pl.'s Mot. for Part. Summ. J. 10-11.  The constructive trust doctrine is an elastic equitable remedy, see Simonds, 45 N.Y.2d at 241, and New York courts view these factors as mere guideposts.  See id. (quoting Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 389 (1919)) ("[a] court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief."); see also Reiner, 100 A.D.2d at 874.  The applicability of a constructive trust "is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them."  See Simonds, 45 N.Y.2d at 241 (quoting Latham v. Father Divine, 299 N.Y. 22, 27 (1949)).

A constructive trust should be imposed in favor of the Estate if the Plaintiff is successful on her claims.  Plaintiff's argument that Bogorad (her loving "husband" who allegedly showered his beloved "wife" with contracts instead of gifts) promised to pay her hundreds of thousands of dollars for Apartment-related expenses without any expectation of a beneficial ownership interest in the Apartment defies both common sense and basic principles of equity.  Moreover, Plaintiff's contradictions and cupidity are incontrovertible.  Plaintiff contends, under oath, that Bogorad did not contribute to the purchase of the Apartment.[17]  Mullinix Aff. ¶ 13.  However, this sworn statement directly contradicts her primary argument that Bogorad's promise to make

---

[16] Plaintiff misleads this Court by stating that "a constructive trust will be found only 'when an unfulfilled promise to convey an interest in land induces another, in the context of a confidential or fiduciary relationship, to make a transfer resulting in unjust enrichment.'" (emphasis added)  See Mem. in Sup. of Pl.'s Mot. for Part. Summ. J. 11 (quoting McGrath v. Hilding, 41 N.Y.2d 625, 628-29 (1977)).  In fact, in McGrath, the Court of Appeals of New York did not limit constructive trusts solely to an unfulfilled promise to convey an interest in land.  McGrath, 41 N.Y.2d at 628-29.  Rather, the Court of Appeals of New York has declared that constructive trusts will apply to "whatever knavery human ingenuity can invent."  Simonds, 45 N.Y.2d at 241, quoting Bogert, Trusts and Trustees, § 471, at p. 29 (2d ed. rev. 1978).

[17] In her motion Plaintiff asserts for the first time in this case that Bogorad told the Plaintiff that he wanted her to own the Apartment "outright" and that he would reimburse her for Apartment-related expenses so that "there would be no question as to who owned the Apartment."  Mullinix Aff. ¶ 12.

{B0529920; 2}

large financial contributions towards the purchase costs of the Apartment was the only reason Plaintiff purchased the Apartment.  See Mem. in Sup. of Pl.'s Mot. for Part. Summ. J. 1-2. Simply, Plaintiff wants the Estate to carry the financial burden of her lavish renovations without receiving any of the benefits of the investment.

Plaintiff's contradictory and fulsome arguments muddy what are remarkably clear waters: if Bogorad's generous financial contributions to Plaintiff were not gifts but payments pursuant to a contract, and but-for Bogorad's promises for financial assistance Plaintiff would not have purchased the Apartment, then it is clear that Bogorad significantly contributed to the purchase costs of the Apartment.  Logic, common sense and equity dictate that a cash contribution of more than $400,000 on an Apartment purchased for $1,400,000 and now worth at least $2,100,000 merits an ownership interest.  Accordingly, if Plaintiff is successful on her "contract" claims, under New York law this Court should impose a constructive trust on the cooperative shares and proprietary lease of the Apartment in an amount equal to Bogorad's investment.

**B.    The Four Factors Enumerated by the New York Courts are Also Present in this Case.**

      1.    As a Matter of Law Bogorad and the Plaintiff Maintained a Confidential Relationship.

Under New York law, the allegedly quasi-marital relationship between Bogorad and the Plaintiff constitutes a "confidential relationship."  See Muller v. Sobol, 277 A.D. 884, 885 (N.Y. 1950); see also Reiner v. Reiner, 100 A.D.2d 872, 874 (1984) (declaring that family ties constitute a confidential relationship).  Muller is directly on point.  In Muller, the parties lived as husband and wife, albeit in adultery, for over 20 years until the plaintiff commenced an action for a constructive trust upon certain real property.  Id.  Without condoning the relationship, the court found a confidence between the parties and granted a constructive trust in favor of the plaintiff in order to avoid unjust enrichment.  Id.  The court reasoned that, at a minimum, an

- 11 -

implied oral agreement existed between the parties that the property at issue was purchased for joint ownership and that the plaintiff contributed, *inter alia*, cash towards the purchase and maintenance of the property in furtherance of that agreement.  Id.

> 2.    As a Matter of Law This Court May Infer an Implied Promise that
>        Bogorad Would Retain an Ownership Interest in the Apartment.

To impose a constructive trust, the promise may be express, implied or inferred from the transaction.  See Muller, 277 A.D. at 885 (implying oral agreement between paramours that real property was purchased for joint ownership), Reiner, 100 A.D.2d at 874 (finding an implied promise on behalf of the defendant's parents, co-signors on the parties' mortgage, that they would not assert an ownership in the marital home because they co-signed the mortgage for the convenience of the mortgagee).[18]

As discussed above, the Plaintiff has taken great pains to establish that she and Bogorad lived as husband and wife.  Her sworn testimony is that they lived together at the E. 87th Street Apartment and Bogorad's home in Lexington, Massachusetts.  Mullinix Aff. ¶ 3.  Moreover, the Plaintiff claims that she expected to live with Bogorad as husband and wife in the Apartment, see Mullinix 173:3-6, with the renovations and maintenance fees funded by Bogorad.  The Plaintiff further purports that Bogorad assumed a key role in planning the renovation project.  See Mem. in Sup. of Pl.'s Mot. for Part. Summ. J. 9-11.

The facts, as alleged by the Plaintiff, establish that Bogorad made significant contributions, in cash and in kind, to the purchase of the Apartment.  As in Muller, this Court may infer an implied promise that, as Plaintiff's "husband" and joint occupant of the Apartment

---

[18] The absence of an express or implied promise is not fatal to a claim for a constructive trust.  See Lines v. Bank of America Nat'l Trust & Sav. Ass'n, 743 F. Supp. 176, 180 (S.D.N.Y. 1990) (imposing constructive trust despite the absence of a promise).

- 12 -

to which he contributed his time and money, Bogorad retained an ownership interest in the Apartment.  See Muller, 277 A.D. at 885.[19]

Alternatively, a genuine issue of material fact exists as to whether Bogorad implied a promise that he would assume an ownership interest in the Apartment.  See Mullinix, 184:20 - 185:6 (testifying that there was no discussion as to what would happen in terms of occupancy of the Apartment if Plaintiff were to die).  Plaintiff's affidavit is the only evidence that Bogorad did not intend to assume an ownership interest in the Apartment.  Because Bogorad is unavailable for direct contradiction and Plaintiff's credibility must be judged by a trier of fact, a question of fact remains.  See Foreman v. Foreman, 251 N.Y. 237, 242-43 (1929) (ordering new trial to judge credibility of plaintiff's uncontradicted testimony that decedent promised to convey plaintiff real estate).  Therefore, this Court should deny Plaintiff's motion for partial summary judgment.

3.    As a Matter of Law, Bogorad's Contribution of Time and Money to the Apartment Constitutes a Transfer in Reliance on the Implied Promise that Bogorad Would Retain an Ownership Interest in the Apartment.

Ignoring applicable case law, Plaintiff erroneously denies that the Defendants can establish the "transfer in reliance" element.  Bogorad's contribution of time and money towards the Apartment satisfies the "transfer in reliance" element.  See Lester v. Zimmer, 147 A.D.2d 340, 341-42 (N.Y. 1989).

---

[19] Although the New York Court of Appeals held in Morone v. Morone, 413 N.E.2d 1154 (N.Y. 1980), that "cohabitation without a marriage does not give rise to the property and financial rights to which normally attend the marital relation…," the law in New York has evolved over time to recognize modern social realities, including the rights of domestic partners.  See Minors v. Tyler, 137 Misc. 2d 505, 507 (N.Y. Civ. Ct. 1987) (finding that an unmarried paramour who assumes a marital relationship without the benefit of a legal marriage is at least a co-occupant with an interest in the shared property even though legal title is held by her partner).  "Modern life requires the courts to recognize that unmarried couples acquire rights similar to married occupants as it affects continued occupancy of the home they have shared." Dejesus v. Rodriguez, 196 Misc. 2d 881, 883-85 (N.Y. Civ. Ct. 2003).  But see Blake v. Stradford, 188 Misc. 2d 347, 352 (N.Y. Dist. Ct. 2001) (disagreeing with Minors v. Tyler).

Lester is illuminating.  In Lester, the plaintiff paramour obtained a constructive trust upon certain real property, owned by the defendant's mother, to which plaintiff had contributed time, money and work in reliance on the promise by the defendant's mother to give the parties title to a dwelling and six acres of land.  Id. at 341.  After the plaintiff and the defendant terminated their relationship, the parties alternately used the house; later, the defendant remarried and locked the plaintiff out of the house.  Id.  The court imposed a constructive trust on the real property because it found that the plaintiff's physical and financial contributions to the dwelling and land constituted a transfer in reliance on a promise to share in the result.  Id. at 342.

Similarly, Bogorad's contributions of time and money towards the Apartment—if not deemed by this Court to be gifts—constitute a transfer in reliance on the implied promise that Bogorad would retain an ownership interest in the Apartment.

4.    As A Matter of Law, Any Payments Made By the Estate to the Plaintiff Will Unjustly Enrich the Plaintiff.

Plaintiff argues that she has not been unjustly enriched by purchasing and renovating the Apartment and that she would in no way be unjustly enriched were this Court to order the Estate to pay her claims.  This argument is arrant nonsense and wholly unsupported by the applicable law and facts.

The only expert report in this case demonstrates that the Apartment is worth approximately $2,100,000, a gain to Plaintiff of $700,000 over just three years.  See Def.'s Mot. Summ. J. 20.  The bills for the renovations have been paid and, if Plaintiff were to suffer any financial hardship as a result of such payments, she could sell the Apartment for a substantial profit even after accounting for all of her claims in this case.  Any payments made by the Estate to the Plaintiff in this case would result in a substantial windfall to the Plaintiff because Plaintiff would be able to reap the benefits of the appreciation on her renovated Apartment without the

- 14 -

expenditures for those renovations.  See Reiner, 100 A.D.2d at 874 (finding unjust enrichment manifest if co-signor parents are allowed to retain an ownership interest in marital home with no expenditures on their part).  Therefore, the Plaintiff would be unjustly enriched if the Estate were to be required to make any future payments to her.

Contrary to Plaintiff's baseless arguments, Bogorad and Plaintiff maintained a confidential relationship whereby an implied promise existed for joint ownership of the Apartment and Bogorad transferred funds to Plaintiff in reliance on that promise, resulting in Plaintiff's unjust enrichment.  Alternatively, a genuine issue of material fact exists as to whether Bogorad intended to maintain an ownership interest in the Apartment.  Therefore, this court should deny Plaintiff's motion for partial summary judgment.  Furthermore, if Plaintiff is successful on her claims, then this Court should impose a constructive trust in the cooperative shares and proprietary lease for the Apartment in an amount proportionate to the aggregate contributions by Bogorad and the Estate.

## II.     Alternatively, This Court Should Impose A Resulting Trust Upon the Cooperative Shares and Proprietary Lease for the Apartment in an Amount Proportionate to Any Contributions by Bogorad and the Estate.

The common law doctrine of the "purchase money resulting trust," whereby a trust is automatically imposed, by operation of law, in favor of a purchaser when title of property bought by that purchaser is given to another, was abolished in New York State in the 1830's.  See N.Y. Est. Powers & Trusts Law § 7-1.3 (McKinney 1992).  The abolition does not, however, prevent a court in equity, on an inquiry into the consideration of a transaction, from imposing a resulting trust in order to prevent a failure of justice.  See generally Christy v. Christy, 44 N.Y.S.2d 579, 580 (Sup. Ct. 1943) (imposing constructive trust on fire insurance proceeds in order to carry out the purpose of a support agreement between husband and wife); see Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1159 n.5 (2d Cir. 1994) (finding resulting trust where wife purchased

{B0529920; 2}

certificate of deposit with her own funds and placed in her husband's name with an intention by both parties that she retain ownership interest); see also 106 N.Y. Jur. 2d Trusts § 142 (2006).

If the Estate were required to pay the Plaintiff's claims, Bogorad and the Estate would have made significant financial contributions to the Apartment without receipt of any title interest.  This notion runs counter to equitable principles and the basic contract concept of consideration.  As discussed above, if the Plaintiff is successful on her claims, then equity dictates the imposition of a resulting trust in order to prevent a miscarriage of justice.  See, supra, Part I(A).

Alternatively, as discussed above, there is a genuine issue of material fact as to whether Bogorad intended to maintain an ownership interest in the Apartment.  See, supra, Part I(B)(2). Accordingly, this Court should deny Plaintiff's motion for partial summary judgment.

## CONCLUSION

If this Court determines that Bogorad's significant contributions towards the purchase and maintenance of the Apartment were in furtherance of an oral agreement between Bogorad and Plaintiff that is actually supported by consideration, then this Court should impose a constructive or resulting trust in the cooperative shares and proprietary lease for the Apartment in an amount proportionate to the aggregate contribution by Bogorad and the Estate.

Respectfully submitted,

KIKI BOGORAD-GROSS and
LEONARD P. BOGORAD, as
they are the Executors of the Will
of Lawrence Bogorad,
By their attorneys,


June 30, 2006                          /s/  Lisa M. Hodes
                                       Larry L. Varn (BBO # 508130)
                                       Lisa M. Hodes (BBO # 660444)
                                       SULLIVAN & WORCESTER LLP
                                       One Post Office Square
                                       Boston, Massachusetts 02109
                                       (617) 338-2800
                                       lvarn@sandw.com
                                       lhodes@sandw.com

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of
Electronic Filing (NEF) and paper copies will be sent to those indicated as non
registered participants on June 30, 2006.

/s/  Lisa M. Hodes

- 17 -

{B0529920; 2}