UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KATHLEEN P. MULLINIX,        ) | |
|                              ) | |
|   Plaintiff,                 ) | |
|                              ) | Civil Action |
|   v.                         ) | No. 04-12684-WGY |
|                              ) | |
| KIKI BOGORAD-GROSS and       ) | |
| LEONARD P. BOGORAD, as They  ) | |
| Are Executors of the Will of ) | |
| Lawrence Bogorad,            ) | |
|                              ) | |
|   Defendants.                ) | |

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF DISPUTED FACTS SUBMITTED IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendants Kiki Bogorad-Gross ("K. Bogorad-Gross") and Leonard Bogorad ("L. Bogorad"), as Executors of the Will of Lawrence Bogorad (collectively, "Defendants"), by their attorneys, Sullivan & Worcester LLP, hereby respond to Plaintiff's Statement of Material Facts in Support of Motion for Partial Summary Judgment.

1. Lawrence Bogorad and Kathleen P. Mullinix (collectively, the "couple") had a long-term romantic involvement and publicly revealed their romantic relationship sometime in early 1998. *See* Deposition of Kiki Bogorad-Gross ("Bogorad-Gross Dep.") at 64.

**Response:** Disputed in part. Defendants lack sufficient knowledge to admit or deny whether Bogorad and Plaintiff had a long-term romantic involvement.

2. The couple, Mr. Bogorad and Ms. Mullinix, traveled together and attended family functions together. *See* Deposition of Leonard P. Bogorad ("Bogorad Dep.") at 79; Bogorad-Gross Dep. at 92-92.

{B0529995; 2}

- 2 -

**Response:** Undisputed insofar as Bogorad and Plaintiff traveled together and attended family functions together after they publicly revealed their relationship in early 1998.

3. Mr. Bogorad remained married to his wife Rosalyn Bogorad throughout his relationship with Ms. Mullinix. Rosalyn Bogorad became incapacitated and incompetent because of Alzheimer's Disease in the 1990's. Bogorad-Gross Dep. at 20-24.

**Response:** Undisputed.

4. After March 1998, the couple began living together, both at Mr. Bogorad's home at 2 White Pine Lane, Lexington, Massachusetts (hereinafter, the "Lexington home"), and in Ms. Mullinix's apartment at 975 Park Avenue, New York City. Complaint (the "Compl"), attached hereto as Exhibit 1, ¶ 9; Affidavit of Kathleen P. Mullinix ("Mullinix Aff."), filed herewith, ¶ 3.

**Response:** Disputed. From July 1999 until his death, Bogorad spent the week days at his Lexington Home and then visited the Plaintiff in New York City most weekends. Depo. Tr. Mullinix, 41:15-20, 42:8-10; Depo. Tr. L. Bogorad, 72:13-73:11.

5. The couple lived as though husband and wife. *Id.*

**Response:** Disputed in part. Bogorad and Plaintiff never married. It is undisputed that Bogorad and Plaintiff were romantically involved from the late 1990's until his death on December 28, 2003. Over the course of their relationship, Bogorad displayed his characteristic generosity by showering the Plaintiff with dinners, gifts and vacations. Depo. Tr. Mullinix, 44:20-45:19, 58:17-21, 59:21-22; Depo. Tr. L. Bogorad, 78:8-18; 79:13-16; Depo. Tr. K. Bogorad-Gross, 113:8-19. Moreover, the Defendants maintained a friendly relationship with the Plaintiff. Depo. Tr. K. Bogorad-Gross, 91:22-92:2; Depo. Tr. L. Bogorad, 36:17-37:2. However, the Plaintiff and Bogorad did not live together as though they were husband and wife because they only saw each other on weekends and Bogorad remained committed to visiting his wife, Rosalyn Bogorad, every

week until his death, he remained married to her, and he never took any steps to terminate the marriage. Depo. Tr. Mullinix, 41:15-20, 42:8-10; Depo. Tr. L. Bogorad, 22:8-10, 72:13-73:11; Depo. Tr. K. Bogorad-Gross, 23:12-13.

6.  After Ms. Mullinix and her husband separated, Ms. Mullinix and her husband sold the apartment at 975 Park Avenue, and Ms. Mullinix purchased a cooperative apartment located at 170 East 87th Street in New York City (hereinafter, the "East 87th Street apartment"). Compl. ¶ 10; Mullinix Aff. ¶ 4.

**Response:** Undisputed.

7.  On or about July 1, 1999, the couple moved in together to the East 87th Street apartment. Compl. ¶ 11.

**Response:** Disputed. From July 1999 until his death, Bogorad spent the week days at his Lexington Home and then visited the Plaintiff in New York City most weekends. Depo. Tr. Mullinix, 41:15-20, 42:8-10; Depo. Tr. L. Bogorad, 72:13-73:11.

8.  Mr. Bogorad paid the monthly maintenance fees on the East 87th Street apartment during the entire time Ms. Mullinix owned it by reimbursing Ms. Mullinix for those payments. See Compl. ¶ 12; Mullinix Aff. ¶ 4.

**Response:** Disputed in part. There is no evidence indicating that Bogorad paid the monthly maintenance fees on the East 87th Street Apartment the entire time Plaintiff owned it.

9.  Mr. Bogorad paid for renovations to the East 87th Street apartment, which included refinishing the floors and some electrical work. Mullinix Aff. ¶ 4. Mr. Bogorad never had an ownership interest in the East 87th Street apartment. *Id.*

**Response:** Disputed in part. There is no evidence indicating that Bogorad paid for the renovations to the East 87th Street Apartment.

10.  In or around the fall of 2002, the couple began discussing Ms. Mullinix selling the East 87th Street apartment and purchasing another apartment closer to Fifth Avenue in New York City. Id. ¶ 13; Mullinix Aff. ¶¶ 5-6.

- 3 -

      **Response:** Disputed in part. Plaintiff received an unsolicited offer to purchase the 87th Street Apartment from a neighbor. Complaint ¶ 13; Mullinix 66:19-67:14. In determining whether to sell the 87th Street Apartment, the Plaintiff consulted her son Brendan Mullinix, the Vice President of Lexington Corporate Properties Trust, a real estate investment trust. Depo. Tr. Mullinix, 19:8-21; Depo. Tr. L. Bogorad, 104:6-10, 142:4-143:20; Depo. Tr. K. Bogorad-Gross, 168:16-20. Brendan Mullinix recommended that the Plaintiff sell her 87th Street Apartment and buy an apartment on 5th Avenue. Depo. Tr. L. Bogorad, 104:6-10, 142:4-143:20. According to Brendan Mullinix, an apartment on 5th Avenue would appreciate faster than an apartment on 87th Street. Id. The Plaintiff also conferred with Bogorad and Judith Durham, her real estate agent. Depo. Tr. Mullinix, 68:13-69:7, 70:13-71:8, 74:6-13, 75:9-12, 77:2-78:12. Both recommended that she sell the 87th Street Apartment. Id.

      11.    In or around November 2002, Ms. Mullinix looked at an apartment located at 1050 5th Avenue in New York City (hereinafter, the "Apartment") which was for sale. Compl. ¶ 14; Mullinix Aff. ¶ 7.

      **Response:** Undisputed.

      12.    Mr. Bogorad wanted to look at the Apartment with Ms. Mullinix, but Ms. Mullinix declined because she felt the Apartment was too expensive, and it needed extensive renovations. Ms. Mullinix was not interested in pursuing purchasing the Apartment because it was too expensive, Mr. Bogorad told Ms. Mullinix that he would pay for the cost of the renovations. Compl. ¶ 14; Ms. Mullinix's Response to Defendants' First Set of Interrogatories to Plaintiff, Response No. 3 ("Int. Res. No. 3"), attached hereto as Exhibit 2; Mullinix Aff. ¶¶ 7-8.

      **Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad wanted to look at the Apartment with Plaintiff and whether Bogorad told Plaintiff that he would pay for the cost of the renovations. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and

- 4 -

Plaintiff. Further disputed insofar as Plaintiff implies that Bogorad's desire to pay for the renovations was a legal offer or promise that she accepted or relied upon.

13.     Mr. Bogorad advised Ms. Mullinix to separate her thinking about purchasing the Apartment from the cost of the renovations because he would pay for the renovations and would continue to pay for the maintenance fees as he had done for the East 87th Street apartment. Int. Res. No. 3; Mullinix Aff. ¶¶ 8-10.

**Response:** Disputed. Defendants have insufficient knowledge to admit or deny whether Bogorad told Plaintiff to separate her thinking about purchasing the Apartment from the cost of the renovations because he would pay for the renovations and would continue to pay for the maintenance fees as he had done for the East 87th Street apartment. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff. Further disputed insofar as Plaintiff implies that Bogorad's desire to pay for her renovations and monthly maintenance fees was a legal offer or promise that she accepted or relied upon.

14.     Mr. Bogorad told Ms. Mullinix that if she were to use all of the proceeds from the sale of the East 87th Street Apartment, she could on her own fund the 50% down-payment (typically required by co-operative buildings) if she purchased an apartment in the range of $1 million to $1.5 million. Mullinix Aff. ¶ 10.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad explained to Plaintiff that she could use the proceeds from the sale of the East 87th Street Apartment to fund the 50% down-payment for an apartment in the range of $1 million to $1.5 million. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.

15.     Mr. Bogorad said that if Ms. Mullinix purchased the Apartment and paid for the mortgage, he would pay for the renovations, monthly maintenance fees (as he had for the East 87th Street apartment), one-half the storage costs and one-half the tax consequences of selling the East 87th Street apartment. Compl. ¶¶ 13, 17-18; Mullinix

Aff. ¶¶ 10-11.

**Response:** Defendants lack sufficient knowledge to admit or deny whether Bogorad said that if Plaintiff purchased the Apartment and paid for the mortgage, he would pay for the renovations, monthly maintenance fees (as he had for the East 87th Street apartment), one-half the storage costs and one-half the tax consequences of selling the East 87th Street apartment. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.

Disputed insofar as Plaintiff implies that Bogorad's desire to help Plaintiff pay for the renovations, monthly maintenance fees, one-half the storage costs and one-half the tax consequences of selling the East 87th Street Apartment was a legal offer or promise that she accepted or relied upon.

16. In or around February 2003, Ms. Mullinix entered into a contract for the sale of the East 87th Street apartment. Compl. ¶.18; Int. Res. No. 3.

**Response:** Undisputed.

17. Ms. Mullinix and the purchasers of the East 87th. Street apartment closed on the sale on or around March 31, 2003. Compl. ¶ 19; Int. Res. No. 3.

**Response:** Undisputed.

18. Mr. Bogorad offered to pay the storage charges of the couple's belongings and Ms. Mullinix suggested that the couple split them evenly. Mullinix Aff. ¶ 10. Mr. Bogorad reiterated his promise to pay for half of the storage charges and tax consequences after the sale. *Id.* 11.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad told Plaintiff he wanted to pay the storage charges and Plaintiff suggested that they split them evenly and whether Bogorad told Plaintiff he wanted to pay half of the storage charges and tax consequences after the sale. Disputed insofar as

- 6 -

{B0529995; 2}

Plaintiff implies that Bogorad's desire to help Plaintiff pay for the storage costs and the tax consequences of the sale of the East 87th Street Apartment was a legal offer or promise that she accepted or relied upon.

      19.    On or about February 7, 2003, after having learned that the price of the Apartment had been reduced, the couple visited the Apartment together. Mullinix Aff. ¶ 16.

      **Response:** Disputed in part. Defendants lack sufficient knowledge to admit or deny whether Bogorad visited the Apartment with the Plaintiff on February 7, 2003.

      20.    The couple never discussed the possibility that Mr. Bogorad contribute any funds to the *purchase* of the Apartment. Mr. Bogorad told Ms. Mullinix that he wanted her to own the Apartment outright and advised her that all payments related to the Apartment should be made by her, and that he would reimburse her for certain of those payments, so as to ensure that there would be no question as to who owned the Apartment. Mullinix Aff. ¶ 12.

      **Response:** Disputed. Plaintiff's statement that Bogorad and Plaintiff never discussed the possibility that Bogorad contribute any funds to the purchase of the Apartment is controverted by Plaintiff's own claim that without Bogorad's alleged promise to pay for the renovations and monthly maintenance fees, she would not have purchased the Apartment. Defendants lack sufficient knowledge to admit or deny whether Bogorad told Plaintiff he wanted her to own the Apartment outright, and that all payments related to the Apartment should be made by her, and that he would reimburse her for certain of those payments to ensure that there would be no question as to who owned the Apartment. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.

      21.    Mr. Bogorad explicitly stated that Ms. Mullinix would purchase the Apartment and pay the mortgage and he would only pay for the renovations, maintenance fees, storage costs and tax consequences. *Id.*

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad told Plaintiff that she would purchase the Apartment and pay the mortgage and he would only pay for the renovations, maintenance fees, storage costs and tax consequences. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff. It is also disputed insofar as Plaintiff implies that Bogorad's desire to pay for the renovations, maintenance fees, one half the storage costs and one half the tax consequences of the sale of the East 87th Street Apartment were legal offers or promises that Plaintiff accepted or relied upon.

22. Ms. Mullinix and Mr. Bogorad met with an attorney to prepare a contract for the purchase of the Apartment. Int. Res. No. 3.

**Response:** Disputed in part. Defendants lack sufficient knowledge to admit or deny whether Bogorad met with an attorney with Plaintiff to prepare a contract for the purchase of the Apartment.

23. Ms. Mullinix's attorney called the seller's attorney, who indicated that Ms. Mullinix should assemble all of her financial information and meet him in his office a few days later, so that he could meet both Ms. Mullinix and a competing bidder individually and make a recommendation to his client. *Id.*

**Response:** Undisputed.

24. On or about February 10, Ms. Mullinix met with the seller's attorney. That same day, the seller's attorney called Ms. Mullinix's lawyer to indicate that Ms. Mullinix's offer had been accepted. *Id.*

**Response:** Undisputed.

25. Mr. Bogorad did not provide *any* funds toward the purchase price of the Apartment and his financial information was never seen or considered by the seller or the seller's attorney when accepting Ms. Mullinix's *offer*. Mullinix Aff. ¶ 13.

**Response:** Undisputed.

26. Ms. Mullinix executed the Contract for Sale for the Apartment on or about

February 7, 2003, and closed on the purchase on or about June 10, 2003. Compl. ¶¶ 18, 22.

**Response:** Undisputed.

27. Ms. Mullinix's application to the Apartment's cooperative board was prepared with only her financial information. Mullinix Aff. ¶ 13.

**Response:** Undisputed.

28. Ms. Mullinix purchased the Apartment entirely with her own funds, and Ms. Mullinix took out a mortgage on the Apartment solely in her name. Mullinix Aff. ¶ 13.

**Response:** Disputed insofar as Bogorad contributed to Plaintiff's funds by reimbursing her for certain Apartment-related expenses before he died. It is undisputed that Plaintiff obtained a mortgage on the Apartment solely in her name.

29. The Apartment, from the closing date, has always been in Ms. Mullinix's name. Mullinix Aff. 15.

**Response:** Undisputed.

30. Mr. Bogorad never owned an interest in the Apartment, nor did Mr. Bogorad want to or intend to own such an interest. *Id* It was never in his name or transferred to or from his name to or from Ms. Mullinix.

**Response:** Disputed in part. Defendants lack sufficient knowledge to admit or deny whether Bogorad wanted to or intended to own an interest in the Apartment. It is undisputed that the Apartment was never in his name or transferred to or from his name to or from Plaintiff.

31. The couple never intended that Mr. Bogorad have an ownership interest in the Apartment; to the contrary, Mr. Bogorad explicitly wanted Ms. Mullinix to own the Apartment entirely. *Id.* Mr. Bogorad did not commit to pay for the renovations, maintenance fees, storage costs and tax consequences based upon any agreement that he would have an ownership interest in the Apartment. There was never any agreement that Mr. Bogorad would have any interest whatsoever in the Apartment. Mr. Bogorad never requested and Ms. Mullinix never promised that she would convey the Apartment or any

- 9 -

partial or total interest in the Apartment to him at any point in time. Ms. Mullinix never promised to hold the Apartment for Mr. Bogorad's benefit or to convey the Apartment to a third party for his benefit. *Id.*

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether (1) Plaintiff and Bogorad intended to have an ownership interest in the Apartment; (2) Bogorad wanted Plaintiff to own the Apartment entirely; (3) there was an agreement that Bogorad would have an interest in the Apartment; (4) Bogorad requested and Plaintiff promised Bogorad an ownership interest in the Apartment or to hold the Apartment for Bogorad's benefit.

32. When speaking about the Apartment to his family, Mr. Bogorad referred to Ms. Mullinix as purchasing the Apartment, never including himself as buying the Apartment with her. Bogorad-Gross Dep at 148, 169-70.

**Response:** Undisputed.

33. The couple planned for renovations to the Apartment together, meeting with architects, discussing the plans and shopping for ideas. *Id;* Compl. ¶¶ 23-24, 27.

**Response:** Undisputed insofar as Bogorad participated in certain meetings and accompanied Plaintiff on certain shopping trips.

34. Prior to the completion of the renovation project to the Apartment, Mr. Bogorad passed away unexpectedly while on vacation with Ms. Mullinix, the Defendants and the Defendants' children. Compl. ¶ 30.

**Response:** Undisputed.

35. Prior to Mr. Bogorad's death, he had negotiated and confirmed Ms. Mullinix's contract with the architect Heather Aman. Mullinix Alf. ¶ 18.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad negotiated and confirmed Plaintiff's contract with the architect Heather Aman. The evidence demonstrates that Bogorad's name does not appear anywhere on

- 10 -

either the engagement letter or invoices from Heather Aman to Plaintiff, nor is there any evidence of any conversations between Bogorad and Ms. Aman. Mullinix Dep. Exh. 8-10 (Hodes Aff. Exh. 5-7).

36.     The couple had reviewed and approved the architectural design plans from Ms. Aman just days prior to leaving on their vacation, and had authorized Ms. Aman to send those plans out to general contractors for bidding. *Id.;* Compl. ¶ 29.

**Response:**  Disputed in part  Defendants lack sufficient knowledge to admit or deny whether Bogorad reviewed and approved the architectural design plans from Heather Aman days before leaving on their vacation and whether Bogorad authorized Heather Aman to send those plans out to general contractors for bidding.

37.     Mr. Bogorad clearly and unambiguously told Ms. Mullinix that he would pay for the renovation costs. This commitment was made prior to Ms. Mullinix selling the East 87th Street apartment and purchasing the Apartment. Mullinix ¶ 19.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny whether Bogorad clearly and unambiguously told Plaintiff that he would pay for the renovation costs and when this alleged commitment was made. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.  Disputed insofar as Plaintiff implies that Bogorad's desire to help the Plaintiff fund the purchase costs of the Apartment was a legal offer or promise that Plaintiff accepted or relied upon.

                                                    Respectfully submitted,

                                                    KIKI BOGORAD-GROSS and
LEONARD P. BOGORAD, as
they are the Executors of the Will
of Lawrence Bogorad,
By their attorneys,

June 30, 2006                                   /s/  Lisa M. Hodes
                                                   Larry L. Varn (BBO # 508130)
Lisa M. Hodes (BBO # 660444)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
lvarn@sandw.com
lhodes@sandw.com

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 30, 2006.

                                   /s/  Lisa M. Hodes