UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN P. MULLINIX,<br><br>      Plaintiff,<br><br>      v.<br><br>KIKI BOGORAD-GROSS and<br>LEONARD P. BOGORAD, as They<br>Are Executors of the Will of<br>Lawrence Bogorad,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action<br>)      No. 04-12684-WGY |

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF DISPUTED FACTS
SUBMITTED IN OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR
<u>SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 56.1, Defendants Kiki Bogorad-Gross ("<u>K. Bogorad-Gross</u>") and Leonard Bogorad ("<u>L. Bogorad</u>"), as Executors of the Will of Lawrence Bogorad (collectively, "<u>Defendants</u>"), by their attorneys, Sullivan & Worcester LLP, hereby respond to Plaintiff's Statement of Additional Undisputed Material Facts in support of Plaintiff's cross motion for summary judgment.

1.     Lawrence Bogorad and Kathleen P. Mullinix (collectively, the "couple") had a long-term romantic involvement and publicly revealed their romantic relationship sometime in early 1998. *See* Deposition of Kiki Bogorad-Gross ("Bogorad-Gross Dep.") at 64; Complaint ("Compl.") ¶ 9.

**Response:**  Disputed in part.  Defendants lack sufficient knowledge to admit or deny whether Bogorad and Plaintiff had a long-term romantic involvement.

2.     As of March 1998, the couple began living together, both at Mr. Bogorad's home at 2 White Pine Lane, Lexington, Massachusetts (hereinafter, the "Lexington home"), and in Ms. Mullinix's apartment at 975 Park Avenue, New York City. Compl. ¶ 9; Affidavit of Kathleen P. Mullinix, dated June 5, 2006 ("Mullinix Aff. #1") ¶ 3.

**Response:**  Disputed.  From July 1999 until his death, Bogorad spent the week days at his Lexington Home and then visited the Plaintiff in New York City most weekends.  Depo. Tr. Mullinix, 41:15-20, 42:8-10; Depo. Tr. L. Bogorad, 72:13-73:11.

3.      As of March 1998, the couple lived as though husband and wife. Mullinix Aff. #1 ¶ 3; Mullinix Dep. 60:11-13.

**Response:**  Disputed in part.  Bogorad and Plaintiff never married.  It is undisputed that Bogorad and Plaintiff were romantically involved from the late 1990's until his death on December 28, 2003.  Over the course of their relationship, Bogorad displayed his characteristic generosity by showering the Plaintiff with dinners, gifts and vacations.  Depo. Tr. Mullinix, 44:20-45:19, 58:17-21, 59:21-22; Depo. Tr. L. Bogorad, 78:8-18; 79:13-16; Depo. Tr. K. Bogorad-Gross, 113:8-19.  Moreover, the Defendants maintained a friendly relationship with the Plaintiff.  Depo. Tr. K. Bogorad-Gross, 91:22-92:2; Depo. Tr. L. Bogorad, 36:17-37:2.  However, the Plaintiff and Bogorad did not live together as though they were husband and wife because they only saw each other on weekends and Bogorad remained committed to visiting his wife, Rosalyn Bogorad, every week until his death, he remained married to her, and he never took any steps to terminate the marriage.  Depo. Tr. Mullinix, 41:15-20, 42:8-10; Depo. Tr. L. Bogorad, 22:8-10, 72:13-73:11; Depo. Tr. K. Bogorad-Gross, 23:12-13.

4.      As of March 1998, the couple traveled together and attended family functions together. Deposition of Leonard P. Bogorad ("Bogorad Dep.") at 79; Bogorad-Gross Dep. at 92:14.

**Response:**  Undisputed.

5.      Mr. Bogorad remained married to his wife, Rosalyn Bogorad, during his entire relationship with Ms. Mullinix. Bogorad-Gross Dep. at 20-24. In the 1990s Rosalyn Bogorad became incapacitated and incompetent because of Alzheimer's Disease. Bogorad-Gross Dep. at 20-24. In or around 1998, Mrs. Bogorad became institutionalized where she remains today. Defendants' Motion for Summary Judgment at 3 n.2.

- 2 -

**Response:** Undisputed.

6.    On July 1, 1999, Ms. Mullinix purchased and moved into a condominium apartment on East 87th Street in New York City (the "Condominium"). Compl. ¶¶ 10, 11; Mullinix Aff. #1 ¶ 4.

**Response:** Undisputed.

7.    Mr. Bogorad lived with Ms. Mullinix in the Condominium three to four days a week, and spent the remainder of the week in his Lexington home. Mullinix Dep. 41:19-20; 42:8-9; Compl. ¶ 11.

**Response:** Disputed. From July 1999 until his death, Bogorad spent the week days at his Lexington Home and then visited the Plaintiff in New York City most weekends. Depo. Tr. Mullinix, 41:15-20, 42:8-10; Depo. Tr. L. Bogorad, 72:13-73:11.

8.    Mr. Bogorad paid the monthly maintenance fees on the Condominium during the entire time Ms. Mullinix owned it by reimbursing Ms. Mullinix for those payments. Compl. ¶ 12; Mullinix Aff. #1 ¶ 4.

**Response:** Disputed in part. There is no evidence indicating that Bogorad paid the monthly maintenance fees on the East 87th Street Apartment the entire time Plaintiff owned it.

9.    Mr. Bogorad paid to refinish the floors of the Condominium, and also paid for electrical work done at the Condominium. Mullinix Aff. ¶ 4.

**Response:** Disputed in part. There is no evidence indicating that Bogorad paid to refinish the floors and for the electrical work of the 87th Street Apartment.

10.    Mr. Bogorad never had an ownership interest in the Condominium. Mullinix Aff. #1 ¶4.

**Response:** Undisputed.

11.    In August or September of 2002, Jeffrey Ascherman, M.D. approached Ms. Mullinix about purchasing the Condominium from her. Mullinix Dep. 67:1-14. Ms. Mullinix told him that the Condominium was not for sale. *Id.* at 67:13-17; Mullinix Aff. #2 ¶ 5.

**Response:** Undisputed.

12.    Mr. Bogorad told Ms. Mullinix that he wanted her to sell the Condominium. Mullinix Dep. 71:4-5; 72:17-19.73:15-18; Mullinix Aff. #2 ¶¶ 6, 17-20.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny whether Bogorad told Plaintiff that he wanted her to sell the 87th Street Apartment. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.

13.    Mr. Bogorad encouraged Ms. Mullinix to inquire further about selling the Condominium. Mullinix Aff. #2 ¶¶ 8, 17-19. He explained that because he was getting older and had experienced health problems, he was concerned with Ms. Mullinix's future. Mullinix Aff. #2 ¶ 7. Mr. Bogorad wanted to make sure she had a safe and comfortable place to live in the event something happened to him. Mr. Bogorad expressed his desire for Ms. Mullinix to live between Park Avenue and Fifth Avenue. *Id.*

**Response:** Disputed.  Defendants lack sufficient knowledge to admit or deny whether Bogorad encouraged Plaintiff to inquire further about selling the 87th Street Apartment, whether Bogorad expressed concerned about Plaintiff's future, whether Bogorad wanted to make sure she had a safe and comfortable place to live in the event something happened to him, or that Bogorad desired for Plaintiff to live between Park Avenue and Fifth Avenue.  Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.  Disputed that the 87th Street Apartment was located in a dangerous neighborhood and that the location of the Apartment is in a "safer area."

14.    Ms. Mullinix called the Aschermans and said she would like to discuss possibly selling the Condominium to them. Mullinix Dep. 73:5-8. Dr. Ascherman and his wife visited the Condominium several times between October 2002 and February 2003. *Id.* at 67:12-14; 70:5-9.

**Response:**  Undisputed.

15.    Mr. Bogorad spoke to Ms. Mullinix during the time period between October 2002 and February 2003 about his desire for her to move between Park Avenue and Fifth Avenue. Mullinix Dep. 134:5-11. Mr. Bogorad said that Park Avenue and Fifth Avenue was a safe area and that he wanted to be assured that Ms. Mullinix was in a safe

- 4 -

place in case anything happened to him. *Id* ; Mullinix Aff. #2 ¶ 7.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny

whether Bogorad spoke to Ms. Mullinix during the time period between October 2002 and

February 2003 about his desire for her to move between Park Avenue and Fifth Avenue or

whether Bogorad said that Park Avenue and Fifth Avenue was a safe area and that he

wanted to be assured that Plaintiff was in a safe place in case anything happened to him.

Defendants lack knowledge or information as to the nature of private conversations

between Bogorad and Plaintiff. Disputed that the 87th Street Apartment was located in a

dangerous neighborhood and that the location of the Apartment is in a "safer area."

16.     Mr. Bogorad brought up the possibility of Ms. Mullinix selling the
Condominium and moving to a safer area with Brendan Mullinix, Ms. Mullinix's son, to
get his opinion. Mullinix Dep. 68:21-23; Mullinix Aff. #2 ¶ 8.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny

whether Bogorad brought up the possibility of Plaintiff selling the 87th Street Apartment

and moving to a safer area with Brendan Mullinix, Ms. Mullinix's son, to get his opinion.

Disputed that the 87th Street Apartment was located in a dangerous neighborhood and that

the location of the Apartment is in a "safer area."

17.     Ms. Mullinix also spoke with Judith Durham-Smith, the realtor who
assisted the couple when Ms. Mullinix purchased the Condominium, to get her opinion
concerning the potential sale of the Condominium. Mullinix Aff. #2 ¶ 8.

**Response:** Undisputed.

18.     Thereafter, the couple spoke with Brendan and Ms. Durham-Smith, and
both opined that an apartment between Park Avenue and Fifth Avenue would be a much
better location for Ms. Mullinix. Mullinix Aff. #2 ¶ 8.

**Response:** Disputed in part. Defendants lack sufficient knowledge to admit or

deny whether Bogorad spoke with Brendan Mullinix and Ms. Durham-Smith and whether

they opined to Bogorad that an apartment between Park Avenue and Fifth Avenue would

- 5 -

be a much better location for Plaintiff.  Undisputed insofar as Brendan Mullinix and Ms.

Durham-Smith opined to Plaintiff that an apartment between Park Avenue and Fifth

Avenue would be a much better location for her.

19.     Between Thanksgiving and Christmas 2002, Ms. Mullinix met with the Aschermans several times to negotiate a price for the Condominium. Mullinix Dep. 71:6-8; 76:14-15; Mullinix Aff. #2 If 17. Mr. Bogorad encouraged Ms. Mullinix to engage in discussions with the Aschermans regarding price. Mullinix Dep. 69:4-7; Mullinix Aff. #2 If 17.

**Response:**  Undisputed that between Thanksgiving and Christmas 2002, Plaintiff

met with the Aschermans several times to negotiate a price for the Condominium.  When

the Aschermans asked Plaintiff for a selling price, Plaintiff first spoke to her son, Brendan

Mullinix, who recommended that she ask $1.2 million.  Mullinix 70:3 – 23.  In addition to

Bogorad, Plaintiff also spoke to her son throughout the negotiation of the sale of the 87th

Street Apartment.  Mullinix 74:6 – 75:12.  Defendants lack sufficient knowledge to admit

or deny whether Bogorad encouraged Plaintiff to engage in discussions with the

Aschermans regarding price or as to the nature of private conversations between Bogorad

and Plaintiff.

20.     When Ms. Mullinix could not reach an agreement with the Aschermans concerning a price for the Condominium, she told Mr. Bogorad that she did not want to go forward with the negotiations. Mullinix Dep. 73:1-6; Mullinix Aff #2 ¶ 18. Ms. Mullinix broke off discussions with the Aschermans regarding the possible sale of the Condominium. Mullinix Aff. #2¶18.

**Response:**  Undisputed.

21.     Shortly after breaking off discussions with the Aschermans, Mr. Bogorad told Ms. Mullinix several times during a vacation that he thought she should sell the Condominium and move closer to Fifth Avenue. Mullinix Dep. 73:15-18; Mullinix Aff. #2 ¶ 19.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny

whether Bogorad told Plaintiff several times during a vacation that he thought she should

{B0532630; 1}

sell the Condominium and move closer to Fifth Avenue. Defendants lack knowledge or

information as to the nature of private conversations between Bogorad and Plaintiff.

22.    When the couple returned from their trip in January 2003, the Aschermans and Ms. Mullinix resumed discussions about the sale of the Condominium. Mullinix Dep. 73:15-18; Mullinix Aff. #2 ¶ 20.

**Response:**  Undisputed.

23.    In or around February 2003, Ms. Mullinix entered into a contract for the sale of the Condominium. Compl. ¶ 18; Mullinix Aff. #2 ¶ 21.

**Response:**  Undisputed.

24.    Ms. Mullinix and the Aschermans closed on the sale on or around March 31, 2003. Compl. ¶ 19; Mullinix Aff. #2 ¶ 21.

**Response:**  Undisputed.

25.    Under an agreement with the Aschermans, the couple continued to occupy the Condominium until April 8, 2003. Mullinix Aff. #2 ¶ 23.

**Response:**  Disputed insofar as Plaintiff implies that Bogorad lived with Plaintiff

at the 87th Street Apartment.  From July 1999 until his death, Bogorad spent the week

days at his Lexington Home and visited the Plaintiff in New York City most weekends.

Depo. Tr. Mullinix, 41:15-20, 42:8-10; Depo. Tr. L. Bogorad, 72:13-73:11.

26.    On April 7, 2003 the furniture in the Condominium was moved to a storage facility and the couple returned to the Lexington Home. Compl. ¶ 20-21; Mullinix Aff. #2 ¶ 23. Mr. Bogorad stopped paying the monthly maintenance fees when Ms. Mullinix stopped living there. Mullinix Aff. #2 ¶ 24.

**Response:**  Disputed insofar as Plaintiff implies that Bogorad and the Plaintiff

lived together either at the 87th Street Apartment or Bogorad's Lexington Home.  From

July 1999 until his death, Bogorad spent the week days at his Lexington Home and visited

the Plaintiff in New York City most weekends.  Depo. Tr. Mullinix, 41:15-20, 42:8-10;

Depo. Tr. L. Bogorad, 72:13-73:11.

27.    Mr. Bogorad offered to pay the storage charges and Ms. Mullinix

{B0532630; 1}

suggested that the couple split them evenly. Mullinix Aff. #1 ¶ 10. Once the Condominium was sold and the couple made arrangements to store their belongings, Mr. Bogorad reiterated his offer to pay for half of the storage charges and Ms. Mullinix accepted his offer. *Id.* ¶ 11; Mullinix Aff. #2 ¶ 25.

      **Response:**  Disputed in so far as Plaintiff implies Bogorad's desire to help

Plaintiff with some of the expenses of moving was a legal offer or promise that Plaintiff

accepted or relied upon.  Defendants lack knowledge or information as to the nature of

private conversations between Bogorad and Plaintiff.  Further disputed insofar as Plaintiff

implies that Bogorad and the Plaintiff lived together at the 87th Street Apartment.

      28.    At or about the same time as Ms. Mullinix's discussions with Mr. Bogorad and the Aschermans regarding the sale of the Condominium, Ms. Mullinix and Ms. Durham began looking at apartments on the market. Mullinix Dep. 76:13-17; 79:1-2; Mullinix Aff. #2 ¶¶ 10-11.

      **Response:**  Disputed in part.  Defendants lack sufficient knowledge to admit or

deny whether the alleged conversations with Bogorad took place at all and, if they did,

when they took place.

      29.    They looked at several apartments, including an apartment at 1050 Fifth Avenue that was different from the one Ms. Mullinix ultimately purchased. Mullinix Dep. 76:20-21; 82:2-13; Mullinix Aff. #2 ¶ 10; Affidavit of Judith Durham-Smith, dated June 18, 2006 ("Durham-Smith Aff ") ¶ 4.

      **Response:**  Undisputed.

      30.    Brendan Mullinix saw the listing of the apartment she eventually purchased. Ms. Durham and Ms. Mullinix agreed that it was out of Ms. Mullinix's price range and Ms. Mullinix opted not to visit it. Mullinix Aff. #2 ¶ 11; Durham-Smith Aff. ¶ 4.

      **Response:**  Undisputed.  Brendan Mullinix saw the listing of the Apartment on the

internet and told Plaintiff that she should go look at it.  Mullinix 90:19 – 91:8.

      31.    On the day before Thanksgiving 2002, Ms. Mullinix first saw the apartment located at 1050 Fifth Avenue in New York City that she ultimately would buy (hereinafter, the "Apartment"). Mullinix Dep. 90:12-14. Mullinix Aff. #2 ¶ 12; Durham-Smith Aff ¶ 4. Ms. Mullinix went to view the Apartment to compare it to the other apartments in the same building. Mullinix Aff. #2 ¶ 12.

**Response:** Undisputed.

32.    The Apartment was a wreck. Mullinix Dep. 93:5. The floor, lighting, air conditioning and heating systems, and ceilings were all in a state of disrepair. Mullinix Dep. 5-17. The Apartment needed extensive renovations to be livable. Durham-Smith Aff ¶ 6. By contract, the Apartment's windows had to be replaced. Mullinix Dep. 119:21-22.

**Response:** Disputed that their Apartment was a "wreck" as it was occupied at the time; however, undisputed that the Apartment needed certain renovations and would be improved by certain others..

33.    After her first visit to the Apartment, Ms. Mullinix determined she was not interested in purchasing it. Mullinix Dep. 111:3-10; Mullinix Aff. #2 ¶ 12.

**Response:** Undisputed.

34.    Mr. Bogorad told Ms. Mullinix that he wanted to see the Apartment, but Ms. Mullinix declined because she believed the Apartment was too expensive. Mullinix Dep. 7-10; Mullinix Aff. #2 ¶ 13.

**Response:** Disputed.  Defendants lack sufficient knowledge to admit or deny whether Bogorad told Plaintiff that he wanted to see the Apartment and that she declined because she believed the Apartment was too expensive.  Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.

35.    Mr. Bogorad told Ms. Mullinix that she should seriously consider the Apartment because it was in a great location. Mullinix Dep. 118:3-5; Mullinix Aff. #2 ¶ 16.

**Response:** Disputed.  Defendants lack sufficient knowledge to admit or deny whether Bogorad told Plaintiff that she should seriously consider the Apartment because it was in a great location.  Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.

36.    Mr. Bogorad explained to Ms. Mullinix that she could use the proceeds from the sale of the Condominium to fund the 50% down-payment for an apartment in the range of $1 million to $1.5 million. Mullinix Aff. #1 ¶ 10; Mullinix Aff. #2 ¶ 15. Mr. Bogorad assured Ms. Mullinix that he would pay for the cost of renovations and the

- 9 -

monthly maintenance fee as he had always done, and she would be responsible for only the mortgage payment. Mullinix Aff. #2 ¶¶ 14-15; *see* Durham-Smith Aff. ¶¶ 7-8.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad explained to Plaintiff that she could use the proceeds from the sale of the East 87th Street Apartment to fund the 50% down-payment for an apartment in the range of $1 million to $1.5 million. Disputed that Bogorad assured Plaintiff that he would pay for the cost of renovations and the monthly maintenance fee as he had always done, and she would be responsible for only the mortgage payment. Disputed that Bogorad's desire to help the Plaintiff fund the purchase costs of the Apartment was a legal offer or promise that the Plaintiff accepted or relied upon. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.

37.    On February 7, 2003, after having learned that the price of the Apartment had been reduced, the couple visited the Apartment together. Compl. ¶ 16; Durham-Smith Aff. ¶ 5. During that visit, Mr. Bogorad told Ms. Mullinix that he wanted her to purchase the Apartment and that he would feel very reassured if she were living there in case anything happened to him. Mullinix Aff. #2 ¶ 29.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad visited the Apartment with the Plaintiff on February 7, 2003 and whether Bogorad told Plaintiff that he wanted her to purchase the Apartment and that he would feel very reassured if she were living there in case anything happened to him. Defendants lack knowledge or information as to the nature of private conversations between Bogorad and Plaintiff.

38.    At the time of the couple's first visit to the Apartment together, Ms. Mullinix continued to believe that the cost of the Apartment and the renovations were too expensive. Mullinix Dep. 118:11-12; Mullinix Aff. *#2 ¶ 28; see* Durham-Smith Aff. ¶¶ 4-8.

**Response:** Disputed in part. Defendants lack sufficient knowledge to admit or deny whether Bogorad visited the Apartment with the Plaintiff at this time and whether

Plaintiff continued to believe that the cost of the Apartment and the renovations were too

expensive.

39.    On or about February 7, 2003, Mr. Bogorad reiterated his commitment to pay for the cost of the renovations and the monthly maintenance fees for the Apartment. Compl. ¶ 17; Mullinix Aff. #2 ¶ 29; *see* Durham-Smith Aff. ¶ 8.

**Response:**  Defendants lack sufficient knowledge to admit or deny whether

Bogorad reiterated his commitment to pay for the cost of the renovations and the monthly

maintenance fees for the Apartment on or about February 7, 2003.  Disputed insofar as

Bogorad's alleged desire to help the Plaintiff fund the purchase costs of the Apartment

was a legal offer or promise that the Plaintiff accepted or relied upon.  Defendants lack

knowledge or information as to the nature of private conversations between Bogorad and

Plaintiff.

40.    While visiting the Apartment on February 7, 2003, Ms. Durham told Ms. Mullinix and Mr. Bogorad that the renovation would cost approximately $300,000, plus the costs to replace the windows and to repair the heating system. Mullinix Dep. 119:20-21. Mr. Bogorad stated that he thought $300,000 was a low estimate. Mullinix Dep. 120:1-2; Mullinix Aff. #2 ¶ 30.

**Response:**  Disputed in part.  Defendants lack sufficient knowledge to admit or

deny whether Ms. Durham-Smith told Bogorad that the renovation would cost

approximately $300,000, plus the costs to replace the windows and to repair the heating

system and whether Bogorad stated that he thought $300,000 was a low estimate.

41.    Mr. Bogorad said that he wanted the Apartment to be owned solely by Ms. Mullinix. Mullinix Aff. #1 ¶ 12; Mullinix Aff. #2 ¶ 31. Mr. Bogorad said that he was paying for the renovations.  Durham-Smith Aff. ¶ 8.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny

whether Bogorad said that he wanted the Apartment to be owned solely by Plaintiff.

Further disputed insofar as Plaintiff implies that Bogorad's desire to help the Plaintiff

fund the purchase costs of the Apartment was a legal offer or promise that Plaintiff

accepted or relied upon.

42.     On or about February 7, 2003, in the couple's presence, Ms. Durham called the seller's broker and learned that another offer had been made, and maybe accepted, on the Apartment. Mullinix Dep. 122:10-17; Mullinix Aff #2 ¶ 32.

**Response:**  Undisputed.

43.     Mr. Bogorad told Ms. Mullinix that she should increase her offer. Mullinix Dep. 122:19-21; Mullinix Aff. #2 ¶ 32*; see* Durham-Smith Aff. ¶ 7.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny

whether Bogorad told Plaintiff that she should increase her offer or as to the nature of

private conversations between Bogorad and Plaintiff.

44.     Mr. Bogorad told Ms. Mullinix that spending another $100,000 or $200,000 to buy the Apartment was a trivial matter. Mullinix Dep. 123:6-8; Mullinix Aff. #2 ¶ 32*; see* Durham-Smith Aff ¶ 7. Mr. Bogorad was very involved in the negotiation process and convinced Ms. Mullinix to purchase the Apartment. Durham-Smith Aff. ¶ 7.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny

whether Bogorad told Plaintiff that spending another $100,000 or $200,000 to buy the

Apartment was a trivial matter, whether Bogorad was very involved in the negotiation

process and convinced Ms. Mullinix to purchase the Apartment, or as to the nature of

private conversations between Bogorad and Plaintiff.

45.     Ms. Durham placed a call to the seller's broker to communicated Ms. Mullinix's increased offer of 1.4 million dollars. Mullinix Dep. 123:16-19. Ms. Durham later learned that the other prospective buyers had increased their bid. Mullinix Dep. 123:12-23.

**Response:**  Undisputed.

46.     The seller's broker told Ms. Durham that the couple should submit a signed contract. Mullinix Aff. #2 ¶ 33.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny

whether representations were made to the seller's broker that Bogorad and Plaintiff were

- 12 -

jointly purchasing the Apartment.  However, the Purchase and Sale Agreement identified

Plaintiff as the sole purchaser of the Apartment.  Mullinix 129:22 – 130:3.  Further,

Plaintiff never mentioned Bogorad as either her partner or source of funds.  Mullinix

140:17-141:3; Ring 27:3-9.

47.    Mr. Bogorad wanted to meet with an attorney as quickly as possible to prepare a contract. Mullinix Aff. #2 ¶ 34. Ms. Durham recommended attorney Alan Kroll. Mullinix Dep. 127:20-23. The couple met with Kroll on the afternoon of February 7, 2003 to prepare a formal offer. *Id.* at 127:11-15; Mullinix Aff. #2 ¶ 34.

**Response:**  Disputed in part.  Defendants lack sufficient knowledge to admit or

deny whether Bogorad wanted to meet with an attorney as quickly as possible to prepare a

contract and whether Bogorad met with attorney Alan Kroll on the afternoon of February

7, 2003.  Is it undisputed that Ms. Durham-Smith recommended Attorney Kroll to

Plaintiff.

48.    Mr. Kroll called the seller's attorney, who indicated that Ms. Mullinix should assemble all of her financial information and meet him in his office a few days later, so that he could meet both prospective buyers individually and make a recommendation to his client. Mullinix Aff. #2 ¶ 35.

**Response:**  Undisputed.

49.    Mr. Bogorad was thrilled about the progress and reassured Ms. Mullinix that the seller's attorney would recommend her. Mullinix Dep. 131:6-11; Mullinix Aff. #2 ¶ 36.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny

whether Bogorad was thrilled about the progress and whether Bogorad reassured Plaintiff

that the seller's attorney would recommend her.  This statement is immaterial to any issue

in this case.

50.    On or about February 10, Ms. Mullinix met with the seller's attorney. Mullinix Aff. #2 ¶ 36; Mullinix Dep. 137:5-7. Later that day, the seller's attorney called Mr. Kroll and informed him that Ms. Mullinix's offer had been accepted. Mullinix Dep. 141:23-142: 9; Mullinix Aff. #2 ¶ 36.

**Response:** Undisputed.

51.     Ms. Mullinix executed the Contract for Sale for the Apartment on or about February 7, 2003, and closed on the purchase on or about June 10, 2003. Compl. ¶¶ 18, 22.

**Response:** Undisputed.

52.     On or about February 27, 2003, Ms. Mullinix executed a document acknowledging that as a prospective purchaser of the Apartment, she was responsible for replacing all the windows so that they conformed to the building's master plan. Mullinix Aff. #2 ¶ 42.

**Response:** Undisputed.

53.     Ms. Mullinix was required to replace the through-the-wall air conditioning units with units that also provided a heating mechanism. Mullinix Aff. #2 ¶ 42.

**Response:** Undisputed.

54.     The couple arranged for the replacement of the windows and air conditioning / HVAC units and hired contractors to perform the work outside of the larger renovation project they anticipated. Mullinix Aff. #2 ¶ 42. These projects were completed during the fall of 2003 by Skyline Windows, LLC and Hamilton Air. Id. Ms. Mullinix paid for this work and Mr. Bogorad reimbursed her. Mullinix Dep. 223:17-20; 224:8-9; Mullinix Aff. #2 ¶ 42.

**Response:** Disputed in part.  Defendants lack sufficient knowledge to admit or

deny whether Bogorad helped arrange for the replacement of the windows and air

conditioning / HVAC units and hired contractors to perform the work.

55.     After June 10, 2003, the couple planned for renovations to the Apartment together, meeting with architects, discussing the plans and shopping for ideas. Bogorad-Gross Dep at 148, 169-70; Compl. ¶¶ 23-24, 27.

**Response:** Undisputed insofar as Bogorad participated in certain meetings and

accompanied Plaintiff on certain shopping trips.

56.     Mr. Bogorad and Ms. Mullinix understood that they could take their time with the planning and the renovations because they could live in the Lexington Home until the renovations to the Apartment were complete. Mullinix Dep. 166:11-23; Mullinix Aff. #2 ¶ 47.

- 14 -

**Response:**  Disputed insofar as Plaintiff implies that Bogorad and Plaintiff lived

together.  This statement is immaterial to this case.

57.    Mr. Bogorad told Ms. Mullinix that he thought she should identify
construction people and architects in New York City to look at the Apartment and to give
advice about design and costs. Mullinix Aff. #2 ¶ 43.

**Response:**  Disputed.  Defendants lack sufficient information to admit or deny

whether Bogorad told Plaintiff that he thought she should identify construction people and

architects in New York City to look at the Apartment and to give advice about design and

costs.  This statement is immaterial to this case.

58.    Mr. Bogorad arranged a meeting with his friends Raynor and Ranne
Warner. Mullinix Aff. #2 ¶ 44.

**Response:**  Undisputed.

59.    The Warners were working on a development project and referred Mr.
Bogorad and Ms. Mullinix to the Siematic showroom in Boston to view kitchen cabinets.
Mullinix Aff. #2 ¶ 44. Kiki Bogorad-Gross arranged for the couple to visit to the Boston
Design Center, where she worked, to view various showrooms for kitchen cabinets. K.
Bogorad-Gross Dep. 152:17-23; Mullinix Aff. #2 ¶ 45.

**Response:**  Undisputed.

60.    The couple went to several design centers and showrooms in New Jersey,
New York and Massachusetts to look at potential materials for the kitchen and bathroom.
Mullinix Aff. #2 ¶ 45. Mr. Bogorad even went alone to a showroom to look at cabinets
that he had seen in one of the brochures that the couple had collected. Mullinix Aff. #2 ¶
45.

**Response:**  Disputed in part.  Defendants lack sufficient knowledge to admit or

deny whether Bogorad went to several design centers and showrooms in New Jersey, New

York and Massachusetts to look at potential materials for the kitchen and bathroom and

whether Bogorad went alone to a showroom to look at cabinets that he had seen in one of

a brochure.  This statement is immaterial to any issue in this case.

61.    By May 2003, the couple estimated that the renovations to the Apartment
would cost approximately $400,000, excluding the windows that were required by the co-

{B0532630; 1}

operative board and the replacement of the heating/air conditioning units. Mullinix Aff. #2 ¶ 46.

**Response:** Disputed in part. Defendants lack sufficient knowledge to admit or deny whether Bogorad estimated that the renovations to the Apartment would cost approximately $400,000, excluding the windows that were required by the co-operative board and the replacement of the heating/air conditioning units.

62.    Mr. Warner traveled to New York City to look at the Apartment and to begin working on the design. Compl. ¶ 23. On or about July 11, 2003, Mr. Warner prepared a proposal outlining the scope of his schematic design services for renovations to the Apartment. Mullinix Aff. #2 ¶ 48.

**Response:** Undisputed.

63.    Mr. Warner suggested that the couple hire New York architect, Heather Aman, to serve as the person primarily responsible for the renovations. Mullinix Aff. #2 ¶ 48. Mr. Warner agreed to act as an advisor to the project. *Id.*

**Response:** Disputed insofar as Mr. Warner suggested that Bogorad hire Ms. Aman as the architect for the renovations project. The evidence demonstrates that Bogorad's name does not appear anywhere on either the engagement letter or invoices from Heather Aman to Plaintiff, nor is there any evidence of any conversations between Bogorad and Ms. Aman. Mullinix Dep. Exh. 8-10 (Hodes Aff. Exh. 5-7).

64.    The couple met with Mr. Warner, Ms. Aman and Brendan Mullinix to discuss the renovation plans. Mullinix Aff. #2 ¶ 49. Prior to the meeting, and based upon the original projections and schematic from Mr. Warner, Ms. Aman estimated her fees based upon a total construction cost of approximately $300,000. *Id.* After Ms. Aman saw the Apartment, she estimated that the construction costs would be greater than $300,000 and informed the couple that her fee would be more than originally estimated. Mullinix Aff. #2 ¶ 49.

**Response:** Disputed insofar as Defendants lack sufficient knowledge to admit or deny whether Bogorad met with Mr. Warner, Ms. Aman and Brendan Mullinix to discuss the renovation plans.

- 16 -

65.    Mr. Bogorad was concerned initially about the increase in Ms. Aman's price, so Mr. Bogorad and Ms. Aman discussed the fee at length. Mullinix Aff. #2 ¶ 50. Mr. Bogorad was more involved than Ms. Mullinix in these discussions. *Id.* Mr. Bogorad negotiated and understood Ms. Mullinix's contract with Ms. Aman, which provided for approximately $400,000 in costs for the renovations. Mullinix Aff. #2 ¶¶ 50, 51.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad was concerned about the increase in Ms. Aman's fees, whether Bogorad and Ms. Aman discussed the fee at length, whether Bogorad was more involved in the discussions and negotiations with Ms. Aman than Plaintiff and whether Bogorad had knowledge of Plaintiff's contract with Ms. Aman. The evidence demonstrates that Bogorad's name does not appear anywhere on either the engagement letter or invoices from Heather Aman to Plaintiff, nor is there any evidence of any conversations between Bogorad and Ms. Aman. Mullinix Dep. Exh. 8-10 (Hodes Aff. Exh. 5-7).

66.    On July 25, 2003, Ms. Mullinix and Ms. Aman signed a contract for architectural design services (that Mr. Bogorad had negotiated) to the Apartment and Ms. Mullinix paid a $1,500 retainer for the project. Compl. ¶ 24; Mullinix Aff #2 ¶¶ 50, 52. Mr. Bogorad reimbursed Ms. Mullinix for this $1,500 payment, as well as for an additional $1,500 retainer fee that she paid to Ms. Aman. *Id.*

**Response:** Disputed in part. Defendants lack sufficient knowledge to admit or deny whether Bogorad negotiated Ms. Aman's contract with Plaintiff and whether Bogorad reimbursed Plaintiff for the $3000 in retainer fees.

67.    Mr. Bogorad paid Mr. Warner $1787.00 for his services in connection with his renovations to the Apartment. Compl. 1123; Mullinix Aff. #2 ¶ 53.

**Response:** Undisputed.

68.    Mr. Bogorad reimbursed Ms. Mullinix for the monthly maintenance fees for the Apartment for the months of July, August, September, October, November 2003. Mullinix Aff. #2 ¶ 54.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad reimbursed Plaintiff for the Apartment's monthly maintenance fees for

July, August, September, October and November 2003. No such checks were produced in discovery.

69.     The couple had reviewed and approved the architectural design plans from Ms. Aman just days prior to leaving on their vacation, and had authorized Ms. Aman to send those plans out to general contractors for bidding. Mullinix Aff. #2 ¶ 56 . The couple anticipated reviewing the bids and settling on one of them upon their return. *Id.*

**Response:** Disputed in part. Defendants lack sufficient knowledge to admit or deny whether Bogorad reviewed and approved the architectural design plans from Heather Aman days before leaving on their vacation, whether Bogorad authorized Heather Aman to send those plans out to general contractors for bidding, and whether Bogorad anticipated reviewing the bids and settling on one of them upon his return from vacation. This statement is immaterial to any issue in this case.

70.     On December 28, 2003, Mr. Bogorad passed away unexpectedly while on vacation with Ms. Mullinix, the Defendants and the Defendants' children. Compl. ¶ 30.

**Response:** Undisputed.

71.     Ms. Mullinix did not want to purchase the Apartment because of the costs involved. Mr. Bogorad convinced Ms. Mullinix to purchase the apartment by committing to her that he would (1) split evenly with her the tax consequences that resulted from the sale of the Condominium by reimbursing her for one-half of that amount upon completion of her 2003 taxes; (2) pay the monthly maintenance fees for the Apartment by reimbursing her on a monthly basis; (3) pay for the cost of the renovations to the Apartment, by reimbursing her for the cost of the work and for the architect's fee as she incurred those costs and fees; and (4) split evenly with her the costs she incurred for storing the belongings from the Condominium until the completion of the renovations to the Apartment, by reimbursing her for one-half of the total storage costs, once a final amount was determined. Compl. ¶ 18; Mullinix Aff. #2 ¶¶ 28, 29, 38, 39.

**Response:** Disputed. Defendants lack sufficient knowledge to admit or deny whether Bogorad told Plaintiff that he would (1) split evenly with her the tax consequences that resulted from the sale of the 87th Street Apartment by reimbursing her for one-half of that amount upon completion of her 2003 taxes; (2) pay the monthly maintenance fees for the Apartment by reimbursing her on a monthly basis; (3) pay for the

- 18 -

cost of the renovations to the Apartment, by reimbursing her for the cost of the work and

for the architect's fee as she incurred those costs and fees; or (4) split evenly with her the

costs she incurred for storing the belongings from the 87th Street Apartment until the

completion of the renovations to the Apartment, by reimbursing her for one-half of the

total storage costs, once a final amount was determined.  Disputed insofar Bogorad's

desire to help the Plaintiff fund the purchase costs of the Apartment were legal offers or

promises that Plaintiff accepted or relied upon.

72.    The only reason Ms. Mullinix sold her apartment and bought a new one
was because Mr. Bogorad committed to pay for the renovations relating to the new
apartment, the monthly maintenance fees, one-half the storage costs while the new
apartment was being renovated and one-half the tax consequences from the sale of her
condominium. Mullinix Aff. #2 ¶¶ 38-39.

**Response:** Disputed.  Plaintiff's reasons for selling her 87th Street Apartment are

linked to other sources, including her son, Brendan Mullinix, and her realtor, Ms. Judith

Durham.  See, supra, ¶¶ 16 – 19.  Defendants lack sufficient knowledge to admit or deny

whether Bogorad told Plaintiff that he would (1) split evenly with her the tax

consequences that resulted from the sale of the 87th Street Apartment by reimbursing her

for one-half of that amount upon completion of her 2003 taxes; (2) pay the monthly

maintenance fees for the Apartment by reimbursing her on a monthly basis; (3) pay for the

cost of the renovations to the Apartment, by reimbursing her for the cost of the work and

for the architect's fee as she incurred those costs and fees; and (4) split evenly with her the

costs she incurred for storing the belongings from the 87th Street Apartment until the

completion of the renovations to the Apartment, by reimbursing her for one-half of the

total storage costs, once a final amount was determined.  Disputed that Bogorad's desire

to help the Plaintiff fund the purchase costs of the Apartment were legal offers or

promises that Plaintiff accepted or relied upon.

{B0532630; 1}

73.    Ms. Mullinix would not have purchased the Apartment if Mr. Bogorad did not make these promises. Mullinix Aff. ¶ 38; Durham-Smith Aff. ¶¶ 7-8.

**Response:**  Disputed.  Plaintiff's reasons for purchasing the Apartment are linked to other sources, including her son, Brendan Mullinix, and her realtor, Ms. Judith Durham.  See, supra, ¶¶ 16 – 19.  Disputed that Bogorad's desire to help the Plaintiff fund the purchase costs of the Apartment were legal offers or promises that Plaintiff accepted or relied upon.

74.    Because he had upheld his commitment to pay the monthly maintenance fee for the Condominium and he had always followed through on his commitments to Ms. Mullinix throughout their long-term relationship, Ms. Mullinix believed that Mr. Bogorad would honor his promises. Mullinix Aff. #2 ¶ 39.

**Response:**  Disputed that Bogorad's desire to help the Plaintiff financially by gifting her the monthly maintenance fees for the 87th Street Apartment were legal offers or promises that the Plaintiff accepted or relied upon.  Defendants lack sufficient knowledge to admit or deny whether Bogorad and Plaintiff maintained a long-term relationship and whether Bogorad followed through on his alleged prior commitments. Disputed that Bogorad's desire to help the Plaintiff fund the purchase costs of the Apartment were legal offers or promises that Plaintiff accepted or relied upon.

75.    Mr. Bogorad paid the monthly maintenance fee for the Condominium and ceased paying those fees when Ms. Mullinix sold it and moved. Mullinix Dep. 56:1-5; Mullinix Aff. #2 ¶ 24.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny whether Bogorad paid the monthly maintenance fee for the 87th Street Apartment and whether Bogorad ceased paying those fees when Plaintiff sold it and moved.

76.    Even Ms. Bogorad-Gross stated that she "got the sense" Mr. Bogorad wanted Ms. Mullinix to buy the Apartment. K. Bogorad-Gross 169:16-18.

**Response:**  Undisputed.

- 20 -

77.    Ms. Durham-Smith, remembers that Mr. Bogorad convinced Ms. Mullinix to make the purchase. Durham-Smith Aff. ¶ 7. Mr. Bogorad told Ms. Durham-Smith that he was paying for the renovations. *Id.* ¶ 8.

**Response:**  Disputed.  Defendants lack sufficient knowledge to admit or deny Ms. Durham-Smith's recollections.  However, Ms. Durham-Smith's testimony is not credible for several reasons, including her instruction to Plaintiff to lie on her application to the Board of 1050 Fifth Avenue, Inc.  Mullinix 176:20 – 178:2; 179:16 – 180:2.

78.    Kiki Bogorad-Gross stated that she believes Mr. Bogorad did make the promises that Ms. Mullinix claims and that Ms. Mullinix is telling the truth. K. Bogorad-Gross Dep. 190:23-191:16.

**Response:**  Disputed.  Plaintiff took K. Bogorad-Gross' statement out of context. K. Bogorad-Gross repeatedly stated in her deposition that she has no way of knowing whether Plaintiff is telling the truth about her claims.  K. Bogorad-Gross 190:8 – 191:23. K. Bogorad-Gross stated that she believes that, if her father had lived, he probably would have paid for the Apartment-related expenses as gifts, and if he did not live, then his bequest to the Plaintiff under his estate plan would sufficiently compensate her for those expenses.  K. Bogorad-Gross 191:19 – 23.

Respectfully submitted,

KIKI BOGORAD-GROSS and
LEONARD P. BOGORAD, as
they are the Executors of the Will
of Lawrence Bogorad,
By their attorneys,

June 30, 2006

/s/  Lisa M. Hodes
Larry L. Varn (BBO # 508130)
Lisa M. Hodes (BBO # 660444)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
lvarn@sandw.com
lhodes@sandw.com

{B0532630; 1}

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 30, 2006.

<u>/s/  Lisa M. Hodes</u>

- 22 -