UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————

| | |
|---|---|
| KATHLEEN P. MULLINIX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-12684-WGY |
| | ) |
| KIKI BOGORAD-GROSS and LEONARD P. | ) |
| BOGORAD, As They Are Executors of the Will of | ) |
| Lawrence Bogorad, | ) |
| | ) |
| Defendants. | ) |
| | ) |

———————————————————————

### REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

The plaintiff, Kathleen P. Mullinix, respectfully submits this Reply to defendants Kiki Bogorad-Gross and Leonard P. Bogorad's (collectively, "Defendants") Opposition to Ms. Mullinix's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment. Ms. Mullinix's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment should be granted or, at the very least, the Defendants' Motion for Summary Judgment should be denied.

**I.    The Defendants Do Not And Cannot Contradict The Evidence That There Is An Enforceable Agreement.**

This is a simple breach of contract and promissory estoppel case. The summary judgment record, viewed in the light most favorable to the Defendants, shows by a preponderance of the evidence that Ms. Mullinix and Lawrence Bogorad ("Mr. Bogorad") had a binding agreement. *See* N.Y. Prac. Series, New York Contract Law  § 2:1 (2006) ("a plaintiff

1

seeking to enforce a contract claim has the burden of proving by a preponderance of the evidence that there is a good and binding contract"). The Defendants shamelessly attempt to avoid liability with offensive assumptions and muddled conclusions based upon their personal biases toward Ms. Mullinix. Even though the Defendants concede that their father, Mr. Bogorad, told Ms. Mullinix that he would pay for the renovations (among other things) to the apartment she purchased at his behest (the "Apartment"), and that they believe that he *wanted* to make those payments, they still rely on the assertion that Ms. Mullinix's evidence is "unsubstantiated and uncorroborated."[1] The Defendants have failed, however, to provide *any* evidence to the Court that contradicts Ms. Mullinix's detailed affidavits *and* the affidavit of the real estate broker, Judith Durham, which both establish that Ms. Mullinix and Mr. Bogorad entered into a binding oral agreement or, in the alternative, that Ms. Mullinix reasonably relied upon Mr. Bogorad's promises to her detriment. *See* Affidavit of Judith Durham, ¶¶ 2-8 (stating that Mr. Bogorad convinced Ms. Mullinix to buy the apartment, Ms. Mullinix was purchasing the apartment on her own and Mr. Bogorad said he was paying for the necessary renovations).

The Defendants have been deposed and there has been extensive discovery. The Defendants have neither unearthed nor produced any evidence that contradicts the basic facts of this case: Ms. Mullinix sold her condominium and purchased the Apartment because Mr. Bogorad asked her to, in exchange for his providing certain payments for renovations and other costs.[2] Ms. Mullinix relied upon Mr. Bogorad's promises when she bought the Apartment. The

---

[1] *See* Deposition of Kiki Bogorad-Gross 190:23-191:16; Defendants' Opposition, *passim.*
[2] The Defendants attempt to re-structure the facts to fit their weak defenses and to leap to unfounded conclusions. They misstate the facts to make it appear as though Ms. Mullinix first spoke with her son, Brendan, about selling her condominium for a profit. Ms. Mullinix did not speak with her son until *after* Mr. Bogorad began pressuring her to sell the condominium and to buy the Apartment -- Mr. Bogorad brought up the topic with Brendan and participated in the conversation Ms. Mullinix and Brendan had regarding the condominium and the Apartment. *See* Affidavit of Kathleen P. Mullinix, dated June 18, 2006, ¶ 8. Ms. Mullinix sold her condominium and bought the Apartment because Mr. Bogorad requested her to do so, not because anyone else advised her to "turn a profit" or make an investment. *Id.* ¶¶ 20, 38.

Defendants have refused to honor his obligations and, as a result, Ms. Mullinix has had to pay for the necessary renovations and other costs from her own funds.

II.    **Ms. Mullinix's and Mr. Bogorad's Agreement Is Enforceable Under The Doctrine Of Promissory Estoppel.**

It was reasonable that Ms. Mullinix would rely upon Mr. Bogorad's promises, because she trusted him and he had always fulfilled his commitments to her in the past. Ms. Mullinix did, in fact, rely upon his promises by selling her condominium and purchasing the Apartment. She suffered an injury as a result of the Defendants' refusal to honor Mr. Bogorad's obligations, because she had to pay for Mr. Bogorad's commitments from her own pocket. Ms. Mullinix's injury does *not* need to be "unconscionable," as the Defendants would have this Court believe.

The Defendants cite *Hoffmann v. Boone*, 708 F. Supp. 78 (S.D.N.Y. 1989) to support the contention that an "*unconscionable* injury" is an element of promissory estoppel in New York, even if it does not arise within the statute of frauds context. *See* Defendants' Opposition at 19. The Defendants entirely misread *Hoffmann*, however, because *Hoffmann is* a statute of frauds case. The very issue in *Hoffmann* is whether an oral contract governed by the Uniform Commercial Code's ("UCC") statute of frauds provision is enforceable. *Hoffmann*, 708 F. Supp. at 80. Therefore, the *Hoffmann* court discusses whether the oral contract nevertheless is enforceable under the doctrine of promissory estoppel. *Id.* at 80-81 (plaintiffs "contend that defendant is barred by the doctrine of promissory estoppel . . . from relying on the statute of frauds"). Thus, *Hoffmann* requires an "unconscionable injury" because the plaintiff relies on promissory estoppel not only to enforce a contract, but also *to circumvent the statute of frauds*. *Id.* A review of New York case law discussing promissory estoppel reveals that suffering an "injury" satisfies the third element of promissory estoppel, and a showing of an "unconscionable injury" is only necessary when relying upon promissory estoppel to circumvent the statute of

frauds. *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989); s*ee, e.g., Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995)[3] (citing New York cases to support that an "injury" is necessary under promissory estoppel, as well as cases that hold "unconscionability required only when promissory estoppel asserted to contravene effect of Statute of Frauds").[4]

### III.    The Defendants' Performance Cannot Be Excused Under A Theory Of "Impracticability."

The Defendants' Opposition for the first time asserts that they should be excused from performing Mr. Bogorad's contract due to "impracticability." The Defendants correctly cite the Restatement (Second) on Contracts, which generally requires four elements for the doctrine of impracticability: (1) the performance must be rendered impracticable by some event; (2) the nonoccurrence of the event must have been a basic assumption of which the contract was made; (3) the impracticability must have resulted without the fault of the party seeking to be excused; and (4) the party must not have assumed a greater obligation than the law imposes. E. ALLAN FARNSWORTH, CONTRACTS § 9.6 (4th ed. 2004). The Defendants have not articulated any of the four elements.

In order for a death to render performance impracticable, the existence of that particular person must be *necessary* for performance (*i.e.*, a painter to paint a portrait, a musician to

---

[3] The *Cyberchron* court holds that the third element of promissory estoppel requires only an "injury," but affirmed the district court's finding that the plaintiff suffered an "unconscionable injury." *Cyberchron Corp.*, 47 F.3d at 45. *Cyberchron* goes on to explicitly overrule the narrow construction of promissory estoppel espoused in *Swerdloff v. Mobil Oil Corp.*, 74 N.Y.S.2d 266 (N.Y. 2d Dep't. 1980), which is the very case that the *Hoffmann* court cites for its promissory estoppel standard (in the context of the statute of frauds).

[4] The Defendants' claim that the statute of frauds bars enforcement of the monthly maintenance fees portion of Mr. Bogorad's contract with Ms. Mullinix, but they do not assert that the statute of frauds precludes any of the other commitments, including Mr. Bogorad's commitment to pay for the renovations to the Apartment. *See* Defendants' Opposition at 16. The statute of frauds does not prevent enforcement of Mr. Bogorad's agreement to pay the monthly maintenance fees, *see* Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment at 18; however, Mr. Bogorad's commitment to pay the monthly maintenance fees may also be enforced under the doctrine of promissory estoppel if Ms. Mullinix suffered an "unconscionable injury," which she did, *see id.* at 21 n. 14.

perform a concert). Mr. Bogorad's estate may fulfill his obligations -- providing payments to Ms. Mullinix for the renovations and other costs -- in the same manner as he could have if he had survived.[5] The Defendants do not and cannot claim that Mr. Bogorad's estate has insufficient funds to fulfill Mr. Bogorad's obligations, or even that fulfilling such obligations will deplete his estate.[6] Furthermore, the Defendants cite Mr. Bogorad's "very complicated estate plan," which would result in exorbitant tax consequences, as an event that was not assumed to occur and makes performance impracticable. However, the Defendants' Opposition makes clear that if Mr. Bogorad "assumed the risk" of such an event, the doctrine of impracticability does not apply. Mr. Bogorad did "assume the risk" of a "very complicated estate plan" since he created his estate plan and any tax implications were foreseeable to him when he entered his agreement with Ms. Mullinix. Mr. Bogorad is "at fault" for any difficulties that now arise in performing his commitments to Ms. Mullinix and, therefore, the doctrine of impracticability does not apply.[7]

Finally, "where impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused." *407 East 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 296 N.Y.S.2d 338, 344 (1968). Estates are responsible for the debts of the deceased. *See Mathews v. United States*, 226 F.Supp. 1003, 1005 (E.D.N.Y. 1964). The Defendants essentially argue that an estate is not required to pay off the debts of the deceased if it would result in the estate incurring tax consequences; such an argument is ridiculous.

---

[5] The Restatement provides the example of a party who contracted to cut a tract of timber, but the party dies before he cut down the timber and his estate refuses to complete performance. *See* Restatement (Second) Contracts § 262, Ill. 6. In the absence of special circumstances showing that his personal service is necessary to perform the duty of cutting the timber, his duty is not discharged and his estate is liable for breach of contract. *Id.*

[6] It should also be noted that the Defendants refer only to the value of the two trusts to which Ms. Mullinix is a one-sixth beneficiary, and not to the aggregate value of the estate.

[7] The Defendants do not offer any evidence to show that the estate would "incur hundreds of thousands of dollars for any distribution" to Ms. Mullinix. In fact, it is questionable whether such tax consequences would even occur when the estate pays off a "debt," which is what it owes to Ms. Mullinix.

5

**IV.    Ms. Mullinix Paid The Entire Purchase Price For The Apartment And Mr. Bogorad Explicitly Did Not Want To Have An Ownership Interest.**

The Defendants ignore the established elements necessary to prove constructive trusts in New York, and ineffectively attempt to skirt around New York's explicit abolishment of resulting trusts.  It is absolutely undisputed that Ms. Mullinix provided 100% of the purchase price for the Apartment, and there was never any promise or an expectation that Mr. Bogorad would own an interest in the Apartment.  Equity does not demand that Mr. Bogorad be given possession of something that he explicitly did not pay for or want.  *See* Plaintiff's Motion for Partial Summary Judgment.

**[remainder of page intentionally left blank]**

6

The Defendants do not and cannot offer any evidence to contradict the summary judgment record that establishes, by a preponderance of the evidence, that Mr. Bogorad's commitments to pay for the renovations to the Apartment, among other things, are enforceable. At the very least, the Defendants' defenses are based upon unsupported conclusions and summary judgment cannot be awarded in their favor.  For the reasons stated above and in the Plaintiff's Motion for Partial Summary Judgment, Opposition to the Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment, Ms. Mullinix respectfully requests this Court grant her Motions for Summary Judgment and grant further relief as this Court deems appropriate and just.

Respectfully submitted,

KATHLEEN P. MULLINIX,
By her attorneys,

/s/ Sara E. Solfanelli
Larry C. Kenna (BBO # 267760)
Michelle L. Dineen Jerrett (BBO #634930)
Sara E. Solfanelli (BBO #658018)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tel: (617) 248-5000

Dated: July 11, 2006

4100614v1